MONA Z. HANNA (SBN 131439)
 *mhanna@mrllp.com*
TAYLOR C. FOSS (SBN 253486)
 *tfoss@mrllp.com*
**MICHELMAN & ROBINSON, LLP**
17901 Von Karman Avenue, Suite 1000
Irvine, CA 92614
Telephone:   (714) 557-7990
Facsimile:   (714) 557-7991

MARC R. JACOBS (SBN 185924)
 *mjacobs@mrllp.com*
ROBERT D. ESTRIN (SBN 260402)
 *restrin@mrllp.com*
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Boulevard, 19th Floor
Los Angeles, CA  90024
Telephone:   (310) 299-5500
Facsimile:   (310) 299-5600

Attorneys for Plaintiff
STRATEGIC PARTNERS, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRATEGIC PARTNERS, INC.,<br><br>      Plaintiff,<br><br>   v.<br><br>FIGS, INC.,<br><br>      Defendant. | Case No.: 2:19-cv-02286-GW-KSx<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**1.  FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a);**<br><br>**2.  UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE § 17200);**<br><br>**3.  UNTRUE AND MISLEADING ADVERTISING (CAL. BUS. & PROF. CODE § 17500).**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff STRATEGIC PARTNERS, INC. ("SPI" or "Plaintiff") hereby alleges, by the undersigned attorneys, upon personal information as to itself, and upon information and belief as to all other allegations, as follows:

## NATURE OF THE ACTION

1.     Defendant FIGS, Inc. ("Defendant" or "FIGS") crashed into the scrubs market in 2012 under dubious circumstances and has proceeded to recklessly advertise the antimicrobial properties of its scrubs—making false and misleading statements for the sake of gaining market share at any cost.

2.     FIGS manufactures and sells various types of scrubs and other apparel, including scrubs, scrub tops, scrub bottoms, under-scrubs, lab coats, shirts, pants, jackets, dresses, skirts, or undergarments (collectively the "FIGS Products").

3.     On information and belief, FIGS began as a company after one of FIGS's co-CEOs, Trina Spear, accessed confidential information and data regarding the medical apparel industry from her then-employer Blackstone Group Holdings, L.P. ("Blackstone"), and on information and belief, together with FIGS's co-CEO, Heather Hasson, used said confidential information to launch FIGS.  On information and belief, Plaintiff believes this was SPI's confidential information and data because Blackstone was in possession of that information at the time.

4.     Furthering FIGS's goal to grow as a company at any cost even further, FIGS next made unsupportable claims regarding its FIGS Products through its advertising, marketing, and branding that its FIGS Products will protect healthcare workers by reducing hospital-acquired infection rates by 66%.

5.     FIGS's representations are untrue, misleading, and reasonably likely to deceive consumers, who consist of healthcare executives, hospital executives, retailers, and healthcare workers who purchase the FIGS Products.  Further compounding the danger of making untrue and misleading claims, FIGS's health claims and public relations efforts have caused media outlets to repeat and disseminate FIGS's false and misleading claims about Defendant FIGS' Products.

**SECOND AMENDED COMPLAINT**

Specifically, Defendant has disseminated false and misleading information through online advertisements, social media, and social media influencers, which have induced consumers into purchasing the FIGS' Products. FIGS's false and misleading claims have helped it obtain millions of dollars in funding enabling FIGS to continue to spread its false claims to the public through additional advertisements.

6.     FIGS's untrue health claims are endangering healthcare workers, their patients, and the public, rather than protecting them. Creating a false perception that a certain kind of scrubs can protect the wearer from infectious diseases or bacteria — when they cannot — stands to affect the behavior of those healthcare workers, their patients, and the public who may wrongly rely on their scrubs for protection rather than following other available or proper sanitation procedures.

7.     Healthcare workers and employers are spending a significant amount of money on products due to FIGS's false and misleading statements. Worse yet, FIGS's false and misleading claims, advertising and marketing are harming consumers by creating an unsafe belief that FIGS's Products can protect the wearer from infectious diseases or bacteria, when they cannot.

8.     FIGS's actions are also harming competitors in the medical wearing apparel industry such as Plaintiff. Plaintiff manufactures and sells competing medical scrubs, lab coats, and other garments for use in the medical health profession. Plaintiff is unable to fairly compete due to FIGS's false and misleading claims.

9.     Healthcare executives, retailers, and medical consumers who are exposed to FIGS's false and misleading statements — and believe FIGS's misrepresentations —will likely acquire the incorrect belief that FIGS's products are superior to its competitor's products, including Plaintiff's.

10.     FIGS's false and misleading claims concerning the properties and qualities of the FIGS Products has allowed it to gain market share at the expense of

3

**SECOND AMENDED COMPLAINT**

its competitors.  Furthermore, FIGS's false and misleading claims jeopardize the safety of the consumers who purchase the FIGS Products (and the patients they care for) as those consumers are likely to believe the FIGS Products provide them with certain claimed protections which testing has shown that the FIGS Products do not.  Additionally, FIGS's false and misleading claims have enabled it to raise millions of dollars in funding, build public relations campaigns, and obtain the benefits of social influencers.

11.   SPI has been harmed by FIGS's false advertising as FIGS has acquired market share at the expense of SPI due to FIGS's false advertising, thus costing SPI revenues and profits it should have earned.

## THE PARTIES

12.   At all times mentioned herein, Plaintiff was, and now is a resident of California, with a principal place of business at 9800 De Soto Avenue, Chatsworth, California.

13.   SPI was established in 1995 and is the leader in the design, manufacture and distribution of high-quality, fashion-inspired medical apparel, medical footwear, medical accessories and school uniforms, with products sold through uniform shops, Internet retailers, specialty catalogs and mass-market retailers.  As set forth above, Plaintiff manufactures and sells competing antimicrobial medical scrubs, lab coats, and other garments for use in the medical health profession. The SPI products that are relevant here include medical apparel. SPI designs, manufactures and distributes under the Cherokee®, Dickies®, HeartSoul, Elle, Code Happy®, Disney®, and Sapphire Scrubs® Brands.

14.   FIGS, Inc. is an online medical apparel retailer based in Los Angeles, California, and founded in 2012. The company sells scrubs in a variety of colors and styles.  Ms. Hasson and Ms. Spear serve as co-CEOs of FIGS.

**SECOND AMENDED COMPLAINT**

15.   On information and belief, FIGS is a Delaware corporation with a principal place of business located at 11390 West Olympic Boulevard, Studio 280, Los Angeles, CA 90064.

## JURISDICTION AND VENUE

16.   This Court has personal jurisdiction over Defendant because Defendant has extensive contacts with, and conducts business within, the State of California and this Judicial District, specifically including selling its FIGS Products online and in one or more brick-and-mortar locations within the state of California.

17.   This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 over Plaintiff's First Cause of Action for violations of 15 U.S.C. § 1125(a), the Lanham Act.

18.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338 & 1367 over Plaintiff's remaining causes of action, as the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts under Article III of the United States Constitution.

19.   This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in, has extensive contacts with, and conducts business within, the State of California and this Judicial District. Further, Defendant has made false and/or misleading statements in its advertising in this district, thereby harming consumers, as well as competitors such as Plaintiff, in this district, and thereby causing injury to Plaintiff in this district.

20.   Venue is proper in this Court because a substantial part of the events giving rise to the claims herein occurred in this district. Defendant has made false and/or misleading statements in its advertising in this venue thereby harming consumers, as well as competitors such as Plaintiff, in this venue.  Venue is further appropriate in this Court because Plaintiff's principal place of business is located

**SECOND AMENDED COMPLAINT**

within this judicial district. 28 U.S.C. § 1391(c). Further still, venue is proper in this Court because this Court has personal jurisdiction over Defendant. 28 U.S.C. § 1391(b).

21.    Further, Defendant has intentionally made its untrue and misleading statements to consumers in this district, thereby harming competitors such as Plaintiff in this district, and thereby causing injury to Plaintiff in this district.

22.    Venue is proper in this Court because a substantial part of the events giving rise to the claims herein occurred in this district.    Defendant has intentionally made its false and misleading statements to consumers in this venue, thereby harming competitors such as Plaintiff in this district, and thereby causing injury to Plaintiff in this district.

## CLAIMS COMMON TO ALL COUNTS

### FIGS's Unscrupulous Beginning

23.    The medical apparel industry is a multi-billion-dollar industry comprising sales of scrubs, lab coats, and related apparel each year.  Ms. Spear decided to enter the medical apparel market while employed at Blackstone.  On information and belief, while employed at Blackstone, Ms. Spear proceeded to improperly obtain information regarding the scrubs industry from Blackstone, in violation Blackstone's Code of Ethics applicable to its employees to prevent them from doing just what Ms. Spear did:

> "Because all Confidential Information constitutes a valuable asset of the Firm, without the prior written consent of the Firm (which may be given or withheld in the Firm's sole discretion) or unless legally mandated, no employee or member of the Firm may, while he or she is employed by or associated with the Firm or at any time thereafter, (a) disclose any Confidential Information to any person except in furtherance of the business of the Firm, (b) make any other use of any Confidential Information except in the business of the Firm and in a manner which at all times is intended to serve the interests of the Firm. . . ."

**SECOND AMENDED COMPLAINT**

(Code of Ethics of Distributor, Blackstone Group, filed with the SEC, dated 10/2011, emphasis added.)

24.     Notwithstanding the above, Ms. Spear knowingly violated Blackstone's Code of Ethics and admitted her wrongdoing publicly. Specifically, Ms. Spear stated in an interview with Refresh Miami on April 8, 2018 that she sent "super confidential" Blackstone materials to Ms. Hasson in violation of Blackstone's Code of Ethics. Specifically, Ms. Spear stated in a YouTube video of that interview as follows:

> "I'm in New York, was working at Blackstone. I did a private equity deal in the medical apparel space. Random. Sent her [Hasson] all the materials I'd worked on. That can't leave this room. They are super confidential. I will end up somewhere, so, everyone do not Tweet about that . . . So, we talked on a Monday. Fly out to LA on a Friday. We start working together. Spent about 6 months. Wait until I get my bonus at Blackstone. Liquidate my 401(k). Move to LA. Put all my money into the business."

(https://www.youtube.com/watch?v=OfqPiOn7uBI. Last visited April 10, 2019 [TCF].)

25.     On information and belief, the data obtained by Ms. Spear from Blackstone included information, knowledge, facts, and concepts related to the medical apparel industry, namely scrubs. On information and belief, Plaintiff believes this was SPI's confidential information and data because Blackstone was in possession of that information at the time.

26.     Ms. Spear's comments above indicate her awareness and understanding of both Blackstone's Code of Ethics and her duty of confidentiality to Blackstone.

27.     On information and belief, FIGS, including Ms. Spear and Ms. Hasson, used the information they wrongfully obtained from Blackstone to allow FIGS to unfairly compete against Plaintiff and others in the industry (including raising millions of dollars in funding).

**SECOND AMENDED COMPLAINT**

## FIGS's False and Misleading Statements

28.   A major concern in the medical health profession is the prevention of the transmission of infectious diseases.  Healthcare workers are occupationally exposed to infectious diseases during the performance of their duties.  According to the United States Department of Labor, one of the primary routes of transmission in healthcare settings is through contact—both direct and indirect—which involves the transfer of infectious agents from the infected individual through physical contact.  (www.osha.gov/SLTC/healthcarefacilities/infectious_diseases.html, last visited January 24, 2019 [TCF].)

29.   Healthcare workers and others in the medical health profession are active participants in the efforts to prevent the transmission of infectious agents.  The Department of Labor's Occupational Safety and Health Administration ("OSHA") has several standards and directives that "are directly applicable to protecting workers against transmission of infectious agents." (www.osha.gov/SLTC/healthcarefacilities/infectious_diseases.html, last visited January 24, 2019 [TCF].)  Similarly, the Centers for Disease Control and Prevention's Healthcare Infection Control Practices Advisory Committee ("HICPAC") has guidelines that detail routine day-to-day infection control measures, which "focuses primarily on interactions between patients and healthcare providers."  (www.cdc.gov/hicpac/pdf/isolation/Isolation2007.pdf, last visited January 24, 2019 [TCF].)  The purpose of these guidelines, in combination with others, is to "provide comprehensive guidance on the primary infection control measures for ensuring a safe environment for patients and healthcare personnel." (*Id.*)

30.   The HICPAC guidelines note that indirect and direct contact are the most common modes of transmission of infectious agents, and that "[c]lothing, uniforms, laboratory coats or isolation gowns used as personal protective equipment (PPE), may become contaminated with potential pathogens after care of

a patient colonized or infected with an infectious agent []." (*Id.*)  The guidelines further note that "[a]lthough contaminated clothing has not been implicated directly in transmission, the potential exists for soiled garments to transfer infectious agents to successive patients." (*Id.*)

31.   The CDC guidelines specifically stress that the "prevention and control of [multi-drug resistant organisms] is a national priority." (*Id.*)

32.   FIGS advertises and promotes its FIGS Products online, through its product website at www.wearfigs.com.  FIGS also advertises its FIGS Products online through social media websites, including Instagram®, Facebook®, Twitter® and through other social media avenues.

33.   FIGS has distributed and continues to distribute advertisements and promotions that contain false and misleading statements about the qualities and properties of its FIGS Products through, at least, its own websites and social media accounts.  Due to the nature of the Internet, this distribution constitutes interstate commerce.

34.   FIGS sells its products online through its own website, and through online retailers.  Due to the nature of the Internet, these sales constitute interstate commerce.

35.   On information and belief, FIGS has charged and is charging a premium price for its FIGS Products based on its false and misleading statements.

36.   Many healthcare workers wear medical scrubs as part of their daily work uniform.  The claims made by FIGS, including that the FIGS Products reduce hospital acquired infections("HAIs") by 66% deceive, or have a tendency to deceive, a substantial segment of consumers of the FIGS Products.  This deception is material in that it concerns the qualities and properties of this FIGS Products.  Due to the serious concerns over preventing the transmission of infection diseases, Defendant FIGS's false and misleading statements are likely to influence the purchasing decisions of consumers, particularly healthcare workers and others in

9

**SECOND AMENDED COMPLAINT**

the medical health profession who actively seek to reduce the transmission of infectious agents.

37.   FIGS, through Ms. Spear and Ms. Hasson, made false statements regarding the antimicrobial properties of Defendant's FIGS Products through FIGS's social media or to traditional media outlets.   Alternatively, FIGS, through Ms. Spear and Ms. Hasson made false statements regarding the properties and qualities of the FIGS Products through direct advertisers or social media influencers to repeat those false statements, which FIGS knew would be disseminated to consumers.

38.   FIGS has made and/or continues to make the false and misleading health claim that its FIGS Products will protect healthcare workers and their patients from dangerous contaminants. One such claim FIGS has made is the statement that "FIGS antimicrobial fabric reduces hospital acquired infection rates by 66%."   The claim is false and misleading, yet FIGS has been making the claim for years:

> a. From at least as early as September 2013 through February 2015, FIGS's website (wearfigs.com) included the statement that: "Many medical professionals in impoverished areas are poorly compensated for their hard work and dedication. They simply do not have enough money for costly medical uniforms. Without the proper medical attire, the spreading of disease and illness increases exponentially.   **Clean scrubs reduce the hospital-acquired infection rate by 66%** and result in millions of dollars saved from unnecessary treatments."

> b. From at least as early as April 2015 through January 2017, FIGS's website (http://www.wearfigs.com/pages/threads-for-threads) included the statement that: "Many medical professionals in resource-poor areas do not have access to basic medical supplies

including scrubs. **Clean scrubs reduce hospital-acquired infection rates by 66%**."

c. From at least as early as May 2018 through February 2019, FIGS's website (https://www.wearfigs.com/ pages/threads-for-threads) included the statement that "**FIGS antimicrobial fabric reduces hospital acquired infection rates by 66%**."

39. On information and belief, FIGS does not have a study that supports this claim or any similar claim. In other words, on information and belief, FIGS does not have a study that shows that, even if its scrubs do reduce bacteria on the scrubs, that this leads to a 66% reduction in HAIs. To make such a health claim, FIGS needs to have such a study that its statement is true. On information and belief, it does not have any such study.

40. Plaintiff is informed and believe that Ms. Spear and Ms. Hasson knew, or should have known, that the statement regarding this health statement concerning the FIGS Products was false and misleading.

41. Plaintiff has performed testing that contradicts FIGS's statement that "FIGS antimicrobial fabric reduces hospital acquired infection rates by 66%." FIGS's statement is false, misleading, and likely to confuse consumers.

42. Furthermore, contrary to Defendant's statements, the fabric used in the FIGS Products does not pass tests related to the effectiveness of a fluid barrier that FIGS claims is present in the FIGS Products.

43. Based on the above, Ms. Spear's statement in an article published on November 3, 2015 regarding the properties and qualities of the FIGS Products is false and misleading. In that article in the Miami Herald, Ms. Spear stated:

We were the first company to develop an anti-microbial treatment so that bacteria and infection and fluids aren't seeping through and harming the medical professional. That was important to us," Spear said. "our fabric is stain-repellent and has moisture wicking abilities."

44.     Furthermore, FIGS was not the first company to develop antimicrobial treatments for fabric or for scrubs.  Nor was FIGS the first company to use fluid barrier technology in scrubs.

45.     On information and belief, FIGS, Ms. Spear and Ms. Hasson, knew or should have known that the FIGS Products did not reduce HAIs by 66%.  FIGS' claims about a reduction in HAIs constitute health claims.

46.     An image of one of FIGS's advertising statement is as follows:



**Figure 1** - (https://www.wearfigs.com/pages/threads-for-threads, last visited 1/8/2019 [TCF].)

47.     FIGS has made and/or continues to make other misleading claims regarding its FIGS Products, such as the claim FIGS reported on its blog that "We [FIGS] have donated over 90,000 sets of scrubs in 26 countries <u>and have reduced the hospital acquired infection rate by 66% in the areas we have donated to</u>."  (*See* https://www.wearfigs.com/blogs/news/why-i-took-on-the-medical-apparel-industry.)

//
//
//
//
//

48.    The hangtag on FIGS's products, reproduced below, further includes the language that it is "ANTIMICROBIAL: Kills bacteria and infection immediately on contact."   This language is a health claim.   On information and belief, FIGS does not have a study to support this health claim.



**Figure 2 - "FIGS hangtag" stating that the product is "Antimicrobial" and "Kills bacteria and infection immediately on contact."**

49.    Plaintiff knows of testing done on the FIGS Products that shows bacteria is not killed upon contact with the product or even up to 90 minutes after contact.   Thus, FIGS's claim that the FIGS Products "kill[s] bacteria and infection immediately on contact" is false.

50.    Despite the falsity and lack of support for FIGS's misrepresentations regarding the FIGS Products' properties and qualities, these misrepresentations have been repeated by the blog "Nurse Abnormalities."

51.     Specifically, the Nurse Abnormalities blog states:

FIGS is not your average scrub company. For every pair of scrubs sold, they provide a pair to healthcare providers in need. Many medical professionals in high-needs areas do not have clean scrubs. **Clean scrubs can reduce hospital-acquired infections by 66%** – this is a company with a mission larger than providing great looking scrubs.

(http://nurseabnormalities.com/2017/08/01/a-love-affair-for-figs-scrubs/.)

(Emphasis added.)

52.     This article demonstrates that FIGS's false and misleading statements are being disseminated to potential purchasers of the FIGS Products.  Specifically, this blog repeats the unsupported assertion that the FIGS Products reduce HAIs by 66%.

53.     FIGS's representations regarding the FIGS Products' properties and qualities have also been repeated by the website Nurse.org.   Specifically, this website touts FIGS's scrubs saying "Did you know there are healthcare providers worldwide that have never owned a pair of scrubs? That's why Figs developed their Threads for Threads Initiative - helping to outfit healthcare workers in need and reduce hospital-acquired infection by 66%."   (https://nurse.org/articles/figs-scrubs-men-and-women-review-discount-coupon/.)

54.     The article further states:

> *By Angelina Gibson, Nurse.org Staff Writer*
>
> Figs scrubs are making big changes to the technology, comfort, and design of medical scrubs. These ain't yo' grandma's scrubs - no more boxy, saggy, germ-infested scrubs.
>
> With wrinkle resistant, pre-shrunk and odor-control material you'll look and feel your best. On top of that, Figs scrubs help nurses to deliver optimal patient care by reducing hospital-acquired infection through their 100% antimicrobial fabric.
>
> Their scrub fabric is literally made of silver - one the leading antimicrobial agents since ancient times.

**Figure 3 – Nurse.org article**.

**SECOND AMENDED COMPLAINT**

55.    The above incidents represent only a fraction of the false and misleading statements made or disseminated by FIGS related to the FIGS Products. On information and belief, FIGS has engaged in similar behavior using additional social media influencers and platforms.

56.    FIGS's assertion that the FIGS Products reduce HAIs by 66% or that the FIGS Products kill bacteria and infection immediately on contact is false and misleading.  Testing of FIGS's Products has demonstrated that the FIGS Products do not kill bacteria and infection immediately on contact.

57.    Furthermore, the statements made in the above article that FIGS's fabric is 100% antimicrobial and that the fabric is literally made of silver is false and misleading.  The falsity of FIGS's statements have been shown through testing that Plaintiff is aware of.

58.    On information and belief, FIGS, and specifically Ms. Spear and Ms. Hasson, knew that FIGS did not have a basis to assert that the FIGS Products reduce HAIs by 66%, kills bacteria and infection immediately on contact, and are literally made of silver.

59.    FIGS has made statements, bought advertisements, and disseminated information across a variety of platforms and media pushing variations of its claim that the FIGS' Products and/or its fabric treatments reduce HAIs either knowing that such statements are false or misleading, or with a reckless disregard for whether those statements are false or misleading.

60.    On information and belief, FIGS' misrepresentations that "FIGS antimicrobial fabric reduces hospital acquired infection rates by 66%" or "kills bacteria and infection immediately on contact" (which are health claims) are not supported by competent and reliable scientific data.

61.    Hereinafter, the false and misleading statements set forth above, made by FIGS including (1) that the FIGS Products reduce HAIs by 66%; (2) that the FIGS Products kill bacteria and infection immediately on contact; (3) that the FIGS

Products have reduced HAIs by 66% in all of the areas where FIGS has donated scrubs; (4) that the FIGS Products' fabric is 100% antimicrobial and literally made of silver; and (5) that the FIGS Products contain an effective fluid barrier will be collectively referred to as "<u>FIGS's False or Misleading Claims.</u>"

### Testing Done Showing FIGS's Statements Are False

62.     As stated above, Plaintiff is aware of testing that shows FIGS's False or Misleading Claims are indeed false.   This testing was performed by an independent consultant, Skip Palenik ("Palenik"), who works for Microtrace LLC located in Elgin, Illinois.  Palenik received a Bachelor of Science in Chemistry at the University of Illinois at Chicago.  Palenik founded Microtrace LLC in 1992. He is affiliated with several relevant organizations, has taught courses on chemistry and microscopy, has received many research grants, authored over a dozen articles on relevant subject matter, and presented over 200 papers at professional meetings and seminars.

63.     Microtrace purchased a set of FIGS scrubs from www.wearfigs.com on April 9, 2019.  Between April 18, 2019 and May 1, 2019, Palenik performed tests on the FIGS scrubs' top to determine if FIGS's claims were true.  The hang tag said that the FIGS' scrubs were antimicrobial and killed bacteria and infection immediately on contact.

64.     Palenik performed testing to evaluate if the FIGS scrubs killed bacteria on contact as FIGS claimed.  Initially, Palenik examined the FIGS scrubs' top's fabric using a field emission SEM-EDS (scanning electron microscopy and energy dispersive x-ray spectroscopy).

65.     Using SEM-EDS, a bulk elemental analysis of the FIGS scrubs' fabric showed no detectable levels of silver.  The fabric was then analyzed using a trace element analysis technique, by means of x-ray fluorescence microspectroscopy ($\mu$XRF) which also did not detect silver in the fabric.  These screening methods have detection limits on the orders of ~0.1 wt.-% and 0.00001 wt.-% (~10 ppm)

respectively.  Finally, the fabric was examined at high magnifications in the SEM and targeted elemental analysis of individual particles was conducted on the surface of the fabric to screen for silver.  Using this targeted approach, a few particles of silver were detected on the FIGS scrubs' fabric.  Thus, not only was the FIGS scrubs' top not literally made of silver as FIGS claimed, but it hardly contained any silver at all.

66.    Palenik then performed a test to determine how quickly the antimicrobial killed bacteria (if it did at all).  Palenik put three types of bacteria on the FIGS scrubs' top's fibers.  After placing the bacteria on the fibers, Palenik mounted the fibers in a fluorescently tagged viability stain and examined the fibers using a fluorescence microscope.  The bacteria were examined in the viability stain to determine if they were dying as a result of being in contact with the fibers from the FIGS scrubs.

67.    Palenik discovered that 10 minutes after the bacteria contacted the fibers all the bacteria were still alive.  Palenik then tested whether the bacteria remained alive after a longer period of time.  After 255 minutes, only one of the hundreds of bacteria cells placed on the fibers died.  Indeed, when the testing was extended to 24 hours after contact (performed by placing fibers directly into bacterial colonies growing in agar on a Petri dish), the size of the bacterial colonies actually increased, indicating the bacteria continued to grow and multiply and were unaffected by the FIGS scrubs' fabric.  Thus, Palenik's testing showed that the FIGS scrubs' top did not kill bacteria upon contact as claimed by FIGS on the product's hang tag and other advertisements.  Because the FIGS scrubs' top did not kill bacteria on contact (and did not even kill bacteria after a 24-hour period) Palenik's testing also showed that the FIGS scrubs' top is not 100% antimicrobial (or antimicrobial at all).

68.    Palenik also tested to see whether FIGS's claim that its scrubs possess an effective fluid barrier was true.  He concluded it was not true.  Palenik tested the

FIGS scrubs' top via the AATCC Test Method 22-2014, Water Repellency: Spray Test. The FIGS scrubs' fabric consistently scored a 0 on this test meaning that any fluid barrier that the FIGS scrubs' top's fabric possessed had minimal to no effect on water repellency. There were no properties of the FIGS scrubs' top found during Palenik's analyses that would provide fluid barrier protection.

69. Palenik's testing, as described above, also leads to a conclusion that FIGS's claims regarding its scrubs purported ability to reduce HAIs by 66%, including in all areas where FIGS has donated scrubs, are also false. Since Palenik's testing showed that the FIGS scrubs' top did not kill bacteria on contact (or even after a 24-hour period of constant exposure) and that the FIGS scrubs' top did not provide fluid barrier protection, the FIGS scrubs' top could not have the ability to reduce HAIs by 66% (or likely by any percentage). Palenik is unaware of any publicly available scientific study that FIGS could be relying on that could support its claims that its scrubs reduce HAIs by 66%. Thus, based on his testing, Palenik believes that FIGS's claims that its scrubs reduce HAIs by 66% is false.

70. In sum, Palenik's examination of the FIGS scrubs' top showed that all of FIGS's False or Misleading Claims (as defined in paragraph 61) are false.

### FIGS Has Caused Injury to Consumers

71. Healthcare workers and others in the medical health profession who are actual and potential consumers of scrubs and healthcare apparel are and have been misled by FIGS's False or Misleading Claims.

72. On information and belief, consumers in the healthcare industry, namely purchasers of scrubs and healthcare apparel, including but not limited to those individuals that may come in contact with bodily fluids during their workday, make purchasing decisions based on statements made by companies regarding the properties and qualities of the products, including whether such properties and qualities may make them and their patients safer.

73.     On information and belief, consumers have been substantially injured by FIGS's False or Misleading Claims: (a) in the form of paying a premium for the FIGS Products and (b) by exposing and endangering said consumers to a false sense of protection from HAIs, thus jeopardizing the health and safety of these consumers and their patients.

74.     FIGS omitted material facts when it failed to include key facts regarding the scope and truthfulness of its claims regarding the properties and qualities of the FIGS Products.

75.     FIGS omitted key facts from its website, advertising, and promotions. FIGS had exclusive knowledge of material facts not known or reasonably accessible to consumers or to the Plaintiff regarding the properties and qualities of the FIGS Products.

76.     If consumers had known of these non-disclosed facts (as well as the falsity of FIGS' statements) they would have behaved differently and likely not have bought the FIGS Products (especially at a higher price) when the FIGS Products do not provide the properties and qualities claimed.  Furthermore, the consumers likely would have acted differently in regard to taking standard safety precautions.

77.     On information and belief, the reasonable consumer buying scrubs would find FIGS's False or Misleading Claims to be material, including FIGS' misrepresentations that the FIGS Products are able to reduce HAIs by 66% or able to kill bacteria and infection immediately on contact.

78.     The injuries to consumers discussed above are the types of injury that consumers could not have reasonably avoided since they were unaware that the statements FIGS made were false and misleading.

79.     Furthermore, without injunctive relief from this Court, consumers will continue to suffer the injuries, including a threat to their health and safety (as well as the health and safety of their patients).

**SECOND AMENDED COMPLAINT**

**FIGS Has Caused Injury to Plaintiff**

80.     By engaging in the wrongful conduct alleged herein, including the dissemination of FIGS's False or Misleading Claims, FIGS has diverted consumers away from competitors like Plaintiff to FIGS.  Specifically, Plaintiff has lost sales and a share of the market to FIGS because of FIGS's False or Misleading Claim.  Thus, Plaintiff has suffered an injury in fact in the form of lost sales and profits due to FIGS' improper actions.

81.     Additionally, FIGS's False or Misleading Claims has tainted the reputation and marketability of its competitors' products, including Plaintiff's, as consumers have been led to believe that the FIGS Products contain superior qualities and properties to that of its competitors.  Any belief by the consuming public that SPI's products are inferior to the FIGS' Products is untrue.  Thus, FIGS's False or Misleading Claims are causing immediate and irreparable injury to Plaintiff, including injury to Plaintiff's business, reputation, and goodwill.

82.     Plaintiff has lost revenue, and will continue losing revenue, as consumers purchase the FIGS' Products instead of SPI's products due to FIGS's False or Misleading Claims.

83.     Furthermore, FIGS's wrongful conduct has also allowed it to raise millions of dollars in funding which has enabled it to disseminate its false advertising more profusely.

84.     Furthermore, on information and belief, FIGS wrongfully has used, and is using SPI's confidential information and data taken without permission from Blackstone by Ms. Spear.  Thus, FIGS has improperly used SPI's resources and knowledge to compete against SPI.

85.     Without injunctive relief from this Court, Plaintiff will continue to suffer injury in the form of lost sales, lost market share, loss of goodwill, and harm to its reputation all because of Defendant's actions.

**SECOND AMENDED COMPLAINT**

# FIRST CAUSE OF ACTION

## False Advertising in Violation of 15 U.S.C. § 1125(a)

86.     Plaintiff re-alleges and incorporates by reference each of the numerical paragraphs both above and below as if fully set forth herein.

87.     The acts of Defendant as set forth above and below, including the advertising and dissemination of FIGS's False or Misleading Claims, constitute false advertising in violation of the 15 U.S.C. § 1125(a).   As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.   Further, Defendant has caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to Plaintiff's business, reputation and goodwill, for which there is no adequate remedy at law.   Plaintiff is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining Defendant from engaging in future acts of false advertising and ordering removal of all of Defendant's false advertisements.

88.     The acts of Defendant as set forth above and below constitute a false or misleading representation of fact in commercial advertising or promotion, in interstate commerce in connection with goods or services, where Defendant's representation misrepresents the nature and/or qualities of Defendant's goods, and Plaintiff has been damaged and is likely to be damaged in the future by Defendant's acts.

89.     The acts of Defendant as set forth above and below, particularly Defendant's false and misleading misrepresentations, caused commercial injury to Plaintiff, such injury harming Plaintiff's ability to compete with the Defendant.

90.     The acts of Defendant as set forth above and below, particularly Defendant's false and misleading misrepresentations in its commercial advertising and promotion of its FIGS Products, are the proximate cause of Plaintiff's injury. Defendant's acts deceived consumers which caused those consumers to withhold trade from Plaintiff.

91.    Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendant the damages sustained by Plaintiff because of Defendant's acts in violation of 15 U.S.C. 1125(a).  As a result of the acts complained herein, Plaintiff has suffered damages in excess of this Court's minimum jurisdiction, the precise amount of which will be proven at trial.

92.    Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendant the gains, profits, and advantages that Defendant has obtained because of Defendant's acts in violation of 15 U.S.C. § 1125(a), the precise amount of which will be proven at trial.

93.    Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover the costs of this actions.  Moreover, Defendant's conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiff to recover additional damages, up to three times the amount of actual damages, and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### Unfair Business Practices

### in Violation of CAL. BUS. & PROF. CODE § 17200

94.    Plaintiff re-alleges and incorporates by reference each of the numerical paragraphs both above and below as if fully set forth herein.

95.    The acts of Defendant as set forth above and below constitute unfair, unlawful, and/or fraudulent business practices in violation of California Business and Professions Code § 17200.

96.    Defendant's actions described herein constitute unfair business practices as Defendant has made false and misleading misrepresentations about its FIGS Products.  Defendant's actions described herein have injured Plaintiff and others in the marketplace because they have competed using false advertising, thus unfairly acquiring customers through unfair means.

97.   For example, products treated with an antimicrobial agent that make public health claims must be registered with the Environmental Protection Agency ("EPA") to make those claims.  *See* EPA guidelines from Pesticide Notice (PR) 2000-1, Applicability of the Treated Articles Exemption to Antimicrobial Pesticides; *see also* 40 C.F.R. 152, *et seq*.

98.   The EPA provides an exemption from registration for products that contain an antimicrobial agent where the agent is solely included to protect the product from bacteria that cause odor or degrade the product.

99.   However, FIGS claims that its antimicrobial agent does more than protect the product from odor of degradation, so FIGS needed to register its products with the EPA.  On information and belief, FIGS has not registered its products with the EPA.

100.   Defendant's actions described herein constitute unlawful business practices, for at least the following violations (listed in paragraphs 101-109 below).

101.   As set forth herein, FIGS has competed unlawfully for purposes of this cause of action on the basis that FIGS has violated 15 U.S.C. § 1125, which prohibits false advertising.

102.   The Federal Trade Commission ("FTC") requires all health claims be supported by "competent and reliable scientific data."  (15 U.S.C. § 45, *et seq*.) Further, the FTC requires Defendant to be responsible for both express and implied health claims.  Because FIGS's health claims are not supported by "competent and reliable scientific data" FIGS has competed unlawfully for purposes of this cause of action by violating 15 U.S.C. § 45.

103.   Additionally, FIGS needed to register its products with the California Department of Pesticide Regulation ("DPR") because of its health claims.  On information and belief, FIGS has not registered its products with the state of California.

**SECOND AMENDED COMPLAINT**

104.   As set forth herein, FIGS has competed unlawfully for purposes of this cause of action on the basis that FIGS has violated 7 U.S.C. §§ 136, *et seq.,* which requires registration of pesticides.

105.   As set forth herein, FIGS has competed unlawfully for purposes of this cause of action on the basis that FIGS has violated 15 U.S.C. § 52, which prohibits the dissemination of false advertisements.

106.   As set forth herein, FIGS has competed unlawfully for purposes of this cause of action on the basis that FIGS has violated 16 C.F.R. §§ 255.0, *et seq*., which governs consumer, expert, and organizational endorsements and requirements related to disclosures of material connections.

107.   As set forth herein, FIGS, on information and belief, has failed to register its products with the EPA and has violated 40 C.F.R. § 152, *et seq*.

108.   As set forth herein, FIGS has competed unlawfully for purposes of this cause of action on the basis that FIGS has violated Cal. Code of Regulations § 6147, *et seq*., which requires registration of pesticide products.

109.   On information and belief, and as set forth herein, FIGS has competed unlawfully with SPI by taking and using SPI's confidential information.

110.   Defendant's actions described herein also constitute fraudulent business practices.  Specifically, Defendant's statements about the properties and abilities of Defendant's FIGS Products were false and misleading, and Defendant knew its claims were false and misleading.

111.   FIGS has deceived members of the public in believing that Defendant's FIGS Products will reduce HAIs by 66% or that they kill bacteria on contact.  Specifically, Defendant has made multiple statements through its website, advertising, and promotions directly and indirectly through social media influencers that tout these qualities of Defendant's FIGS Products.  Testing reveals these statements are false.

112. Defendant's actions constitute a fraudulent misrepresentation that directly resulted in injury to Plaintiff, consumers, and others.  Consumers relied on Defendant's misrepresentations regarding the properties of Defendant's FIGS Products when purchasing those goods to those consumers harm, and the harm of Plaintiff who lost these sales because of Defendant's false and misleading statements.

113. Defendant's actions resulted in substantial injury to both the Defendant and consumers, wherein that injury is not outweighed by any countervailing benefits to consumers or to competition, and, is not an injury that consumers themselves could reasonably have avoided.

114. As a result of Defendant's actions, consumers will continue to be deceived and purchase FIGS Products when the FIGS Products do not contain the qualities and properties that the consumers are paying for, and consumers will further be endangered by purchasing FIGS Products because Defendant's make false and misleading claims about those FIGS Products which relate to the consumers' health.  Furthermore, FIGS' false and misleading claims endanger the health and safety of the patients that these consumers care for.

115. As a result of Defendant's actions, Plaintiff has suffered and will continue to suffer injury to its business, reputation, and goodwill. Plaintiff has suffered an injury in fact as a direct result of the unfair competition of Defendant, including lost sales.  Plaintiff has also incurred certain costs because of Defendant's unfair competition.

116. Defendant has derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendant's unfair, unlawful, and/or fraudulent business practices in an amount that will be proven at trial.

117. Furthermore, without injunctive relief from this Court, Defendant will continue to derive and receive, gains, profits, and advantages from consumers, and

Plaintiff will continue to suffer injury in the form of lost sales, lost market share, and lost goodwill, because of Defendant's actions.

118.   Additionally, if injunctive relief is not issued, the public at large will be deceived into purchasing FIGS' products, which could be harmful to the public's health due to the fact Defendant makes false and misleading statements about its FIGS' products ability to reduce hospital acquired infections.

119.   As a result of Defendant's unfair, unlawful, and fraudulent business practices, Plaintiff is entitled to injunctive relief to prohibit Defendant from continuing to act in this manner.

120.   As a result of Defendant's unfair, unlawful, and fraudulent business practices, Plaintiff is entitled to restitution at an amount to be proven at trial.

### THIRD CAUSE OF ACTION

**Untrue and Misleading Advertising**

**In Violation of CAL. BUS. & PROF. CODE §17500**

121.   Plaintiff re-alleges and incorporates by reference each of the numerical paragraphs both above and below as if fully set forth herein.

122.   The acts of Defendant as set forth above and below constitute untrue and misleading advertising in violation of California Business and Professions Code § 17500.  As a result of Defendant's actions, Plaintiff has suffered and will continue to suffer injury to its business, reputation, and goodwill.

123.   Defendant's knew or reasonably should have known that its False or Misleading Claims described above about its products would be disseminated by blogs and social media influencers.

124.   The acts of Defendant as set forth above and below, including Defendant's False or Misleading Claims, constitute statements in advertising that are false and misleading, and Defendant knew, or by the exercise of reasonable care should have known, that the statements were false and misleading.

**SECOND AMENDED COMPLAINT**

125.    Defendant's False or Misleading Claims about the qualities and properties of its FIGS Products, including but not limited to Defendant's misrepresentation that FIGS Products reduce hospital acquired infections, are likely to deceive a reasonable consumer of medical scrubs into purchasing the medical scrubs.

126.    At the time that Defendant made the statements about the qualities and properties of its FIGS Products, Defendant knew, or by the exercise of reasonable care, should have known that the statements were untrue or misleading.

127.    Defendant has derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendant's untrue or misleading advertising in an amount to be proven at trial.

128.    Furthermore, without injunctive relief from this Court, Defendant will continue to derive and receive, gains, profits, and advantages from consumers by reason of said conduct, and Plaintiff will continue to suffer injury in the form of lost sales, lost market share, and lost goodwill, all because of Defendant's actions.

129.    Additionally, if injunctive relief is not issued, the public at large will be deceived into purchasing FIGS' products, which could be harmful to the public's health (including healthcare workers and the patients they care for) due to the fact Defendant makes false and misleading statements about the FIGS' Products properties and qualities, including the false statement that the FIGS' Products reduce HAIs by 66%.

130.    As a result of Defendant's false and misleading advertising, Plaintiff is entitled to injunctive relief to prohibit Defendant from continuing to act in this manner.

131.    As a result of Defendant's false and misleading advertising, Plaintiff is entitled to restitution at an amount to be proven at trial

**SECOND AMENDED COMPLAINT**

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for Judgment against Defendants as follows:

1.    A preliminary and permanent injunction requiring Defendant to discontinue advertising, marketing, packaging, disseminating, using and otherwise making false and misleading statements about Defendant FIGS' products.

2.    Injunctive relief requiring Defendant to provide citation in future advertisements supporting any scientific or health claims it makes regarding its FIGS Products or the fabric used in its FIGS Products.

3.    Compensatory damages;

4.    Statutory damages pursuant to 15 U.S.C. § 1117;

5.    Exemplary damages;

6.    Restitution;

7.    Actual damages;

8.    Disgorgement of profits;

9.    Interest at the legal rate per annum;

10.    All costs of suit;

11.    Such other and further relief as this Court deems just and proper; and

12.    Attorneys' fees.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on its claims.


Dated:  September 9, 2019              **MICHELMAN & ROBINSON, LLP**


                                      By:    /s/ Marc R. Jacobs
                                             Mona Z. Hanna
                                             Marc R. Jacobs
                                             Taylor C. Foss
                                             Robert D. Estrin
                                             Attorneys for Plaintiff
                                             STRATEGIC PARTNERS, INC.

**SECOND AMENDED COMPLAINT**