Jacob S. Kreilkamp (State Bar No. 248210)
    jacob.kreilkamp@mto.com
Adam B. Weiss (State Bar No. 296381)
    adam.weiss@mto.com
Sara A. McDermott (State Bar No. 307564)
    sara.mcdermott@mto.com
James Salzmann (State Bar No. 324527)
    james.salzmann@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Ekwan E. Rhow (State Bar No. 174604)
    erhow@birdmarella.com
Julia B. Cherlow (State Bar No. 290538)
    jcherlow@birdmarella.com
Fanxi Wang (State Bar No. 287584)
    fwang@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

*Additional Counsel on Next Page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRATEGIC PARTNERS, INC, | CASE NO. 2:19-cv-02286-JWH-KS |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS** |
| vs. | |
| FIGS, INC, CATHERINE ("TRINA") SPEAR, HEATHER HASSON, | Date:   March 19, 2021
Time:   9:00 a.m.
Crtrm.:  2 |
| Defendants. | Assigned to Hon. John W. Holcomb |

*Additional Counsel*

Xiaonan April Hu (State Bar No. 321354)
    april.hu@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Suite 500E
Washington, D.C. 20001-5369
Telephone:  (202) 220-1100
Facsimile:   (202) 220-2300

Stephen J. Erigero (State Bar No. 121616)
    stephen.erigero@ropers.com
Pascale Gagnon (State Bar No, 207117)
    pascale.gagnon@ropers.com
ROPERS MAJESKI PC
445 South Figueroa Street, Suite 3000
Los Angeles, California 90071-1619
Telephone: (213) 312-2000
Facsimile: (213) 312-2001

Attorneys for Defendants

## <u>NOTICE OF MOTION</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 19, 2021, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 2 of the United States District Court for the Central District of California, located at 3470 12th St., Riverside, California, 92501, Defendants FIGS, Inc., Catherine "Trina" Spear, and Heather Hasson will, and hereby do, move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to the First Cause of Action (in part) of Plaintiff Strategic Partners, Inc.'s Fifth Amended Complaint; and as to the Second, Third, Fourth, Sixth, Seventh, and Eighth Causes of Action in their entirety.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this matter, and such other matters as may be presented to the Court at the hearing.

This motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on February 12, 2021.

DATED:  February 19, 2021

Jacob S. Kreilkamp
Munger, Tolles & Olson LLP

By:     _/s/ Jacob S. Kreilkamp_
Jacob S. Kreilkamp
Attorneys for Defendants

DATED:  February 19, 2021

Ekwan E. Rhow
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By:     _/s/ Ekwan E. Rhow_
Ekwan E. Rhow
Attorneys for Defendants

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  February 19, 2021

Pascale Gagnon
ROPERS MAJESKI PC


By:      */s/ Pascale Gagnon*
                Pascale Gagnon
        Attorneys for Defendants

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............. 2

III.  ARGUMENT ....................................................................................... 5

    A.    LEGAL STANDARD ................................................................. 5

    B.    FIGS IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON SPI'S LANHAM ACT CLAIMS ...................................... 5

         1.    66% HAI Statement ......................................................... 7

         2.    Silver Statement ............................................................ 10

         3.    Fluid Barrier Statement .................................................. 12

         4.    One-for-One Claim ......................................................... 12

    C.    FIGS IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON SPI'S UNFAIR BUSINESS PRACTICES CLAIMS RELATING TO FIGS' MARKETING ................................... 15

    D.    MS. SPEAR IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON SPI'S CONVERSION CLAIM ............................. 17

    E.    DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS ON SPI'S UNFAIR BUSINESS PRACTICES CLAIM RELATING TO CONVERSION ............................. 20

    F.    DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS ON SPI'S BREACH OF FIDUCIARY DUTY CLAIMS ................................................................... 21

         1.    CUTSA Bars Both Fiduciary Duty Claims ................................ 21

         2.    SPI's Breach of Fiduciary Duty Claim Alleges a Legal Impossibility ........................................................ 22

         3.    SPI's Claim for Aiding and Abetting Breach of Fiduciary Duty Is Premised on the Same Legal Impossibility .................. 23

IV.  FURTHER AMENDMENTS ARE NOT WARRANTED ........................... 24

V.   CONCLUSION ................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

**FEDERAL CASES**

4

*23andMe, Inc. v. Ancestry.com DNA, LLC*,
   356 F. Supp. 3d 889 (N.D. Cal. 2018)............................................................. 15, 17

5

6

*578539 B.C., Ltd. v. Kortz*,
   No. CV 14-04375, 2015 WL 12670488 (C.D. Cal. Apr. 10, 2015).................... 14

7

*Academy of Motion Picture Arts & Sciences v. GoDaddy.com, Inc.*,
   No. CV 10-03738, 2015 WL 12684340 (C.D. Cal. Apr. 10, 2015).................... 16

8

9

*Allen v. City of Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990) ............................................................................. 25

10

11

*Amersbach v. City of Cleveland*,
   598 F.2d 1033 (6th Cir. 1979) ........................................................................... 24

12

13

*Appliance Recycling Centers of Am., Inc. v. JACO Environmental, Inc.*,
   378 F. App'x 652 (9th Cir. 2010) ........................................................................ 6

14

*Ascon Properties, Inc. v. Mobil Oil Co.*,
   866 F.2d 1149 (9th Cir. 1989) ........................................................................... 25

15

16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 23

17

18

*Butler v. Resurgence Financial, LLC*,
   521 F. Supp. 2d 1093 (C.D. Cal. 2007)........................................................ 5, 7, 10

19

20

*Caltex Plastics, Inc. v. Elkay Plastics Co.*,
   No. 12–cv–10033, 2015 WL 13283255 (C.D. Cal. Feb. 4, 2015) .................... 8, 9

21

22

*Carmen v. San Francisco Unified School District*,
   982 F. Supp. 1396 (N.D. Cal. 1997).................................................................. 24

23

24

*Carson v. Kanazawa*,
   No. CV 14-00544, 2017 WL 3444764 (D. Haw. Apr. 30, 2017) ....................... 22

25

26

*In re Century 21-RE/MAX Real Estate Advertising Claims Litigation*,
   882 F. Supp. 915 (C.D. Cal. 1994)............................................................ 7, 8, 10

27

*ChromaDex, Inc. v. Elysium Health, Inc.*,
   369 F. Supp. 3d 983 (C.D. Cal. 2019)........................................................... 18, 19

28

1

2

### TABLE OF AUTHORITIES
#### (Continued)

<u>Page</u>

3

4

*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir. 1994) ...................................................................... 15

5

6

*Cook, Perkiss Liehe, Inc. v. Northern California Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) ...................................................................... 11

7

8

*Deerpoint Group, Inc. v. Agrigenix, LLC*,
  345 F. Supp. 3d 1207 (E.D. Cal. 2018) ...................................................... 25

9

*Foman v. Davis*,
  371 U.S. 178 (1962) ..................................................................................... 24

10

11

*Heliotrope General, Inc. v. Ford Motor Co.*,
  189 F.3d 971 (9th Cir. 1999) ........................................................................ 5

12

13

*Heller v. Cepia, L.L.C.*,
  No. C 11–01146, 2012 WL 13572 (N.D. Cal. Jan. 4, 2012) ....................... 20

14

15

*James D. Pauls, Ltd. v. Pauls*,
  633 F. Supp. 34 (S.D. Fla. 1986) ................................................................. 22

16

17

*Knappenberger v. City of Phoenix*,
  566 F.3d 936 (9th Cir. 2009) ........................................................................ 5

18

19

*L.A. Taxi Cooperative, Inc. v. Uber Technologies, Inc.*,
  114 F. Supp. 3d 852 (N.D. Cal. 2015) ........................................................ 16

20

*Leadsinger, Inc. v. BMG Music Publishing*,
  512 F.3d 522 (9th Cir. 2008) ....................................................................... 24

21

22

*Leigh v. Jewell*,
  No. 11-cv-00608, 2014 WL 31675 (D. Nev. Jan. 3, 2014) ........................... 5

23

24

*Luxpro Corp. v. Apple Inc.*,
  No. C 10–030, 2011 WL 3566616 (N.D. Cal. Aug. 12, 2011) .................... 16

25

26

*Mattel, Inc. v. MGA Entertainment, Inc.*,
  No. CV 04-9049, 2011 WL 8427611 (C.D. Cal. Mar. 28, 2011) ................ 24

27

*Mays v. Wal-Mart Stores, Inc.*,
  354 F. Supp. 3d 1136 (C.D. Cal. 2019) ........................................................ 5

28

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*McGlinchy v. Shell Chemical Co.*,
  845 F.2d 802 (9th Cir. 1988) ......................................................................... 24

*Meinhold v. Sprint Spectrum, L.P.*,
  No. CIV. S-07-00456, 2007 WL 1456141 (E.D. Cal. May 16, 2007) ................. 13

*In re Mortgage Fund '08 LLC*,
  527 B.R. 351 (N.D. Cal. 2015) ....................................................................... 24

*O'Connor v. Uber Technologies, Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) .............................................................. 17

*Outlaw Laboratory, LP v. Shenoor Enterprise, Inc.*,
  371 F. Supp. 3d 355 (N.D. Tex. 2019) ............................................................. 11

*Procter & Gamble Co.*,
  747 F.2d 114 (2d Cir. 1984) ........................................................................... 14

*Robert Half International, Inc. v. Ainsworth*,
  68 F. Supp. 3d 1178 (S.D. Cal. 2014) ......................................................... 20, 22

*Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*,
  902 F.2d 222 (3d Cir. 1990) ........................................................................... 14

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) .......................................................................... 13

*Sigma Dynamics, Inc. v. E. Piphany, Inc.*,
  No. C 04-0569, 2004 WL 2648370 (N.D. Cal. June 25, 2004) ...................... 6, 11

*Skydive Ariz., Inc. v. Quattrocchi*,
  673 F.3d 1105 (9th Cir. 2012) .......................................................................... 6

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) .......................................................................... 7

*SunPower Corp. v. SolarCity Corp.*,
  No. 12-CV-00694, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ..................... 19

*TalentBurst, Inc. v. Collabera, Inc.*,
  567 F. Supp. 2d 261 (D. Mass. 2008) ............................................................... 24

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

1

<u>**TABLE OF AUTHORITIES**</u>
**(Continued)**

2

<u>**Page**</u>

3

*Total Recall Technologies v. Luckey*,
    No. C 15-02281, 2016 WL 199796 (N.D. Cal. Jan. 16, 2016) ...................... 19, 20

4

5

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
    862 F. Supp. 2d 1009 (N.D. Cal. 2012)................................................. 14

6

7

*Troxel Manufacturing Co. v. Schwinn Bicycle Co.*,
    489 F.2d 968 (6th Cir. 1973) ....................................................... 25

8

9

*U-Haul International, Inc. v. Jartran, Inc.*,
    522 F. Supp. 1238 (D. Ariz. 1981) ................................................... 8

10

11

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .................................................. 13, 14

12

13

*Waymo LLC v. Uber Technologies, Inc.*,
    256 F. Supp. 3d 1059 (N.D. Cal. 2017)............................................... 21

14

15

*Zadrozny v. Bank of N.Y. Mellon*,
    720 F.3d 1163 (9th Cir. 2013) .................................................... 25

16

**STATE CASES**

17

*American Credit Indemnity Co. v. Sacks*,
    213 Cal. App. 3d 622 (1989) ..................................................... 21

18

19

*Everest Investors 8 v. Whitehall Real Estate Ltd. Partnership XI*,
    100 Cal. App. 4th 1102 (2002)................................................... 23

20

21

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
    171 Cal. App. 4th 939 (2009).................................................... 18

22

23

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ........................................................ 15

24

25

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ......................................................... 18

26

27

*Silvaco Data Systems v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010)........................................... 18, 19, 20, 21

28

# TABLE OF AUTHORITIES
(Continued)

Page

*Strategic Partners, Inc. v. Spear*,
   No. 19CHCV00707 (Cal. Super. Ct. Sept. 3, 2019) .......................................3, 22

**FEDERAL STATUTES**

Lanham Act.............................................................................................*passim*

Lanham Act § 43(a) ....................................................................................... 5

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 and 17500 ..................................3, 15, 17

Cal. Civ. Code § 3426.1(d)............................................................................ 18

Cal. Civ. Code § 3426.1(d)(1) ....................................................................... 19

Cal. Civ. Code § 3426.7................................................................................. 18

Cal. Corp. Code § 164 ................................................................................... 22

California Uniform Trade Secrets Act ("CUTSA") ...........................*passim*

Comm'rs Prefatory Note to Uniform Trade Secrets Act,
   14 West (U.L.A.) 537 ............................................................................... 21

Del. Code Ann. Title 8, § 141(b)................................................................... 22

**FEDERAL RULES**

Fed. R. Civ. Proc. 9(b) ......................................................................... 13, 14

Fed. R. Civ. Proc. 12(b)(6) ............................................................................ 5

Fed. R. Civ. Proc. 12(c) ............................................................................ 2, 5

**OTHER AUTHORITIES**

5 McCarthy on Trademarks and Unfair Competition (5th ed. 2020)..................... 8, 9

## I.    INTRODUCTION

Over the last two years, Plaintiff Strategic Partners, Inc. ("SPI") has amended its complaint *five* times—most recently after Defendants prevailed in part, for the second time, on a motion to dismiss for failure to state a claim for relief.  (*See* Dkt. Nos. 42, 47, 144, 152.)  But despite these many opportunities, and even putting aside how replete its complaint is with falsehoods, SPI still has failed to state a cognizable claim as to virtually all of its claims.  Defendants now bring this motion for judgment on the pleadings so that the Court can narrow the case to the tiny sliver that might require summary judgment or trial to adjudicate.

Discovery already has established that *all* of SPI's claims suffer from severe factual defects, and on that basis fail.  But even crediting the allegations in the Fifth Amended Complaint, nearly all of SPI's claims are fatally deficient, and the Court should dismiss them immediately.

First, SPI's false advertising claims revolve around a series of statements FIGS, Inc. ("FIGS") allegedly made about its products, but the Fifth Amended Complaint fails to properly plead the following claims in that:

- SPI fails to allege that the statement that FIGS' scrubs reduce hospital-acquired infection rates by 66% is actually false or misleading;
- SPI fails to allege that FIGS claimed its scrubs have a "fluid barrier;"
- SPI relies upon various statements allegedly made by third parties—not FIGS—that do not constitute actionable commercial speech; and
- SPI fails to allege other claims with the necessary specificity.

Additionally, SPI's claims regarding the alleged use of its confidential materials are (aside from being untrue) plainly preempted by the California Uniform Trade Secrets Act.  What is more, SPI's fiduciary duty claims are literally impossible to prove because they are premised on the allegation that a limited partnership, the Blackstone Group ("Blackstone"), sat on SPI's board—which a partnership cannot do as a matter of law.

1      Perhaps for these reasons, SPI has attempted to litigate this case well beyond

2  the four corners of the complaint, expanding its discovery efforts to include

3  allegedly false statements that it never pled, as well as trying to conjure up new (and

4  farfetched) ways that FIGS could have sourced SPI's confidential information

5  irrespective of any connection to Blackstone—the sole theory presented in the

6  Complaint—all so that it could impose a financial burden on FIGS and try to use

7  this litigation to slow FIGS down competitively.  In light of the deficiencies in the

8  operative pleading, and pursuant to Federal Rule of Civil Procedure 12(c),

9  Defendants respectfully move this Court for judgment on the pleadings as to the

10  First Cause of Action in part, and as to the Second, Third, Fourth, Sixth, Seventh,

11  and Eighth Causes of Action in full, without leave for further amendment.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

13      In 2012, Heather Hasson founded FIGS.  Shortly thereafter, Catherine "Trina"

14  Spear joined her as a co-founder and co-CEO.  Together, they developed a new type

15  of healthcare apparel business.  Rather than rely upon the outdated model used by

16  industry incumbents like SPI—one in which commoditized scrubs are sold to brick-

17  and-mortar retailers that healthcare professionals must physically visit—FIGS

18  pioneered a new strategy, designing all-new healthcare apparel that is comfortable,

19  stylish, and high-performing, and selling it through its own direct-to-consumer

20  website where healthcare professionals can conveniently shop for apparel that suits

21  their needs.  FIGS' innovative approach led to immediate success, significantly

22  disrupting SPI's outdated retailer model and spurring SPI to obsessively track—and

23  ultimately use litigation and media alike to try to thwart—FIGS' ascent.

24      What began as relatively innocuous discussions among SPI executives about

25  replicating FIGS' polished, fashionable marketing videos and advertising

26  campaigns, as well as FIGS' user-friendly web designs, eventually devolved into a

27  desperate hunt for health claims that SPI could twist into a hook for legal action

28  against FIGS.  It is therefore no coincidence that on February 22, 2019, after SPI's

CEO wondered in emails "*[h]ow long will it take for ours to be as good as theirs?*" and "*[h]ow do we attack them?*," SPI filed its first Complaint against FIGS in Los Angeles Superior Court, baselessly accusing FIGS of engaging in false advertising and unfair business practices.  (*See* Dkt. No. 1.)

SPI subsequently amended its Complaint *five* times, including once after FIGS successfully removed the action to federal court; once after the Court granted FIGS' motion to dismiss; once to add Ms. Spear and Ms. Hasson as defendants and to add state tort law claims;[1] and once to correct additional pleading deficiencies. (Dkt. Nos. 16, 47, 100, 113.)  Finally, after the Court granted FIGS' most recent motion to dismiss with leave to amend, SPI filed the operative Fifth Amended Complaint on August 17, 2020.  (Dkt. No. 152.)

The Fifth Amended Complaint advances eight causes of action.  In the First Cause of Action, SPI contends that FIGS violated the Lanham Act by making several allegedly false statements, including that (1) in the areas where FIGS donates scrubs[2], they reduce hospital-acquired infection rates ("HAIs") by 66% (the "66% HAI Statement"); (2) FIGS' scrubs kill bacteria and infection immediately on contact; (3) FIGS' scrubs are 100% antimicrobial and "literally" made of silver (the "Silver Statement"); and (4) FIGS' scrubs "contain an effective fluid barrier" (the "Fluid Barrier Statement"); as well as that FIGS (5) donates "a like scrub for every scrub consumers purchased" (the "One-for-One Claim").  (*See* Dkt. No. 152 ¶ 71.) These statements are also the basis of SPI's Second and Fourth Causes of Action, alleging unfair business practices and false advertising in violation of California Business and Professions Code sections 17200 and 17500; and part of the basis of

---

[1] Between its Second and Third Amended Complaints, SPI filed an action against Ms. Spear and Ms. Hasson in California Superior Court containing numerous allegations identical to those in this action.  *See Strategic Partners, Inc. v. Spear*, No. 19CHCV00707 (Cal. Super. Ct. Sept. 3, 2019).  The state court action since has been stayed given the overlap in allegations between that action and the present one.
[2] E.g., in "resource-poor areas."  (Dkt. No. 152 ¶ 45(b).)

1    the Fifth, alleging intentional interference with prospective economic relations.  (*Id.*

2    ¶¶ 109–126, 136–150, 152–158.)

3         The remaining four causes of action concern (false) allegations that Ms. Spear

4    acquired certain of SPI's confidential materials while working at Blackstone, and

5    that she used that confidential information in developing FIGS' business.  Claims

6    relating to these allegations include conversion (Sixth Cause of Action); further

7    unfair business practices (Third Cause of Action); breach of fiduciary duty (Seventh

8    Cause of Action), and aiding and abetting a breach of fiduciary duty (Eighth Cause

9    of Action).  (Dkt. No. 152 ¶¶ 127–135, 159–214.)

10        The Fifth Amended Complaint fares little better than its predecessors, and is

11   replete with pleading deficiencies.  This is apparent both from the face of the

12   Complaint itself and from the fact that SPI recently filed a meritless application for

13   preliminary injunctive relief on statements that are *materially different* from the

14   ones SPI identifies as the basis for its Lanham Act claim.  (Dkt. No. 179.)  For

15   instance, while the Fifth Amended Complaint challenges alleged advertising

16   statements that FIGS' scrubs "contain an effective fluid barrier" and are "100%

17   antimicrobial and literally made of silver," SPI now seeks an injunction on different,

18   far broader claims; e.g., that FIGS' scrubs are simply "antimicrobial" or "liquid

19   repellent."  (*Compare* Dkt. No. 152 ¶ 71, *with* Dkt. No. 179 at 6.)  These are *not* the

20   statements that SPI actually alleges give rise to liability.[3]

21        Put simply, SPI now has had not one, not two, but *six* bites at the apple.  Its

22   consistent inability to put together an amended complaint that states a plausible

---

[3] Nor is this the only time SPI has sought to go beyond the four corners of its
Complaint.  On February 5, 2021, SPI asserted before Judge Stevenson its intent to
pursue an *entirely different* theory regarding the alleged use of SPI's confidential
information: namely, that non-party FIGS investors obtained such information from
R.W. Baird, SPI's investment bank.  (*See* Dkt. No. 225 at 24:2-22.)  In addition to
having no basis in fact, this theory has no relation whatsoever to the operative
allegations that Ms. Spear converted confidential information from Blackstone, or
that she had a fiduciary duty to SPI by virtue of Blackstone's "board membership."

basis for relief on a host of its claims should preclude further consideration of those claims.  FIGS thus respectfully moves the Court for judgment on the pleadings.

## III.  ARGUMENT

### A.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 939 (9th Cir. 2009) (internal quotation marks omitted); *see also Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978–79 (9th Cir. 1999) (same).  That does not mean that "conclusory allegations and unwarranted inferences are sufficient to defeat a motion for judgment on the pleadings." *Butler v. Resurgence Fin., LLC*, 521 F. Supp. 2d 1093, 1095 (C.D. Cal. 2007).  They are not.  *Id.*  "The standard applied on a Rule 12(c) motion is essentially the same as that applied on [a] motion to dismiss pursuant to the Federal Rule of Civil Procedure 12(b)(6)."  *Id.*  "A Rule 12(c) motion may thus be predicated on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal claim." *Mays v. Wal-Mart Stores, Inc.*, 354 F. Supp. 3d 1136, 1141 (C.D. Cal. 2019).

Prior to the commencement of trial, a Rule 12(c) motion "may be filed at any time as long as it does not unduly delay proceedings." *Leigh v. Jewell*, No. 11-cv-00608, 2014 WL 31675, at *6 (D. Nev. Jan. 3, 2014).  Such a motion may be timely even when brought immediately prior to summary judgment, including where "prompted by the plaintiff's discovery requests, which defendants believe are improper given the nature of this action." *Id.*

### B.   FIGS IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON SPI'S LANHAM ACT CLAIMS

"There are five elements to a false advertising claim under Section 43(a) of

the Lanham Act: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). Failure to satisfy any *one* of these elements is fatal to a claim for relief. *See, e.g.*, *Appliance Recycling Ctrs. of Am., Inc. v. JACO Env't, Inc.*, 378 F. App'x 652, 654 (9th Cir. 2010) (per curiam) (affirming grant of summary judgment where none of the statements at issue "satisfie[d] all the necessary elements" of a false advertising claim under the Lanham Act).

SPI's Fifth Amended Complaint suffers from both a lack of a cognizable legal theory as well as insufficient facts (even as alleged) to support a cognizable legal claim. With respect to SPI's Lanham Act claims as set forth in the First Cause of Action, SPI has failed to allege that certain of FIGS' statements were or are literally false, or that FIGS *even made* the statements SPI is challenging. For example, SPI has alleged only that a *third-party website* once wrote that FIGS' "scrub fabric is literally made of silver." (Dkt. No. 152 ¶¶ 63–65.) However, SPI acknowledges in its Complaint that FIGS scrubs *do* contain "particles of silver," making the statement *literally true*. (*Id.* ¶ 75.) Further, statements attributable only to third parties without evidence or allegations of republishing by the defendant are not actionable as commercial speech under the Lanham Act and cannot give rise to liability. *See, e.g.*, *Sigma Dynamics, Inc. v. E. Piphany, Inc.*, No. C 04-0569, 2004 WL 2648370, at *4 (N.D. Cal. June 25, 2004) (recommending motion to dismiss be granted where the plaintiff's complaint failed to allege that third-party reports were "republished" by the defendant to target consumers). Elsewhere in its Fifth

Amended Complaint, SPI alleges—without any supporting citation or reference—that FIGS misrepresented both the number of scrubs it donated to charity and that FIGS donated "lower cost scrubs" different from those purchased by its customers in the United States.  (Dkt. No. 152 ¶¶ 55–56.)  But these "conclusory allegations and unwarranted inferences" cannot, and do not, survive a motion for judgment on the pleadings.  *See Butler*, 521 F. Supp. 2d at 1095.

Because SPI's First Cause of Action is deficient as a matter of law, FIGS is entitled to judgment on the pleadings.

### 1.    66% HAI Statement

SPI's Fifth Amended Complaint repeatedly alleges that FIGS has claimed that its scrubs reduce HAIs by 66%.  (Dkt. No. 152 ¶¶ 42, 45, 53, 60–62.)  A closer examination of the Complaint, however, reveals that in the vast majority of cited instances, FIGS made no such claim.  Instead, as the Fifth Amended Complaint quotes repeatedly, FIGS represented only that "[c]lean scrubs reduce the hospital-acquired infection rate by 66%"—a statement echoed by third-party websites.  (*Id.* ¶¶ 45(a), 45(b), 60.)  Thus, even taking these allegations as true—that is, that FIGS represented that *clean scrubs* can reduce HAIs by 66%, and that such a statement was false—SPI cannot prevail on its false advertising claim as a matter of law, because SPI has failed to allege how a general statement about clean scrubs either has caused, or is likely to cause, *SPI*—itself a seller of scrubs—any injury.  *See In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*, 882 F. Supp. 915, 924–25 (C.D. Cal. 1994) ("[T]o prevail under the Lanham Act, a plaintiff must demonstrate that plaintiff has been or is likely to be injured as a result of the false advertisements." (internal quotation marks omitted)); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

The Fifth Amended Complaint simply alleges no "logical causal connection between the alleged false advertising and its own sales position."  *In re Century 21*, 882 F. Supp. at 924.  Nor could it.  As a logical matter, an allegedly false claim

about how clean scrubs can reduce the rate of HAIs could not possibly injure SPI, itself a manufacturer of scrubs.  If anything, one would expect that SPI would *benefit* from this type of generalized claim.  FIGS therefore is entitled to judgment on the pleadings with respect to SPI's Lanham Act claim concerning FIGS' statement that "[c]lean scrubs reduce the hospital-acquired infection rate by 66%."

Once these more generalized statements are set aside, SPI's Complaint alleges only one instance in which FIGS asserted that *its* products, specifically, reduce HAIs by 66%: "[A]s early as May 2018 through February 2019, FIGS's website . . . included the statement that 'FIGS antimicrobial fabric reduces hospital acquired infection rates by 66%.'"  (Dkt. No. 152 ¶ 45(c).)  This claim, too, is deficient as a matter of law, because SPI has failed to adequately allege that the 66% HAI Statement is literally false—or that even if it is literally true, the statement is "likely to mislead or confuse consumers."  *See In re Century 21*, 882 F. Supp. at 922 (internal quotation marks omitted).

With respect to literal falsity, the Fifth Amended Complaint alleges that (1) FIGS does not have a "study that supports a claim that its antimicrobial fabric/scrubs can reduce HAIs by 66%"; and (2) SPI has "performed testing that contradicts the Defendants' statement that 'FIGS antimicrobial fabrics reduces hospital acquired infection rates by 66%.'"  (Dkt. No. 152 ¶¶ 46, 48.)  But mere allegations of a "lack of substantiation" cannot support a false advertising claim. *See, e.g.*, *Caltex Plastics, Inc. v. Elkay Plastics Co.*, No. 12–cv–10033, 2015 WL 13283255, at *5 (C.D. Cal. Feb. 4, 2015) ("[A] false advertising claim cannot be proved on 'lack of substantiation' grounds.");  *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1248 (D. Ariz. 1981), *aff'd* 681 F.2d 1159 (9th Cir. 1982) ("Jartran did not have to prove the truth of its asserted product claims; the burden in this regard rested on U-Haul, and it could not sustain its burden of persuasion by repeated assertions (and proof) that Jartran had done little, if any, testing of Jartran trucks or trailers, and no comparative testing of U-Haul products."); *see also* 5

1  McCarthy on Trademarks and Unfair Competition § 27:61 (5th ed. 2020) ("[T]he

2  majority rule is that plaintiff must prove falsity, not just a lack of pre-existing

3  substantiation.").

4       In addition, SPI's bare allegations that an independent consultant it retained

5  does not believe the 66% HAI Statement to be true has no bearing on the veracity of

6  FIGS' statement.  Even assuming it is true that the independent consultant, Mr.

7  Palenik, "believes that FIGS's claims that its scrubs reduce HAIs by 66% is false,"

8  that fact is *irrelevant* to SPI's claim because SPI does not allege anywhere in the

9  complaint that Mr. Palenik actually conducted any tests specific to the 66% HAI

10  Statement.[4]  (*See generally* Dkt. No. 152 ¶ 79.)  At most, the Complaint alleges that

11  Mr. Palenik tested whether FIGS' scrubs top killed bacteria on contact or provided

12  "fluid barrier protection."  (*Id.*)  But these are two *separate* (and different) claims

13  from the 66% HAI Statement.  Left with this gap, the Fifth Amended Complaint

14  simply reverts to arguing a lack of substantiation, alleging that "Palenik is unaware

15  of any publicly available scientific study that FIGS could be relying on that could

16  supports its claims that its scrubs reduce HAIs by 66%."  (*Id.*)  As discussed above,

17  however, a lack of substantiation is insufficient *as a matter of law* to sustain a

18  finding of liability under the Lanham Act and cannot be used to show literal falsity.

19  *See Caltex Plastics, Inc.*, 2015 WL 13283255, at *5.

20       Neither does the Fifth Amended Complaint allege how, if FIGS' statement

21  that its antimicrobial fabric reduces HAIs by 66% is literally true, the statement is

22  misleading and thus actionable under the Lanham Act.  The Complaint simply

23  asserts in a conclusory fashion throughout that the statement is "misleading" and

24  "likely to confuse consumers."  (*See, e.g.*, Dkt. No. ¶¶ 45–48.)  But the Lanham Act

25

26  _____

[4] Indeed, tellingly, Mr. Palenik's declaration submitted in support of SPI's Motion

27  for Preliminary Injunction admits that he "encountered difficulties in analyzing the

claims that FIGS Scrubs reduce hospital-acquired infections by 66%" and did not

28  test for it.  (Dkt. No. 179-5 ¶ 6.)

is clear: a claim for false advertising *must* show either "that the challenged advertisement is 'literally false'"—which SPI has failed to adequately allege, as discussed above—or that "while the advertisement is literally true, it is 'likely to mislead or confuse consumers.'"  *In re Century 21*, 882 F. Supp. at 922. Furthermore, when "a plaintiff cannot show literal falsity and instead relies on a claim of an 'implied falsehood,' the plaintiff must prove, 'by extrinsic evidence, the challenged advertisements tend to mislead or confuse consumers.'"  *Id.* at 922–23. SPI has failed to meet this burden.

The Fifth Amended Complaint is entirely devoid of allegations of how consumers may have been misled or confused by FIGS' statement that its antimicrobial fabric reduces HAIs by 66%.  And SPI's conclusory allegations that the 66% HAI Statement was misleading amount to nothing more than an "unwarranted inference[]" insufficient to overcome a motion for judgment on the pleadings.  *Butler*, 521 F. Supp. 2d at 1095.  As SPI's own allegations show, FIGS' claim that its scrubs reduce HAIs by 66% was included on FIGS' "Threads-for-Threads" philanthropy website and was based on a comparison between "resource-poor" environments in which an individual does not have access to clean scrubs, and environments in which a healthcare professional has access to clean FIGS scrubs. (Dkt. No. 152 ¶¶ 45(a), 45(b).)  It is therefore implausible that the 66% HAI Statement—which makes no reference to any competing scrubs—could have somehow misled or confused customers if it is literally true that clean scrubs, including FIGS scrubs, reduce HAIs by 66%.

Accordingly, FIGS is entitled to judgment on the pleadings on this Lanham Act claim.

### 2.  Silver Statement

SPI also alleges that a statement on the website Nurse.org, claiming FIGS' "scrub fabric is literally made of silver," violates the Lanham Act because it is false or misleading.  (Dkt. No. 152 ¶¶ 63, 67.)  This claim, too, is deficient as a matter of

law.

First, SPI's own pleading acknowledges that the Silver Statement is *literally true*—it admits that "particles of silver were detected on the FIGS scrubs' fabric." (Dkt. No. 152 ¶ 75.)  Thus, even accepting SPI's allegations as true, FIGS' scrubs are, in fact, "literally made of silver"—exactly as the Nurse.org website article claimed.  Furthermore, much like with the 66% HAI Statement, SPI has failed to allege how, if at all, the Silver Statement tended to mislead or confuse consumers.  It simply is not plausible to infer that consumers reading the Silver Statement would have been misled into thinking that FIGS scrubs were made, for instance, *entirely* or *exclusively* from silver, given that FIGS' scrubs are articles of clothing intended to be worn by healthcare professionals at work—not medieval suits of armor.

Second, even assuming that SPI has adequately alleged that the Silver Statement was either literally false or misleading—which it has not—SPI has failed to allege that the Silver Statement is anything other than inactionable puffery.  *See, e.g.*, *Cook, Perkiss Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) (finding "much support" for "the contention that puffing immunizes an advertisement from liability under the Lanham Act").  Here, as in numerous other cases, the statement at issue was "vague or highly subjective" and did not "contain the kind of detailed or specific factual assertions that are necessary to state a false advertising cause of action under the Act."  *Id.* at 246.

Third, SPI does not allege that *FIGS* made this particular statement.  Instead, SPI alleges that a third-party website, Nurse.org, posted an article stating that FIGS' scrub fabric is "literally" made of silver and that, "[o]n information and belief," FIGS paid Nurse.org for "referrals generated" by the website.  (Dkt. No. 152 ¶ 64.)  Nowhere does the Fifth Amended Complaint allege that FIGS told or otherwise instructed Nurse.org to make this particular claim.  Thus, even accepting SPI's allegations as true, they have no bearing on *FIGS*' liability under the Lanham Act.  *See, e.g.*, *Sigma Dynamics, Inc.*, 2004 WL 2648370, at *4; *Outlaw Lab., LP v.*

*Shenoor Enter., Inc.*, 371 F. Supp. 3d 355, 368 (N.D. Tex. 2019) ("[F]ederal courts appear unwilling to entertain false-advertising claims that are based almost entirely on false statements that originate with third parties.").

For all of the aforementioned reasons, FIGS is entitled to judgement on the pleadings with respect to SPI's claim that the Silver Statement amounted to false advertising in violation of the Lanham Act.

### 3. Fluid Barrier Statement

The Fifth Amended Complaint next alleges that FIGS falsely claimed that its products created an effective "fluid barrier." (Dkt. No. 152 ¶¶ 49, 51, 71, 78–79.) But the Complaint fails to cite to *a single instance* in which FIGS claimed its products created a "fluid barrier." In fact, the Complaint nowhere includes the phrase "fluid barrier" in quotation marks—as clear a sign as any that this "claim" has no basis in reality or even in the facts as SPI alleges them. The sole supporting citation in the Fifth Amended Complaint is to an article published in 2015, in which Ms. Spear commented that FIGS was "the first company to develop an anti-microbial treatment so that bacteria and infection and fluids aren't seeping through and harming the medical professional." (*Id.* ¶ 50.) But the plain text of this statement makes clear that Ms. Spear was referring to the fact that FIGS' antimicrobial fabric may prevent medical professionals from being harmed *if* fluid seeps through—not that the fabric itself creates a "barrier" to fluids. Thus, even accepting SPI's allegations as true, SPI has failed to adequately allege that FIGS ever claimed—must less falsely claimed—that its products produce a fluid barrier, and FIGS is entitled to judgment on the pleadings with respect to this claim.

### 4. One-for-One Claim

The Fifth Amended Complaint also alleges that "FIGS's claim to donate one set of scrubs for every set of scrubs purchased is false" because, "[o]n information and belief, . . . FIGS has donated, if at all, lower cost scrubs that are different than the scrubs consumers are purchasing in the United States." (Dkt. No. 152 ¶ 56.)

1   But even accepting this allegation as true (which it is not), the Complaint never

2   alleges that FIGS asserted that it *would* donate scrubs of similar cost to those

3   purchased by its customers.  Instead, the Complaint cites to a statement by FIGS that

4   it has "donated over 90,000 sets of scrubs in 26 countries," and later acknowledges

5   that FIGS' claim was only that it "donate[d] one set of scrubs for every set of scrubs

6   purchased."  (*Id.* ¶¶ 54, 56.)  Even assuming for the sake of argument that FIGS

7   donated lower-cost scrubs, nothing about that assumption would render false FIGS'

8   statement that it donated one set of scrubs for every set of scrubs purchased.

9       This claim also fails to satisfy the heightened pleading standards of Rule 9(b),

10  which apply to allegations of fraudulent conduct.  *See Vess v. Ciba-Geigy Corp.*

11  *USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *see also Meinhold v. Sprint Spectrum,*

12  *L.P.*, No. CIV. S-07-00456, 2007 WL 1456141, at *6 (E.D. Cal. May 16, 2007)

13  (allegations that "defendant made representations that it knew or should have known

14  were untrue or misleading . . . necessarily imply fraud by defendant," and are

15  subject to Rule 9(b)).  The Complaint asserts that FIGS has purposefully

16  "overstated" the number of scrubs it has donated "to garner media attention, press

17  and influence customers to pay a higher price for FIGS and purchase more from

18  FIGS."  (Dkt. No. 152 ¶ 55.)  In support of that assertion, however, SPI states only

19  that "[a]t one point, FIGS has claimed to have donated 500,000 sets of scrubs."  (*Id.*)

20      This vague allegation falls far short of Rule 9(b)'s pleading standard, which

21  requires allegations of "the who, what, when, where, and how" of the purported

22  fraud.  *See Vess*, 317 F.3d at 1106 (citations omitted).  It is axiomatic that a

23  defendant is entitled to "notice of the *particular* misconduct which is alleged to

24  constitute the fraud," so that he or she can prepare a full defense.  *Semegen v.*

25  *Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  SPI's allegation that FIGS made this

26  statement "[a]t one point" hardly gives FIGS such notice, particularly given that the

27  Fifth Amended Complaint includes statements made by both third-party

28  publications as well as FIGS.  *See Meinhold*, 2007 WL 1456141, at *6 ("[P]laintiff's

general allegations would put defendant in the untenable position of having to deny that it has ever done anything wrong in regards to its advertising and marketing, a circumstance that Rule 9(b) demands be avoided.").  Without allegations of *where* or *when* the claim was made, the "district court should 'disregard' those averments, or 'strip' them from the claim;" "[t]he court should then examine the allegations that remain to determine whether they state a claim." *Vess*, 317 F.3d at 1105; *see also TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1019–20 (N.D. Cal. 2012) (allegation that defendants "falsely claimed that strawberries shipped in a PeakFresh pallet bag have a shelf life of 20 days" not pled with specificity).

Once SPI's vague allegation is properly removed from the Complaint, it is clear that the remaining allegations do not support SPI's claim for relief on the One-for-One Claim.  That is because SPI has alleged, at most, that FIGS once claimed it donated 90,000 sets of scrubs on its website, but it has failed to allege *any* facts tending to show that FIGS failed to donate those scrubs or that those figures are inconsistent with FIGS' former policy of donating one set of scrubs for every set of scrubs sold.  At most, the Complaint asserts that "FIGS has produced no evidence as to the number or type of scrubs allegedly donated in their one-for-one donation scheme."  (Dkt. No. 152 ¶ 13.)  As discussed earlier, however, *see* section III.B.1 *supra*, "a Lanham Act plaintiff bears the burden of showing that a challenged advertisement is false or misleading, not merely that it is unsubstantiated by acceptable tests or other proof."  *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228 (3d Cir. 1990) (quoting *Procter & Gamble Co.*, 747 F.2d 114, 119 (2d Cir. 1984)).  It simply is not enough for SPI to allege that FIGS has failed to provide proof of its donations alongside its advertising statement—SPI must allege, in more than a conclusory fashion, that there is a plausible basis for concluding that FIGS' One-for-One Claim is *affirmatively false or misleading*.  *See, e.g.*, *578539 B.C., Ltd. v. Kortz*, No. CV 14-04375, 2015 WL 12670488, at *10 (C.D. Cal. Apr. 10, 2015) (granting motion to dismiss where counterclaims did not "plead facts that

plausibly allege a false advertising claim under the Lanham Act").  That it has not done, and FIGS is entitled to judgment on the pleadings with respect to this Lanham Act claim.

### C.  FIGS IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON SPI'S UNFAIR BUSINESS PRACTICES CLAIMS RELATING TO FIGS' MARKETING

Judgment also should be entered on SPI's related state law claims; i.e., the Second and Fourth Causes of Action.  Because California unfair competition and false advertising claims are "substantially congruent to claims made under the Lanham Act," *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (internal quotation marks omitted), if the Court agrees that judgment on the pleadings is appropriate with respect to SPI's Lanham Act claims, *see* section III.B *supra*, the Court should dismiss SPI's related UCL claims.[5]  To the extent that the Lanham Act claims proceed, however, the UCL claims nevertheless fail for a second and independent reason: SPI has not alleged any facts entitling it to restitution or injunctive relief—the only two remedies SPI seeks for FIGS' "unfair, unlawful and fraudulent business practices" under California Business and Professions Code sections 17200 and 17500.  (Dkt. No. 152 ¶¶ 125–126, 145–146.)  Because neither remedy is available to SPI as a matter of law, judgment should be entered as to each.

First, "an order for 'restitution' [is] one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, *to persons who had an ownership interest in the property*.'"  *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 912 (N.D. Cal. 2018) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144–45 (2003)) (emphasis added).  The Fifth Amended Complaint alleges no such ownership interest with respect to the Second

---

[5] The Third Cause of Action for unfair business practices relates to the use of SPI's allegedly confidential information, and should be dismissed on preemption grounds, discussed in section III.E *infra*.

and Fourth Causes of Action.  Rather, SPI alleges only that *FIGS* will profit from its advertising.  (Dkt. No. 152 ¶¶ 120–121, 142–143.)  But none of FIGS' customers, their scrub purchases, or the proceeds thereof are alleged to be *SPI's* property, such that it has the right to restitution.  *See L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 867–68 (N.D. Cal. 2015) (dismissing an unfair competition claim because "[t]he problem for Plaintiffs is that the complaint, as written, seeks only 'restitution and restitutionary disgorgement for all sums obtained in violation' of the California statutes . . . it does not allege an ownership interest in any of those profits or a 'confirmed' contractual relationship").

SPI's requests for injunctive relief also are improper.  As discussed both above and in FIGS' opposition to SPI's motion for a preliminary injunction (Dkt. No. 207 at 9), the "false advertising" that SPI identifies in the Fifth Amended Complaint comprises a set of statements that FIGS either *never made* or *ceased to make before the Fifth Amended Complaint was filed*.  Nor has SPI alleged in its Complaint that FIGS is likely to renew any such claims after this case concludes.  In such circumstances, injunctive relief is inappropriate.  *See Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738, 2015 WL 12684340, at *12 (C.D. Cal. Apr. 10, 2015) (noting that the evidence is "undisputed that GoDaddy ended the conduct for which AMPAS seeks redress nearly two years ago, and AMPAS fails to meet its burden under California law to establish that the harm is likely to recur"); *Luxpro Corp. v. Apple Inc.*, No. C 10–030, 2011 WL 3566616, at *8 (N.D. Cal. Aug. 12, 2011) (concluding that because plaintiff's allegations related to past conduct and plaintiff had not alleged facts showing that defendant's conduct is likely to recur, the plaintiff was not entitled to injunctive relief).  A claim is barred if injunctive relief is both improper and the only remaining remedy.  *See Acad. of Motion Picture Arts & Scis.*, 2015 WL 12684340, at *12 ("Because AMPAS's only remedy [injunctive relief] under the UCL is moot, it cannot proceed on those claims as a matter of law.").

Finally, to the extent that SPI's unfair business practices claims sound in fraud, SPI has not alleged that *SPI* itself ever relied on any statements made by FIGS.  (*See* Dkt. No. 152 ¶¶ 116, 141, 145 (alleging fraud).)  As FIGS raised in response to SPI's First Amended Complaint—dismissed on other grounds—where fraud is alleged, "a plaintiff must be able to allege its own reliance 'rather than the reliance of third parties." *23andMe, Inc.*, 356 F. Supp. 3d at 911.  Thus, in *23andM*e, fraud-based claims under sections 17200 and 17500 were dismissed because the plaintiff failed to so plead.  *Id.* (citing, *inter alia*, *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1003 (N.D. Cal. 2014) ("[T]hird-party reliance is insufficient to establish [plaintiff's] standing under the fraud prong of the UCL.")).

SPI's unfair business practices claims are based on allegations that the public purchased FIGS' products as a result of FIGS' deceptive or fraudulent marketing. Because such allegations support neither injunctive relief nor restitution, and because SPI does not (and cannot) plead that it relied on the alleged statements at issue, judgment should be entered on the Second and Fourth Causes of Action.

### D.    MS. SPEAR IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON SPI'S CONVERSION CLAIM

Plaintiff's Sixth Cause of Action for conversion is based on (false) allegations that Ms. Spear, while employed by Blackstone nearly a decade ago, improperly accessed SPI's confidential information and shared it with Ms. Hasson.  (Dkt. No. 152 ¶¶ 161, 165–166.)  But, putting aside that this simply never happened—Ms. Spear never accessed any confidential SPI information and thus never shared any with Ms. Hasson—SPI's own allegations preclude its claim as a matter of law.

SPI alleges that during her time at Blackstone, Ms. Spear obtained certain of SPI's confidential information regarding its financials, business plans, trading partners, and customers, which SPI had assembled at significant cost and which was "valuable, confidential, and proprietary."  (Dkt. No. 152 ¶¶ 161, 163.)  SPI further alleges that it had taken "reasonable steps to protect the Confidential Information,"

including by restricting "access to individuals under strict non-disclosure and/or confidentiality agreements." *(Id.* ¶¶ 162–163.)  In plain English, then, SPI alleges at bottom that Ms. Spear misappropriated its *trade secrets*.

By statute, a trade secret is information that (a) has economic value because it is unknown to the public or to those who can obtain value from its use, and (b) is the subject of reasonable efforts to keep it secret.  Cal. Civ. Code § 3426.1(d).  SPI's allegations concerning the subject of its conversion claim make clear that the information it alleges was converted satisfies both of these elements.  The only material Ms. Spear allegedly converted was SPI's "confidential information and data," which SPI claims it took steps to protect and which it alleges Blackstone was not entitled to disclose because "all Confidential Information constitutes a valuable asset." (Dkt. No. 152 ¶¶ 26, 162–163.)  That is the very definition of a trade secret.

Critically, the California Legislature has determined that a single statutory scheme, the California Uniform Trade Secrets Act ("CUTSA"), applies to all trade secret claims, occupying the field with such breadth as to preempt *all* common law and other statutory claims based upon the alleged conversion or misappropriation of trade secrets.  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009).  In short, "CUTSA provides 'the exclusive civil remedy' for conduct 'based upon misappropriation of a trade secret.'"  *ChromaDex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983, 989 (C.D. Cal. 2019) (quoting *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010), *disapproved of on other grounds by Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310 (2011)); *see also* Cal. Civ. Code § 3426.7.  SPI therefore may not bring either common law or unfair competition claims when the allegedly unlawful conduct at issue involves trade secrets.

It is immaterial that SPI does not use the term "trade secret" or bring a standalone "trade secret" claim.  Even if a plaintiff "[b]y strategy" has "avoided assertion of any trade secret claims," its claim for "conversion of intangible

1 Confidential Information" is still "superseded by CUTSA." *Total Recall Techs. v.*
2 *Luckey*, No. C 15-02281, 2016 WL 199796, at *7–8 (N.D. Cal. Jan. 16, 2016); *see*
3 *also Silvaco*, 184 Cal. App. 4th at 240 ("[T]he non-CUTSA claims therefore do not
4 genuinely allege 'alternative legal theories' but are a transparent attempt to evade
5 the strictures of CUTSA by restating a trade secrets claim as something else.").
6 Indeed, so broad is CUTSA preemption that it bars "all claims premised on the
7 wrongful taking and use of confidential business and proprietary information, even
8 if that information does *not* meet the statutory definition of a trade secret."
9 *ChromaDex*, 369 F. Supp. 3d at 989 (emphasis added); *see also SunPower Corp. v.*
10 *SolarCity Corp.*, No. 12-CV-00694, 2012 WL 6160472, at *6 (N.D. Cal. Dec. 11,
11 2012) ("[T]he majority of district courts that have considered *Silvaco* have held that
12 CUTSA supersedes claims based on the misappropriation of information that does
13 not satisfy the definition of trade secret under CUTSA.") (collecting cases).

14      District courts within this circuit apply CUTSA to *exactly* this type of
15 conversion claim because "[i]n order for the taking of information to constitute
16 wrongdoing, the information must be property," and "[i]f the basis of the alleged
17 property right is in essence that the information . . . is 'not . . . generally known to
18 the public,' then the claim is sufficiently close to a trade secret claim that it should
19 be superseded" by CUTSA. *SunPower*, 2012 WL 6160472, at *5 (citing Cal. Civ.
20 Code § 3426.1(d)(1)); *Silvaco*, 184 Cal. App. 4th at 238–39.

21      Preemption also reflects the general conclusion of the federal courts that on
22 this question of state law, there has been no suggestion that "the California Supreme
23 Court would conclude that CUTSA does *not* supersede claims based on the
24 misappropriation of confidential or proprietary information that nevertheless fails to
25 qualify as a trade secret under CUTSA." *SunPower*, 2012 WL 6160472, at *5
26 (emphasis added).

27      Judgement on the pleadings is appropriate where CUTSA is applicable.
28 *Silvaco*, 184 Cal. App. 4th at 238–39 ("The only thing that might change this

conclusion is the plaintiff's assertion of *some other basis in fact or law* on which to predicate the requisite property right.  The time to do that is in the pleadings, not at trial.  It is never 'premature' to require that the plaintiff allege facts sufficient to constitute a viable cause of action.").  Accordingly, "[n]umerous federal courts have dismissed common law tort claims as preempted by the CUTSA at the motion to dismiss stage."  *Robert Half Int'l, Inc. v. Ainsworth*, 68 F. Supp. 3d 1178, 1189 (S.D. Cal. 2014) (collecting cases).  Here, because CUTSA preempts a claim of conversion of trade secrets regardless of the label SPI places on the material at issue, and because SPI alleges the conversion *only* of such material, the Court should enter judgment in Ms. Spear's favor on SPI's Sixth Cause of Action.  *See Heller v. Cepia, L.L.C.*, No. C 11–01146, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012) (dismissing common law claims "premised on the wrongful taking and use of confidential business and proprietary information" because "regardless of whether such information constitute trade secrets, [they] are superseded by the CUTSA"); *Total Recall*, 2016 WL 199796, at *7 ("Every district court in our circuit to consider this aspect of *Silvaco* has held that CUTSA supersedes claims based on the misappropriation of non-trade secret information, except where there is some other provision of positive law granting a property right in that information.").

### E.   DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS ON SPI'S UNFAIR BUSINESS PRACTICES CLAIM RELATING TO CONVERSION

SPI's Third Cause of Action, for unfair business practices, alleges the same underlying conduct as its conversion claim.  (Dkt. No. 152 ¶¶ 129–132.)  SPI alleges that "[t]he actions of Spear in converting and using the Blackstone Information to form FIGS and compete against Plaintiff, was immoral, unethical, and/or unscrupulous and as such, constitutes a violation of Section 17200's 'unfair' prong"; that it was "unfair" of Spear to convert and use the "Blackstone Information to form FIGS and compete against Plaintiff"; and that all Defendants "have competed unfairly in the medical apparel industry by unlawfully obtaining and using the

Blackstone Information." (*Id.* ¶¶ 129–130.) This claim, too, is preempted.

"CUTSA supersedes [a] Section 17200 claim based on misappropriation of said information regardless of whether or not it would ultimately qualify for trade secret protection." *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1064 (N.D. Cal. 2017). Where, as here, a plaintiff "fails to plead that some other provision of positive law qualitatively different from trade secret law" applies, section 17200 cannot serve "as a fallback." *Id.* (UCL claims "'based upon misappropriation of a trade secret or . . . based upon no legally significant events at all'" are "subject to dismissal as pled." (quoting *Silvaco*, 184 Cal. App. 4th at 236)). Defendants therefore are entitled to judgment on the pleadings as to SPI's Third Cause of Action.

## F. DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS ON SPI'S BREACH OF FIDUCIARY DUTY CLAIMS

SPI's Seventh and Eighth Causes of Action, for breach of fiduciary duty and for aiding and abetting that alleged breach, respectively, are based on the same allegations as the conversion claim: i.e., that Ms. Spear's alleged taking of confidential SPI information in the care of Blackstone violated her fiduciary duty, and that FIGS and Ms. Hasson aided her in so doing. These claims likewise fail because CUTSA preemption applies, and because the alleged basis of the fiduciary duty is legally impossible. (Dkt. No. 152 ¶¶ 181, 201–204.)

### 1. CUTSA Bars Both Fiduciary Duty Claims

CUTSA preempts fiduciary duty claims when trade secret information is the subject of the alleged breach. *Am. Credit Indemnity Co. v. Sacks*, 213 Cal. App. 3d 622, 630 (1989) (citing Comm'rs Prefatory Note to Uniform Trade Secrets Act, 14 West (U.L.A.) 537, 538). The statute could not be clearer: its express purpose is to provide "a single statute of limitations for the various property, quasi-contractual, and *violation of fiduciary relationship theories of noncontractual liability utilized at common law*," as well as standardized remedies for the same. *Id.* (emphasis added).

1    Here, because SPI's fiduciary duty claims arise from "the taking or use of an alleged

2    trade secret or confidential or proprietary information," with the alleged fiduciary

3    role based on "access to proprietary or confidential information," CUTSA again bars

4    these common law claims.  *Robert Half Int'l, Inc.*, 68 F. Supp. 3d at 1190.

### 2.    SPI's Breach of Fiduciary Duty Claim Alleges a Legal Impossibility

Even if CUTSA did not have preemptive effect, SPI has failed to allege any

possible source of a fiduciary duty.  SPI alleges its confusing claim for breach of

fiduciary duty against Ms. Spear alone, but her alleged "duty" derives from

allegations that "Blackstone" sat on the board of SPI at an unspecified time.  (Dkt.

No. 152 ¶ 178.)  SPI alleges that in this capacity, Blackstone both received

confidential information from SPI and was its fiduciary.  (*Id.*)  SPI then further

alleges that "[a]s an employee, agent, and representative of Blackstone, *Spear* owed

Plaintiff a fiduciary duty," and that she breached this duty by misappropriating that

confidential information.  (*Id.* ¶ 181 (emphasis added).)

*First*, SPI alleges a *legal impossibility*: "Blackstone" cannot have been a

member of SPI's board because every American state requires corporate directors to

be natural persons.  *E.g.,* Cal. Corp. Code § 164 ("'Directors' means natural persons

designated in the articles as such or elected . . . ."); Del. Code Ann. tit. 8, § 141(b)

("The board of directors of a corporation shall consist of 1 or more members, each

of whom shall be a natural person").  Blackstone, of course, is not a natural person.

As SPI's Fifth Amended Complaint itself contends, "Blackstone" is "Blackstone

Group Holdings, L.P."  (Dkt. No. 152 ¶ 3), that is, a limited partnership—and "[a]

limited partnership . . . is not a natural person."  *Carson v. Kanazawa*, No. CV 14-

00544, 2017 WL 3444764, at *10 (D. Haw. Apr. 30, 2017) (citing *James D. Pauls,

Ltd. v. Pauls*, 633 F. Supp. 34, 35 (S.D. Fla. 1986) ("[A] limited partnership is not a

natural person, but a creature of statute.")).

This impossibility is the foundation upon which SPI bases the entirety of its

1  claim that Ms. Spear was its fiduciary.  SPI contends that "[a]s a board member,
2  Blackstone attended board meetings and received Confidential Information," and
3  "[a]ccordingly, Blackstone owed a fiduciary duty to Plaintiff and its stockholders."
4  (Dkt. No. 152 ¶ 178.)  But because Blackstone, as a non-natural person, never could
5  have been a board member with fiduciary responsibilities to SPI, the already-
6  tenuous allegation that Ms. Spear had such responsibilities on the sole basis that she
7  was "an . . . agent . . . of Blackstone" is of no consequence whatsoever.  (*Id.* ¶ 181.)

8      Although the Court must "take all of the factual allegations in the complaint
9  as true" for purposes of this motion, it is "not bound to accept as true a legal
10  conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–
11  79 (2009).  And the Court certainly need not accept as true a *legally impossible*
12  conclusion.  *See id.* at 679 (courts may draw upon "judicial experience and common
13  sense" when reviewing a motion to dismiss).  Because SPI has failed to allege a
14  fiduciary relationship between Ms. Spear and SPI, and "a nonfiduciary is legally
15  incapable of committing . . . breach of fiduciary duty," *Everest Invs. 8 v. Whitehall*
16  *Real Est. Ltd. P'ship XI*, 100 Cal. App. 4th 1102, 1104, 1107–08 (2002), the Court
17  should grant judgment in Ms. Spear's favor as to the Seventh Cause of Action.

### 3.   SPI's Claim for Aiding and Abetting Breach of Fiduciary Duty Is Premised on the Same Legal Impossibility

18
19      SPI's Eighth Cause of Action, for aiding and abetting a breach of fiduciary
20  duty, fails for the same reasons.  SPI alleges that FIGS and Ms. Hasson "willingly
21  received" its confidential information, obtained in breach of a fiduciary duty, and
22  "aided and abetted Spear in releasing Plaintiff's information to [themselves] . . . for
23  purposes of creating a competing business in the medical apparel industry."  (Dkt.
24  No. 152 ¶¶ 204–205.)  But "[t]o state a claim for aiding and abetting breach of
25  fiduciary duty under California law, a plaintiff must allege that the defendant: (1)
26  had actual knowledge of the specific primary wrong being committed by the
27  fiduciary; and (2) provided substantial assistance to the fiduciary to accomplish the
28

specific breach of fiduciary duty." *In re Mortg. Fund '08 LLC*, 527 B.R. 351, 361 (N.D. Cal. 2015).  The existence of a fiduciary duty thus is a necessary predicate for liability.

SPI alleges that FIGS and Ms. Hasson had actual knowledge of an alleged breach *by Ms. Spear*.  But as discussed above, SPI's allegations that Ms. Spear was in a fiduciary relationship with SPI by virtue of her employer's alleged board service fail as a matter of law.  Because SPI's aiding and abetting claim cannot stand without sufficient allegations of an underlying fiduciary relationship, the Court should grant FIGS and Ms. Hasson's request for judgment on the pleadings with respect to this claim.  *See Mattel, Inc. v. MGA Ent., Inc.*, No. CV 04-9049, 2011 WL 8427611, at *3 (C.D. Cal. Mar. 28, 2011); *see also TalentBurst, Inc. v. Collabera, Inc.*, 567 F. Supp. 2d 261, 267 (D. Mass. 2008) ("Given that the allegations of the complaint thus do not state a predicate act of breach of fiduciary duty [the claim] for 'aiding and abetting' a breach of fiduciary duty must fail.").

## IV.   FURTHER AMENDMENTS ARE NOT WARRANTED

"Courts have discretion to grant leave to amend in conjunction with Rule 12(c) motions, and may dismiss causes of action rather than grant judgment." *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997), *aff'd*, 237 F.3d 1026 (9th Cir. 2001) (internal quotation marks omitted).  However, the "court . . . may deny leave to amend" on grounds including "'repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

SPI has had six opportunities over the last two years to adequately plead its claims for relief.  It has squandered those opportunities.  Justice does not require, or support, a seventh bite at the apple.  *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (two amendments are "ample opportunity" to correct the

1    pleadings); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)

2    ("The district court's discretion to deny leave to amend is particularly broad where

3    plaintiff has previously amended the complaint."). Moreover, "a party is not

4    entitled to an opportunity to amend his complaint if any potential amendment would

5    be futile." *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1173 (9th Cir. 2013).

6    Amendment of SPI's claims relating to the alleged taking of trade secret information

7    is necessarily futile "by operation of CUTSA preemption," and does not warrant

8    leave to amend. *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207,

9    1243 (E.D. Cal. 2018).

10   Additionally, SPI has used this frivolous action to harass Defendants—both in

11   court and in the media—for far too long. Permitting further amendment would

12   seriously harm Defendants, who across the six pleadings have "already incurred

13   substantial litigation costs, which a more careful reading" of both preemptive law

14   and pleading requirements "by [SPI] would have avoided." *Ascon Props., Inc. v.

15   Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989). To now require Defendants to

16   go "'through the time and expense of continued litigation on a new theory, with the

17   possibility of additional discovery,' would cause undue prejudice." *Id.* (quoting

18   *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973)).

19   Under these circumstances, the Court should grant judgment for Defendants

20   without leave to amend.

21   **V.    CONCLUSION**

22   Defendants respectfully request that the Court grant judgment on the

23   pleadings in their favor on: (1) SPI's First Cause of Action (Lanham Act) with

24   respect to the 66% HAI Statement, Silver Statement, Fluid Barrier Statement, and

25   One-for-One Claim; (2) SPI's Second, Third, and Fourth Causes of Action (unfair

26   business practices and untrue and false advertising) in their entirety; (4) SPI's Sixth

27   Cause of Action (conversion) in its entirety; and (4) SPI's Seventh and Eighth

28   Causes of Action (breach of fiduciary duty and aiding and abetting) in their entirety.

1 | DATED:  February 19, 2021

Jacob S. Kreilkamp
Munger, Tolles & Olson LLP

2

3

4 | By:   _/s/ Jacob S. Kreilkamp_

Jacob S. Kreilkamp

5 | Attorneys for Defendants

6

7 | DATED:  February 19, 2021

Ekwan E. Rhow
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

8

9

10 | By:   _/s/ Ekwan E. Rhow_

Ekwan E. Rhow

11 | Attorneys for Defendants

12

13 | DATED:  February 19, 2021

Pascale Gagnon
ROPERS MAJESKI PC

14

15 | By:   _/s/ Pascale Gagnon_

Pascale Gagnon

16 | Attorneys for Defendants

17

18

19

20

21

22

23

24

25

26

27

28