1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STRATEGIC PARTNERS, INC., | Case No. 2:19-cv-02286-JWH-KSx |
| Plaintiff, | |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| FIGS, INC., CATHERINE ("TRINA") SPEAR, and HEATHER HASSON, | |
| Defendants. | |

1         Following pretrial proceedings, pursuant to Rule 16 of the Federal Rules

2 of Civil Procedure and L.R. 16, it is hereby **ORDERED** as follows:

3      I.     The parties are:

4           A.     Plaintiff Strategic Partners, Inc. ("<u>SPI</u>"); and

5           B.     Defendants FIGS, Inc.; Catherine "Trina" Spear; and

6 Heather Hasson (collectively, "<u>Defendants</u>").

7 Each of these parties has been served and has appeared.

8      II.     The pleadings that raise the issues are:

9           A.     Plaintiff SPI's Fifth Amended Complaint (ECF No. 152);

10 and

11           B.     Defendants' Answer to Fifth Amended Complaint (ECF

12 No. 162).

13      III.     This Court has federal question subject matter jurisdiction

14 pursuant to 28 U.S.C. §§ 1331 and 1338 over SPI's first claim for relief for

15 violation of 15 U.S.C. § 1125(a) of the Lanham Act.  This Court has

16 supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338 and 1367 over SPI's

17 second, fourth, and fifth claims for relief for violations of California Business and

18 Professions Code §§ 17200 and 17500, and Intentional Interference with

19 Prospective Economic Relations, respectively.

20      IV.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a

21 substantial part of the events giving rise to the claims in this case occurred in this

22 judicial district.  SPI alleges that Defendants knowingly made false and

23 misleading statements to consumers in this district.  Further, venue is proper

24 pursuant to 28 U.S.C. § 1391(b)(1), as all Defendants reside in California and at

25 least one Defendant resides in this district.

26      V.     The Court has allocated 44 hours (22 hours per side) for Phase 1 of

27 the jury trial.  Phase 2, if necessary, is the punitive damages jury trial.  Phase 3, if

28

necessary, is the equitable issues bench trial.  The Court will set time limits for Phases 2 and 3 after the completion of Phase 1.

VI.     The following facts were admitted; provided, however, that each was admitted subject to certain objections.  The parties reserve these as well as their objections pursuant to Rules 402 and 403 of the Federal Rules of Evidence:

A.     FIGS admits that it did not directly or indirectly register or obtain approval for its scrubs, products, and/or claims from the Environmental Protection Agency (the "EPA"), the Food and Drug Administration (the "FDA"), or any other governmental agency (FIGS' Amended Resp. to SPI's RFA No. 17).

B.     FIGS admits that in or about early 2017, the statement "[r]educe the risk of hospital-acquired infection by 66% thanks to FIGS' antimicrobial washes" appeared on the webpage https://www.wearfigs.com/pages/group-orders (FIGS' Amended Resp. to SPI's RFA No. 3).

C.     FIGS admits that the statement "FIGS antimicrobial fabric reduces hospital acquired infection rates by 66%" was made on the "Threads-for-Threads" portion of its website from May 10, 2018, to March 22, 2019 (FIGS' Resp. to RFA No. 2).

D.     FIGS admits that Spear's claim in her interview that she sent SUPER-CONFIDENTIAL MATERIALS from a company in the "medical apparel space" to Hasson was not true (FIGS' Supp. Resp. to RFA No. 21).

E.     Hasson admits that she had heard of SPI when FIGS started selling scrubs (Hasson's Further Resp. to RFA No. 9).

F.     Spear admits that her claim that she sent SUPER-CONFIDENTIAL MATERIALS from a company in the "medical

apparel space" to Heather Hasson was not true (Spear's Further Resp. to RFA No. 47).

G.      Spear admits that her statement in the Launch Pad Interview that she worked on a due diligence project relating to the scrubs industry while employed by CITI was not true (Spear's Further Resp. to RFA No. 57).

H.      SPI admits that it advertises that its scrubs incorporate Certainty Antimicrobial Fabric Technology to inhibit the growth of microbes that cause odor and fabric damage (SPI's Amended Resp. to RFA No. 7).

I.      SPI admits that, from approximately 2015 to 2017, SPI incorporated Silvadur into its fabric used in the manufacturing of scrubs (SPI's Amended Resp. to RFA No. 9).

J.      SPI admits that the following language previously appeared on its website:  "The antimicrobial fabric technology in Certainty and Certainty Plus starts to work upon contact with unwanted bacteria on the fabric.  The technology effects [*sic*] the ability of the cell to replicate as well as its ability to remain viable; essentially the bacteria cell is rendered ineffective immediately" (SPI's Amended Resp. to RFA No. 10).

K.      SPI admits that it advertises that its Certainty antimicrobial technology reduces, inhibits, and minimizes the growth of bacteria that cause odor and fabric degradation, as seen on http://www.certaintytechnologies.com/about (SPI's Amended Resp. to RFA No. 12).

The parties have exchanged proposed stipulated facts, including those facts that were undisputed in connection with the parties' motions for summary judgment.  The parties intend to meet and confer and submit a joint list of stipulated facts in advance of trial.

VII.   Claims and Defenses at Issue:

A.   SPI's Position as to its Claims

1.   SPI plans to pursue the following claims against the following Defendants:

a)   <u>First Claim for Relief</u>:  FIGS engaged in false and misleading advertising in violation of 15 U.S.C. § 1125(a) of the Lanham Act.

b)   <u>Second Claim for Relief</u>:  FIGS engaged in unfair, unlawful, and fraudulent business acts and practices in violation of California Business and Professions Code § 17200.

c)   <u>Fourth Claim for Relief</u>:  FIGS engaged in untrue and misleading advertising in violation of California Business and Professions Code § 17500.

d)   <u>Fifth Claim for Relief</u>:  Defendants intentionally interfered with an economic relationship between SPI and its consumers/retailers/distributors that probably would have resulted in an economic benefit to SPI.

2.   The elements required to establish SPI's claims are:

a)   <u>First Claim for Relief—Violation of 15 U.S.C. § 1125(a) of the Lanham Act</u>:

(1)   FIGS made a false or misleading statement of fact in a commercial advertisement about the nature, quality, or characteristic of its own product.  A statement is misleading if it conveys a false impression and actually misleads a consumer.  A statement can be misleading even if it is literally true or ambiguous.

(2)     The statement actually deceived or had the tendency to deceive a substantial segment of FIGS' audience.  Where a statement is literally false or deliberately false or misleading, consumer deception and reliance is presumed.  *See Mutual Pharm Co. v. Tvax Pharm., Inc.*, 459 F. Supp. 2d 925, 933 (C.D. Cal. 2006).

(3)     The deception was likely to influence the purchasing decisions of consumers.  Literally false statements are presumed to be material (*i.e.*, likely to influence the purchasing decisions of consumers).  Intentionally false or misleading statements are also presumed to be material (*i.e.*, likely to influence the purchasing decisions of consumers).  *See* Summary Judgment Order[1] at 26 (quoting *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989)).

(4)     FIGS caused the false statement to enter interstate commerce.

(5)     SPI has been or is likely to be injured as a result of the false statement.  Injury includes direct diversion of sales from itself to FIGS or a loss of goodwill associated with its products.  A plaintiff may establish injury by creating a chain of inferences showing how defendant's false advertising could harm

---

[1]     Order Regarding Mots. for Summ. J. [ECF Nos. 527, 532, & 535]; *Daubert* Motions [ECF Nos. 528, 529, 614, 617, 620, & 623]; and *Ex Parte* Appl. to Strike [ECF No. 597] (the "Summary Judgment Order") [ECF No. 701].

plaintiff's business.  *See* Summary Judgment Order at
26; *Grasshopper House, LLC v. Clean & Sober Media
LLC*, 2019 WL 12074086, at *7 (C.D. Cal. July 1,
2019).

*See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003); *CKE Rest.
v. Jack in the Box, Inc.*, 494 F. Supp. 2d 1139, 1142-43 (C.D. Cal. 2007);
*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011);
*Grasshopper House, LLC*, 2019 WL 12074086, at *7; *Mutual Pharm Co.*, 459
F. Supp. 2d at 933; *U–Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040–41
(9th Cir. 1986); Summary Judgment Order at 26.

    b)    <u>Second Claim for Relief—Violation of
California Business and Professions Code § 17200</u>:

        (1)    FIGS engaged in a business act or
business practice.

        (2)    FIGS' act or business practice was
unlawful, or unfair, or fraudulent, or constituted
unfair, deceptive, untrue, or misleading advertising.

False advertising, under the Lanham Act or California Business and
Professions Code § 17500, constitutes unfair business practices under California
Business and Professions Code § 17200.

*See* Cal. Bus. & Prof. Code § 17200; *Sonner v. Schwabe N. Am., Inc.*, 911
F.3d 989, 992 (9th Cir. 2018); *CRST Van Expedited, Inc. v. Werner Enter., Inc.*,
479 F.3d 1099, 1107 (9th Cir. 2007); *Cel-Tech Comm'ns, Inc. v. Los Angeles
Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *Acad. of Motion Picture Arts & Scis.
v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991); *Gonzalez
v. Proctor and Gamble Co.*, 247 F.R.D. 616, 625 (S.D. Cal. 2007).

    c)    <u>Fourth Claim for Relief—Violation of California
Business and Professions Code § 17500</u>:

1           (1)     FIGS made or disseminated to the public,

2    in any manner or means whatever, any untrue or

3    misleading statement, with the intention of inducing

4    the public to buy goods or services.

5           (2)     FIGS knew, or should have known by

6    exercising reasonable care, that the statement was

7    untrue or misleading.

8           (3)     FIGS' statement was likely to deceive

9    members of the public.

10          (4)     As a result of FIGS' untrue or misleading

11   statements, SPI has suffered injury in fact in that SPI

12   has:

13          (a)     expended money due;

14          (b)     lost money or expected sales

15   profits; or

16          (c)     been denied money to which it has

17   a cognizable claim.

18   *See* Cal. Bus. & Prof. Code § 17500; *Pulaski & Middleman, LLC v. Google,*

19   *Inc.*, 802 F.3d 979, 986 (9th Cir. 2015); *Colgan v. Leatherman Tool Group, Inc.*,

20   135 Cal. App. 4th 663, 679 (2006); *Brockey v. Moore*, 107 Cal. App. 4th 86, 100

21   (2003).

22          d)     <u>Fifth Claim for Relief—Intentional Interference</u>

23   <u>with Prospective Economic Relations</u>:

24          (1)     SPI and its

25   consumers/retailers/distributors were in an economic

26   relationship that probably would have resulted in an

27   economic benefit to SPI.

28          (2)     Defendants knew of the relationship.

1    (3)    Defendants engaged in intentional
2    misrepresentations and false advertising concerning
3    FIGS' products.

4    (4)    By engaging in this conduct, FIGS
5    intended to disrupt the relationship or knew that
6    disruption of the relationship was certain or
7    substantially certain to occur.

8    (5)    The relationship was disrupted.

9    (6)    SPI was harmed.

10    (7)    Defendants' conduct was a substantial
11    factor in causing SPI's harm.

12    *See* Judicial Council of California Civil Jury Instructions, Instruction 2202
13    (2021 Edition).

14    3.    The key evidence that SPI relies on for each of the
15    claims are:

16    a)    First Claim for Relief—Violation of 15 U.S.C.
17    § 1125(a) of the Lanham Act:

18    (1)    Evidence of dissemination of FIGS' False
19    Claims across numerous platforms and in various
20    materials from 2012 to the present including, but not
21    limited to, its website, social media, email marketing,
22    catalogs, articles and publications, press releases, radio
23    advertisements, product tags, influencer platforms,
24    television and Internet broadcasts and video
25    recordings, etc.

26    (2)    Expert testimony of Dr. Peter Hauser and
27    Dr. Deverick Anderson interpreting scientific testing

of FIGS' products and clinical studies reflecting the falsity of FIGS' advertisements.

(3)     Expert testimony of Dr. Itamar Simonson and Dr. Simon Blanchard who will opine on the results of consumer surveys demonstrating that FIGS' False Claims influenced consumers' decision to purchase FIGS' products.

(4)     Expert Testimony of Dr. Gregory Bell demonstrating the illicit profits generated by Defendants through their False Claims, and the damages incurred by SPI as a result of those False Claims.

(5)     Testimony from party and third-party witnesses, and current and former FIGS employees, reflecting the absence of scientific testing to support the health and safety claims made by FIGS, the absence of evidence to support FIGS' false One-for-One Claim, the fact that Defendants intended to deceive consumers, the fact that Defendants did deceive consumers, and the importance of the False Claims to FIGS' business and consumers.

(6)     FIGS' admissions that that it failed to receive regulatory approval to make its false health claims in violation of the Food, Drug, and Cosmetic Act ("FDCA") and EPA requirements.

(7)     Testimony from SPI witnesses reflecting the harm and injury incurred by SPI as a result of FIGS' False Claims.

(8)      Key documents, including, but not limited to, FIGS' internal communications and business records reflecting the absence of any evidence to support its health and safety claims, FIGS' internal records reflecting its failure to donate one-for-one as it advertised, FIGS' internal communications demonstrating the importance of the False Claims, FIGS' internal and external communications showing that Defendants intended to deceive consumers, FIGS' business records reflecting that it knowingly violated FDCA, EPA, and Silvadur requirements and guidelines by making false health claims, FIGS' business records demonstrating its False Claims made to investors and consumers that evidence FIGS' intent to deceive and the materiality of its False Claims, consumer communications demonstrating that they were deceived and influenced by the False Claims, and FIGS' market research and marketing records establishing an organized and concerted campaign intentionally to disseminate the False Claims.

b)      <u>Second Claim for Relief—Violation of California Business and Professions Code § 17200</u>:

(1)      Evidence of dissemination of FIGS' False Claims across numerous platforms and in various materials from 2012 to the present including, but not limited to, its website, social media, email marketing, catalogs, articles and publications, press releases, radio advertisements, product tags, influencer platforms,

1   television and Internet broadcasts and video
2   recordings, etc.
3            (2)   Expert testimony of Dr. Peter Hauser and
4   Dr. Deverick Anderson interpreting scientific testing
5   of FIGS' products and clinical studies reflecting the
6   falsity of FIGS' advertisements.
7            (3)   Expert testimony of Dr. Itamar Simonson
8   and Dr. Simon Blanchard who will opine on the results
9   of consumer surveys demonstrating that FIGS' False
10   Claims influenced consumers' decision to purchase
11   FIGS' products.
12            (4)   Expert Testimony of Dr. Gregory Bell
13   demonstrating the illicit profits generated by
14   Defendants through their False Claims, and the
15   damage incurred by SPI as a result of the False Claims.
16            (5)   Testimony from party and third-party
17   witnesses, and current and former FIGS employees,
18   reflecting the absence of scientific testing to support
19   the health and safety claims made by FIGS, the
20   absence of evidence to support FIGS' false One-for-
21   One Claim, the fact that Defendants intended to
22   deceive consumers, the fact that Defendants did
23   deceive consumers, and the importance of the False
24   Claims to FIGS' business and consumers.
25            (6)   Testimony from SPI witnesses reflecting
26   the harm and injury incurred by SPI as a result of
27   FIGS' False Claims.
28

-12-

1   (7)   Key documents, including, but not
2   limited to, FIGS' internal communications and
3   business records reflecting the absence of any evidence
4   to support its health and safety claims, FIGS' internal
5   records reflecting its failure to donate one-for-one as it
6   advertised, FIGS' internal communications
7   demonstrating the importance of the False Claims,
8   FIGS' internal and external communications showing
9   that Defendants intended to deceive consumers,
10  FIGS' business records reflecting its knowingly
11  violated FDCA, EPA, and Silvadur requirements and
12  guidelines by making false health claims, FIGS'
13  business records demonstrating its False Claims made
14  to investors and consumers that evidence FIGS' intent
15  to deceive and the materiality of its False Claims,
16  consumer communications demonstrating that they
17  were deceived and influenced by the False Claims, and
18  FIGS' market research and marketing records
19  establishing an organized and concerted campaign
20  intentionally to disseminate the False Claims.

21  c)   Fourth Claim for Relief—Violation of California
22  Business and Professions Code § 17500:

23  (1)   Evidence of dissemination of FIGS' False
24  Claims across numerous platforms and in various
25  materials from 2012 to the present including, but not
26  limited to, its website, social media, email marketing,
27  catalogs, articles and publications, press releases, radio
28  advertisements, product tags, influencer platforms,

television and Internet broadcasts and video recordings, etc.

(2)     Expert testimony of Dr. Peter Hauser and Dr. Deverick Anderson interpreting scientific testing of FIGS' products and clinical studies reflecting the falsity of FIGS' advertisements.

(3)     Expert testimony of Dr. Itamar Simonson and Dr. Simon Blanchard who will opine on the results of consumer surveys demonstrating that FIGS' False Claims influenced consumers' decision to purchase FIGS' products allowing FIGS to obtain a competitive advantage over its competitors, including SPI.

(4)     Expert Testimony of Dr. Gregory Bell demonstrating the competitive advantage and illicit profits generated by Defendants through their False Claims, and the damage incurred by SPI as a result of the False Claims.

(5)     Testimony from party and third-party witnesses, and current and former FIGS employees, reflecting the absence of scientific testing to support the health and safety claims made by FIGS, the absence of evidence to support FIGS' false One-for-One Claim, the fact that Defendants intended to deceive consumers, the fact that Defendants did deceive consumers, and the importance of the False Claims to FIGS' business and consumers.

(6)     Testimony from SPI witnesses and party business records reflecting the harm and injury

incurred by SPI as a result of FIGS' False Claims, including but not limited to, the competitive advantage obtained by FIGS through its False Claims.

(7)     Key documents, including, but not limited to, FIGS' internal communications and business records reflecting the absence of any evidence to support its health and safety claims, FIGS' internal records reflecting its failure to donate one-for-one as it advertised, FIGS' internal communications demonstrating the importance of the False Claims, FIGS' internal and external communications showing that Defendants intended to deceive consumers, FIGS' business records reflecting its knowingly violated FDCA, EPA, and Silvadur requirements and guidelines by making false health claims, FIGS' business records demonstrating its False Claims made to investors and consumers that evidence FIGS' intent to deceive and the materiality of its False Claims, consumer communications demonstrating that they were deceived and influenced by the False Claims, and FIGS' market research and marketing records establishing an organized and concerted campaign intentionally to disseminate the False Claims.

(8)     Party testimony, FIGS' admissions, internal business and public records demonstrating the continued dissemination of the False Claims that warrants mandatory and prohibitory injunctive relief.

1                              d)      **Fifth Claim for Relief—Intentional Interference**

2    **with Prospective Economic Relations:**

3                         (1)     Testimony of SPI witnesses reflecting an

4    economic relationship existed between SPI and

5    consumers/retailers/distributors with the probability

6    of future economic benefit to SPI.

7                         (2)     Testimony of FIGS' witnesses

8    demonstrating that Defendants knew of SPI's

9    relationship with consumers/retailers/distributors.

10                       (3)     FIGS' internal communications and

11    business records reflecting FIGS' intent to disrupt the

12    relationship between SPI and its

13    consumers/retailers/distributors through its False

14    Claims.

15                       (4)     Evidence of dissemination of FIGS'

16    intentional misrepresentations and false and

17    misleading advertisements across numerous platforms

18    from 2012 to the present to disrupt SPI's relationship

19    with consumers/retailers/distributors.

20                       (5)     Expert testimony of Dr. Peter Hauser and

21    Dr. Deverick Anderson interpreting scientific testing

22    of FIGS' products and clinical studies reflecting the

23    falsity of FIGS' advertisements.

24                       (6)     Expert testimony of Dr. Itamar Simonson

25    and Dr. Simon Blanchard who will opine on the results

26    of consumer surveys demonstrating that FIGS' False

27    Claims were a substantial factor in consumer's

28    decision to purchase FIGS' products.

(7)     Party, third party, and expert testimony, and SPI's communications and business records demonstrating that Defendants' False Claims were a substantial factor in the disruption of SPI's relationship with consumers/retailers/distributors.

(8)     Testimony from SPI witnesses reflecting the harm and injury incurred by SPI as a result of FIGS' False Claims.

(9)     Key documents, including, but not limited to, FIGS' internal communications and business records reflecting the absence of any evidence to support its health and safety claims, FIGS' internal records reflecting its failure to donate one-for-one as it advertised, FIGS' internal communications demonstrating the importance of the False Claims, FIGS' internal and external communications showing that Defendants intended to deceive consumers, FIGS' business records reflecting its knowingly violated FDCA, EPA, and Silvadur requirements and guidelines by making false health claims, FIGS' business records demonstrating its False Claims made to investors and consumers that evidence FIGS' intent to deceive and the materiality of its False Claims, consumer communications demonstrating that they were deceived and influenced by the False Claims, and FIGS' market research and marketing records establishing an organized and concerted campaign intentionally to disseminate the False Claims.

B.       Position of Defendants FIGS, Spear, and Hasson as to SPI's Claims

1.      As to the foregoing, Defendants agree with Plaintiff SPI's descriptions of its claims for relief and the elements required as to each as set forth above, *except* as follows and for which Defendants provide their own version:

a)      <u>First Claim for Relief—Violation of 15 U.S.C. § 1125(a) of the Lanham Act</u>:

(1)      FIGS made a false or misleading statement of fact in a commercial advertisement about the nature, quality, or characteristic of its own product. *An ambiguous statement, or a statement subject to multiple reasonable interpretations, cannot be literally false.* A statement is misleading if it conveys a false impression and actually misleads a consumer. A statement can be misleading even if it is literally true or ambiguous.

(2)      *If the statement is false*, the statement actually deceived or had the tendency to deceive a substantial segment of FIGS' audience. *If the statement is misleading*, the statement actually deceived and misled a substantial segment of FIGS' audience [*omitting the presumption inserted by SPI*].[2]

---

[2]      Defendants object to the inclusion in the Final Pretrial Conference Order of any presumptions or inferences as "elements" of the Lanham Act claim; such inclusion is improper and contrary to the instructions of Appendix A to the Local Rules (¶ 7(b)). Defendants dispute that presumptions or inferences are "elements." Defendants also dispute the propriety of the presumptions and inferences themselves, which will be addressed via the jury instructions and verdict forms.

           (3)     The deception was likely to influence the purchasing decisions of consumers [*omitting the presumption inserted by SPI*].

           (4)     FIGS caused the false statement to enter interstate commerce.

           (5)     SPI has been or is likely to be injured as a result of the false statement [*omitting the inferences inserted by SPI*].  Injury includes direct diversion of sales from SPI to FIGS [*omitting SPI's language regarding goodwill*].

*See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003); *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995); *CKE Rest.*, 494 F. Supp. 2d at 1142-43; *In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*, 882 F. Supp. 915, 923 (C.D. Cal. 1994).

    b)    <u>Second Claim for Relief—Violation of California Business and Professions Code § 17200</u>:

           (1)     FIGS engaged in a business act or business practice.

           (2)     FIGS' act or business practice was unlawful, or unfair, or fraudulent [*omitting additional language inserted by SPI*].

False advertising, under the Lanham Act or California Business and Professions Code § 17500, constitutes an unfair business practice under California Business and Professions Code § 17200.

*See* Bus. & Prof. Code § 17200; *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009); *Davis v. HSBC Bank Nev.*, N.A., 691 F.3d 1152, 1168 (9th Cir. 2012).

    c)    <u>Fifth Claim for Relief—Intentional Interference with Prospective Economic Relations</u>:

(1)     SPI and *a specifically identified third-party* were in an economic relationship that probably would have resulted in an economic benefit to SPI.

(2)     Defendants knew of the relationship.

(3)     Defendants engaged in intentional misrepresentations and false advertising concerning FIGS' products.

(4)     By engaging in this conduct, FIGS intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur.

(5)     The relationship was disrupted.

(6)     SPI was harmed.

(7)     Defendants' conduct was a substantial factor in causing SPI's harm.

*See* Judicial Council of California Civil Jury Instructions, Instruction 2202 (2021 Edition); *Dean v. Kaiser Foundation Health Plan, Inc.*, 562 F. Supp. 3d 928, 935 (C.D. Cal. 2022).

   C.     Position of Defendants FIGS, Hasson, and Spear as to Affirmative Defenses

      1.     Defendants plan to pursue the following affirmative defenses:

         a)     Tenth Affirmative Defense—Laches:  SPI asserts that FIGS began making each of the Challenged Claims as early as 2012 and no later than 2014, and continued to make them thereafter.  Opposition[3] at 11 & 13.  The

---

[3]     Pl.'s Opp'n to Defs.' Mot. for Summ. J. (the "Opposition") [ECF No. 588].

statutes of limitations applicable to this action are variously two, three, and four years.  Yet SPI commenced this action in 2019, at *least* a year after the respective statutes had run as to each claim.  Laches presumptively bars SPI's relief for actions in the period outside the statutes of limitations. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002) (cleaned up).

   b)   Fourteenth Affirmative Defense—Puffery: FIGS' On Contact Claim, concerning the "immediate" speed of action, is inactionable puffery.  *See*, *e.g.*, *Swiss Am. Trading Corp. v. Regal Assets, LLC*, 2015 WL 631569, at *2 (C.D. Cal. Feb. 13, 2015); 5 McCarthy on Trademarks and Unfair Competition § 27:38 (5th ed. 2022).  Additionally, the Liquid Repellent claim is inherently ambiguous and similarly inactionable.

   c)   Sixteenth Affirmative Defense—Statute of Limitations:  As with laches above, SPI was tracking FIGS' marketing as early as 2013, and SPI's California state-law claims accrued no later than 2014.  SPI brought suit more than four years later, outside of the statute of limitations.  *See Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197 (2013).

   d)   Seventeenth Affirmative Defense—Unclean Hands:  Both SPI and FIGS manufactured and marketed scrubs treated with Silvadur, an antimicrobial agent.  And from the beginning of its use of that product, SPI made functionally the same claim that it now alleges FIGS made improperly; *i.e.*, the On Contact Claim.  SPI itself marketed products as able to "start[] to work upon contact with

unwanted bacteria on the fabric," with "the bacteria cell . . . rendered ineffective immediately"; and it advertised that "[w]hen the undesirable bacteria come into contact with treated fabrics, the growth of the bacteria is disrupted and the bacteria are continually reduced."  SPI's attempt to extract a damages award from FIGS for making claims that SPI itself advertised is the definition of unclean hands.

> e)      Further Affirmative Defense—Judicial Estoppel:  In addition to having made the On Contact claims itself, SPI defended the accuracy of these claims as a Lanham Act counterclaim defendant when a competitor, Vestagen, challenged SPI's ability to advertise the "ineffective immediately" statement.  *Strategic Partners, Inc. v. Vestagen Protective Techs., Inc.* ("*Vestagen*"), 2017 WL 5897711, at *2 (C.D. Cal. July 31, 2017).  At the time, SPI maintained that "the Statement is factually accurate," proffering a scientist who "explicitly affirms its truth."  *Id.*  On that basis, SPI defeated summary judgment; during trial, the court dismissed the counterclaim altogether.  *Vestagen*, 2018 WL 6038275 at *1 (C.D. Cal. Jan. 17, 2018), *aff'd*, 777 F. App'x 224 (9th Cir. 2019).  SPI is now judicially estopped from maintaining in this action that FIGS' On Contact statement is false.  *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001) (citation omitted) ("[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.").

    2.  The elements required to establish Defendants'
affirmative defense are:

    a)  <u>Tenth Affirmative Defense—Laches</u>:

      (1)  SPI unreasonably delayed bringing a claim
against Defendants.

      (2)  Defendants were prejudiced thereby.

*See Jarrow*, 304 F.3d at 834–40.

    b)  <u>Fourteenth Affirmative Defense—Puffery</u>:

      (1)  The statement at issue is a generalized,
vague, or highly subjective statement that a reasonable
consumer would not rely upon as a factual claim.

*See Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d
242, 245–46 (9th Cir. 1990).

    c)  <u>Sixteenth Affirmative—Statute of Limitations</u>:

      (1)  For SPI's UCL claim:

        (a)  The UCL claim accrued more than
four years prior to February 22, 2019, when SPI
filed its complaint, meaning that wrongdoing,
harm, and causation were present prior to
February 22, 2015.

      (2)  For SPI's FAL claim:

        (a)  The FAL claim accrued more than
three years prior to February 22, 2019, when
SPI filed its complaint, meaning that
wrongdoing, harm, and causation were present
prior to February 22, 2016.

      (3)  For SPI's IIPER claim:

1                             (a)     The IIPER claim accrued more than two years prior to February 22, 2019, when SPI filed its complaint, meaning that wrongdoing, harm, and causation were present prior to February 22, 2017.

*See* Cal. Bus. & Prof. Code § 17208; Cal. Civ. Proc. Code § 338; Cal. Civ. Proc. Code § 339; *Aryeh*, 55 Cal. 4th at 1193–97; *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013).

                             d)     <u>Seventeenth Affirmative Defense—Unclean Hands</u>:

                (1)     SPI's conduct is inequitable.

                (2)     SPI's conduct relates to the subject matter of its claims.

*See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987); *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1091–97 (C.D. Cal. 2016).

                             e)     <u>Further Affirmative Defense—Judicial Estoppel</u>:

                (1)     SPI has taken two clearly inconsistent positions between the *Vestagen* litigation and this action.

                (2)     SPI persuaded the *Vestagen* court to accept its earlier position.

                (3)     SPI would obtain an unfair advantage, or impose an unfair detriment upon Defendants, were it to prevail on the second, inconsistent position.

*See New Hampshire*, 532 U.S. at 749–50.

3. The key evidence Defendants relies on for each of the affirmative defenses are:

    a) <u>Tenth Affirmative Defense—Laches</u>:

        (1) Emails demonstrating that SPI and its former CEO, Michael Singer, had notice as early as 2013 that FIGS was making certain of the Challenged Claims; and that by at least September 2014—more than four and a half years before SPI filed suit—Mr. Singer was writing to third parties about potential legal action with respect to the 66% Claim.

        (2) Testimony and report of FIGS' damages expert, Mr. Persechini, regarding to a formula that allows calculation of damages—should SPI be entitled to any—on a period-by-period basis.

    b) <u>Fourteenth Affirmative Defense—Puffery</u>:

        (1) Survey evidence submitted by SPI's survey expert, Dr. Itamar Simonson, showing that numerous surveyed individuals did not believe that FIGS' On Contact Claim and 66% Claim to have been tested or to have been the product of testing.

        (2) Testimony and report of SPI's liquid repellency expert, Dr. Peter J. Hauser, that the term "liquid repellent" is inherently ambiguous and subjective, and depends on the views and needs of the end user.

    c) <u>Sixteenth Affirmative Defense—Statute of Limitations</u>:

(1)     Internal email communications between SPI executives from before February 22, 2015, that reflect awareness that Defendants were making the Challenged Claims and SPI's concern that the claims were unlawful and/or false.

(2)     Testimony of FIGS' Chief Operating Officer, Devon Duff Gago, describing the approximate timeline each of the Challenged Claims were made.

d)     Seventeenth Affirmative Defense—Unclean Hands:

(1)     SPI's own marketing and videos describing how Silvadur—the same antimicrobial treatment used by FIGS—protects healthcare workers against bacteria.

(2)     SPI's admissions.

(3)     SPI's archived website claims as to the immediate effect of that treatment.

(4)     SPI's communications with Silvadur's salespersons confirming that claim.

(5)     Testimony given by SPI employee Renata Ritcheson.

e)     Further Affirmative Defense—Judicial Estoppel:

(1)     Filings on the docket of this Court.

(2)     Filings on the docket of the Ninth Circuit.

D.     SPI's Position Regarding Defendants' Affirmative Defenses

1.    SPI disagrees with certain of Defendants' descriptions of their affirmative defenses and the elements required as to each, and provides the portions it disagrees with below:

a)    <u>Tenth Affirmative Defense—Laches</u>:

(1)    To prevail on this affirmative defense, Defendants must prove:

(a)    SPI delayed filing suit for an unreasonable *and inexcusable length of time from the time it knew or reasonably should have known of its claim* against Defendants.

(b)    The delay operated to the prejudice or injury of Defendants.

*In re Katz Interactive Call Processing Pat. Litig.*, 883 F. Supp. 2d 935, 961 (C.D. Cal. 2010); *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000).

b)    <u>Fourteenth Affirmative Defense—Puffery</u>:

(1)    To prevail on this affirmative defense, Defendants must prove that the advertisements are *general, subjective claims* about FIGS' products "upon which *no reasonable buyer would rely*," *rather than specific, measurable, or absolute characteristics of a product*.

*Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).

c)    <u>Seventeenth Affirmative Defense—Unclean Hands</u>:

(1)    To prevail on this affirmative defense, Defendants must prove:

    (a) Inequitable conduct by SPI that constitutes *wrongfulness, willfulness, bad faith, or gross negligence.*

    (b) That SPI's conduct *directly relates to the claim which it has asserted against Defendants.*

    (c) *Further, even if Defendants can prove both of the foregoing prongs, the Court must balance "the alleged wrongdoing of the plaintiff against that of the defendant, and 'weigh[ing] the substance of the right asserted by [the] plaintiff against the transgression which, it is contended, serves to foreclose that right.'"*

*TrafficSchool.com, Inc.*, 653 F.3d at 833; *Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*, 2018 WL 3618243, at *3 (S.D. Cal. July 30, 2018), *aff'd*, 821 F. App'x 701 (9th Cir. 2020); *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 960 (9th Cir. 2015) (quoting *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 350 (9th Cir. 1963)).

    d) <u>Statute of Limitations and Judicial Estoppel</u>:  As discussed further below, Defendants have abandoned these affirmative defenses by either:

    (1) their failure to plead the judicial estoppel defense in their answer and failure to seek leave to amend their pleadings to assert his defense; or

    (2) affirmative representations during the parties L.R. 16-2 conference *and* Defendants' Memorandum of Contention of Fact and Law filed on

September 12, 2022, that they did not intend to pursue their Statute of Limitations Affirmative Defense.

Accordingly, Defendants should be precluded from pursing these abandoned defenses at trial.

VIII.   In view of the admitted facts and the elements required to establish the claims, counterclaims, and affirmative defenses, all issues between the parties remain in dispute and to be tried except as set forth below:

    A.   Plaintiff SPI's Position

        1.   SPI has not abandoned any of the four claims for relief that remain in the Fifth Amended Complaint.  During the Parties' L.R. 16-2 conference held on August 24, 2022, Defendants indicated that they planned to pursue only three of the affirmative defenses pled in their Answer—namely, the Tenth Affirmative Defense of Laches, Fourteenth Affirmative Defense of Puffery, and Seventeenth Affirmative Defense of Unclean Hands.  *See* Defendants' Answer.[4]  Similarly, in Defendants' Memorandum of Contentions of Fact and Law filed on September 12, 2022, Defendants stated that they intended to pursue only their laches, puffery, and unclean hands affirmative defenses, and an unpled affirmative defense for judicial estoppel.  *See* Defendants' Memo.[5]  Notably, Defendants did not disclose in either the parties' L.R. 16-2 conference or their Memorandum of Contentions of Fact and Law that they intended to pursue any other affirmative defenses, namely affirmative defense No. 16 Statute of Limitations which they now

---

[4]   Defs.' Answer to Pl.'s Fifth Am. Compl. ("<u>Defendants' Answer</u>") [ECF No. 162].

[5]   Defs.' Mem. of Contentions of Fact and Law ("<u>Defendants' Memo</u>") [ECF No. 798].

belatedly seek to pursue.  Accordingly, Defendants' affirmative defense Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 15, 16, 18, 19, 20, 21 have been abandoned and should be dismissed with prejudice from this action.

2. During the Parties' L.R. 16-2 Conference, Defendants also indicated that they intend to assert an *unpled* affirmative defense of judicial estoppel.  Contrary to Defendants' assertions, judicial estoppel is an affirmative defense that must be properly plead.  Fed. R. Civ. P. 8(c) (listing "estoppel" as an "avoidance or affirmative defense" that must be plead); *see Banuelos v. Waste Connections, Inc.*, 2013 WL 5147507, at *6 (E.D. Cal. Sept. 12, 2013) ("[J]udicial estoppel is properly classified as an affirmative defense . . . .  It is the defendant's burden to properly plead and prove an affirmative defense."); *U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas*, 944 F.2d 253, 258 (5th Cir. 1991) ("Federal Rule of Civil Procedure 8(c) requires that 'a party shall set forth affirmatively . . . estoppel . . . and any other matter constituting an avoidance or affirmative defense,' Fed. R. Civ. P. 8(c), and failure to timely raise estoppel generally constitutes a waiver.").  SPI opposes Defendants' last-minute attempt to assert an affirmative defense that they have failed to plead in their answer, *see* Defendants' Answer, or amend their pleadings to include for over two years.  Defendants have not moved for leave to amend their pleadings, and SPI submits that Defendants' unilateral attempt to amend their pleadings on the eve of trial will severely prejudice SPI as it has been deprived of the opportunity to conduct discovery on this affirmative defense.  Therefore, SPI respectfully requests that the

Court preclude Defendants from asserting the affirmative defense of judicial estoppel in this action.

B.      Defendants FIGS, Hasson, and Spear's Position

1.      Defendants do not agree with SPI's position set forth above.  First, in the course of meeting and conferring on jury instructions, Defendants notified SPI that they intend to try affirmative defense No. 16, Statute of Limitations.  Second, as stated in footnote 2, *supra*, FIGS did not plead and has not pled judicial estoppel as an affirmative defense because it is not one.  *See New Hampshire*, 532 U.S. at 750; *Green v. Liberty Ins. Corp.*, 220 F. Supp. 3d 842, 849 (E.D. Mich. 2016).  Moreover, "an affirmative defense may be raised for the first time at summary judgment."  *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993).  FIGS did so.  *See* Defendants' MSJ at 24–27.[6]  SPI waived its arguments to the contrary when it failed to object or oppose on these grounds.  *Johnson v. Georgia-Pac. Corp.*, 329 F. App'x 65, 68 (9th Cir. 2009).

IX.      All discovery is complete.

X.      All disclosures under Rule 26(a)(3) have been made.

XI.      The joint exhibit list of the parties, including their respective objections, has been filed under separate cover as required by L.R. 16-6.1.

XII.      Witness lists of the parties have been filed with the Court.  Only the witnesses identified in those lists will be permitted to testify (other than solely for impeachment).  Defendants object to and move to exclude the witness list filed by SPI on September 12, 2022, *see* SPI's Witness List,[7] to the extent that it

---

[6]      Def.'s Mot. for Summ. J. ("Defendants' MSJ") [ECF No. 535].

[7]      Pl.'s Witness List ("SPI's Witness List") [ECF No. 804].

names witnesses not previously timely named in pretrial disclosures or discovery. SPI objects and moves to exclude the testimony of witnesses set forth in Defendants' witness list, *see* Defendants' Witness List,[8] for which Defendants failed to timely name in pre-trial disclosures and/or discovery.

   A. Plaintiff's Expert Witnesses. As set forth in the list of witnesses filed by SPI on September 12, 2022, *see* SPI's Witness List, SPI identifies the following expert witnesses it may call at trial:

     1. Dr. Deverick Anderson

     2. Dr. Greg Bell

     3. Dr. Simon Blanchard

     4. Dr. Emiel Den Hartog

     5. Dr. Peter Hauser

     6. Dr. Itamar Simonson

   B. Defendants' Expert Witnesses. As set forth in the list of witnesses filed by FIGS on September 12, 2022, *see* Defendants' Witness List, Defendants identify the following expert witnesses they may call at trial:

     1. Dr. Sabit Adanur

     2. Dr. Kusum Ailawadi

     3. Dr. Ahmed El-Shafei

     4. Dr. Matthew Hardwick

     5. Dr. Stephen Nowlis

     6. Dr. Christopher Pastore

     7. Mr. Dominic Persechini

     8. Mr. Brian Sowers

---

[8] Defs.' Witness List ("Defendants' Witness List") [ECF No. 797].

C.   Deposition Testimony.  Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7.  For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

1.   Plaintiff's Designations.  SPI designates the following witnesses whose testimony may be presented by deposition testimony:

a)   Devon Duff Gago (FIGS' Corporate Designee under Federal Rules of Civil Procedure 30(b)(6))

b)   Catherine "Trina" Spear

c)   Heather Hasson

d)   Timothy Byers

e)   Benjamin Chase

f)   Alex Tshering

2.   Defendants' Designations.  Defendants designate the following witnesses whose testimony may be presented by deposition testimony:

a)   Michael Singer (SPI's Corporate Designee under Rule 30(b)(6))

b)   Paul McAdam (SPI's Corporate Designee under Rule 30(b)(6))

c)   Michael Alexander

d)   Timothy Byers

e)   Lars Johansson

f)   Robert Pierpoint

g)   Renata Ritcheson

h)   Deborah Singer

i)   Michael Singer, in his individual capacity

1              j)      Matthew Tingler

2              k)      Alex Tshering

3              l)      Kim Webb

4        3.     Plaintiff's Objections.  SPI objects to the presentation

5    of testimony by deposition of the following witnesses:

6              a)      Michael Alexander

7              b)      Lars Johansson

8              c)      Kim Webb

9              d)      Renata Ritcheson

10             e)      Deborah Singer

11       4.     Defendants' Objections.  Defendants object to the

12   presentation of testimony by deposition of the following witnesses

13   to the extent that either witness is within the subpoena power:

14             a)      Benjamin Chase

15             b)      Alex Tshering

16   XIII.  Defendants contemplate the following further motions:

17       A.     Judgment as a Matter of Law (Fed. R. Civ. P. 50).

18       B.     Exclusion of Purportedly Lost or Deceived Customers Not

19   Disclosed in Discovery.

20       C.     Exclusion of Internal Documents, Drafts, and One-Off

21   Customer Communications Offered to Prove that Challenged Claims

22   Were Made in Commercial Advertising.

23       D.     Exclusion of Internal Documents, Drafts, and One-Off

24   Customer Communications Offered to Prove that Challenged Claims

25   Were Made in Commercial Advertising.

26       E.     Exclusion of Post-Purchase Statements Offered to Prove that

27   Challenged Claims Were Made in Commercial Advertising or Were

28   Material to Consumers.

1         F.    Exclusion of Executive Testimony Offered to Prove that the

2    Challenged Claims Were Material.

3         G.    Exclusion of Third-Party Social Media Posts.

4         H.    Exclusion of Insufficiently Disseminated "Catalogs."

5         I.    Exclusion of FIGS' "Medical Terminology for Dummies"

6    Materials.

7         J.    Exclusion of Evidence Concerning the Bankruptcy of

8    Heather Hasson.

9        XIV.   The foregoing admissions having been made by the parties, and the

10   parties having specified the foregoing issues remaining to be litigated, this Final

11   Pretrial Conference Order shall supersede the pleadings and govern the course

12   of the trial of this cause, unless modified to prevent manifest injustice.

13       **IT IS SO ORDERED.**

14

15   Dated: October 16, 2022

16                        John W. Holcomb
                       UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28