# Exhibit A

**CERTIFICATE OF TRANSLATION ACCURACY**

June 6, 2022

I, the undersigned, <u>Jessie J. Lee</u>, hereby certify:

I am a professional translator.  I work as an independent contractor.  I was contracted by Divergent Language Solutions, LLC to provide document translation from Korean into English for this matter.

I am fluent in both Korean and English. My qualifications include <u>31</u> years of full-time professional translation experience from Korean into English.

I have received and translated from Korean into English the document *LA19CV02286-JWH-Letter of Request Commission Rogatoire – File 1*, and hereby attest that the English translation is a complete and accurate rendition of the Korean original to the best of my knowledge and belief.

Executed on June 6, 2022 in Englewood Cliffs, State of New Jersey, USA.

Jessie J. Lee

# Seoul Western District Court
## Written Reply

**Assistance No.: 2021-D-798**

**Case No.: 2021 Reo 25**

**Commissioning Country: USA**

Examination of evidence concerning Hyosung Corp., a witness commissioned by your court, was conducted. The Protocol of Witness Examination and document submission letter are enclosed.

Attachment:     1. Protocol of Witness Examination
                2. Document Submission Letter

March 10, 2022

## Chief of Seoul Western District Court
[seal:] Chief of Seoul Western District Court

## Seoul Western District Court
## Protocol of Evidence Examination

1st

| Case | 2021 Reo 25 | Judicial Assistance (Commissioning of Evidence Examination) |
|---|---|---|

| Assigned Judge | Judge Young-Eun Jo | Date: March 3, 2022, 14:00 |
|---|---|---|
| Court Administrative Official | Soo-Wan Kim | Place: Court Room No. 417 |
| | | Open/Closed Court: Open |

Addressed the case and the parties:

| Plaintiff | Careismatic Brand, Inc. | Absent |
|---|---|---|
| Defendant | FIGS, Inc. | Absent |
| Petitioner | USA | Absent |
| Respondent and Witness | Hyosung TNC Corp., Agent: Se-Won Cheon | Present |

Judge

Ordered recording of the witness's testimony pursuant to the provisions set forth in Article 159, Paragraph 1 of the Civil Procedure Act. The witness was informed of the order and the witness examination concluded as shown in the Protocol.

Court Administrative Official        Soo-Wan Kim [seal:] Seal of Soo-Wan Kim

Judge                            Young-Eun Jo [seal:] Seal of Young-Eun Jo

Ex. A, Page 4

## Seoul Western District Court
## Protocol of Witness Examination

(March 3, 2022, 14:00, As a part of the Protocol of 1st Hearing)

| | | |
|---|---|---|
| Case | 2021 Reo 25 | Judicial Assistance (Commissioning of Evidence Examination) |
| Witness | Name: Se-Won Cheon | |
| | Date of Birth: Sept. 23, 1974 | |
| | Address: Bldg. 123, Unit 802, 859-19 Madeul-ro, Dobong-gu, Seoul (Dobong-dong, Hanshin Apt.) | |

Judge

The witness was informed of the purpose of the declaration, warned of the penalty of perjury, and asked to state the declaration shown in the attached Declaration.

The examination of the witness is as indicated in the recording file (identification no.: 000215-20210200 000025-220304144553) of the court's recording system.

Court Administrative Official          Soo-Wan Kim [seal:] Seal of Soo-Wan Kim

Judge                                  Young-Eun Jo [seal:] Seal of Young-Eun Jo

# Declaration

I hereby swear, under penalty of perjury,

to tell the truth,

the whole truth

and nothing but the truth.

Witness *Se-Won Cheon* (Seal or Signature)
[signature]

|  |
| :---: |
| Confirmation Seal |
| [seal:] Seal of Soo-Wan Kim |

## Seoul Western District Court Stenograph (Abstract)

| | |
| :---: | :--- |
| Case No. | 2021 Reo 25 |
| Date | Mar. 3, 2022, 14:00 |
| Place | Court Room No. 417 |
| Stenographic Content | Testimony of witness Se-Won Cheon |
| Total No. of Pages | 13 pages |
| Remarks | |

A stenographic record prepared in accordance with the provisions set forth in Article 159 of the Civil Procedure Act is hereby submitted as an attachment hereto.

March 3, 2022

Stenographer Soo-Jin Kim [seal:] Seal of Soo-Jin Kim

| |
| :--- |
| ※ This stenographic record was prepared by abstracting and indicating only the significant portions of the testimony. |
| ※ The parties to the case, witnesses, etc., may object to the information indicated in this stenographic record. When an objection is filed, the court must indicate the gist of the objection on this stenographic record or a separate document or correct the corresponding portions of this stenographic record. |

Judge

    To the witness:

Q:    Where do you reside? Please state your address.

A:    Building 123, Unit 802, Hanshin Apt., in Dobong-dong, Dobong-gu, Seoul.

Q:    Do you presently work at Hyosung Corp.?    **Objection: FRE 801; FRE 802; FRE 602**

A:    Yes

Q:    Is it Hyosung Corp. or Hyosung TNC Corp.?

A:    To be exact, it is Hyosung TNC Corp. We had been Hyosung [Corp.] in the past, but Hyosung TNC Corp. was spun-off in a corporate group restructuring.

Q:    Are you aware of the nature of this case?

A:    Yes.

Q:    A lawsuit is ongoing in the U.S. between a party whose former tradename is Strategic Partners and FIGS, Inc. "Hyosung Corp." is mentioned as a counterpart of FIGS' transaction. [Is your company] the same as this Hyosung Corp.?

A:    Yes. At the time, our company was Hyosung Corp. Since then, our company underwent a spin-off, becoming Hyosung TNC Corp.

Q:    When did [the tradename] change to Hyosung TNC Corp.?

A:    I do not remember exactly, but it has been a few years.

Q:    Do you mean that it was after the transaction?

A:    Yes, that is correct. There was no transaction with FIGS after the company name changed to Hyosung TNC Corp.

Q:      Then, it was Hyosung Corp. at the time of the transactions with FIGS, correct?

A:      Yes, that is correct.

Q:      What is your role in your current job?

A:      I am in charge of overseas sales in the Lifestyle Apparel Team of Hyosung TNC Corp.

Q:      When did you start working at Hyosung?

A:      I joined in 2006.

Q:      You have been working [at Hyosung] since then?

A:      Yes.

Q:      What is your current title?

A:      Divisional Manager.

Q:      At the time of this case, which is between 2013 and 2019, under what title were you involved?

A:      I believe I was a Dept. Manager or a Deputy Divisional Manager.

Q:      Were you in charge of the transactions in question?

A:      No, I was not.

Q:      Then who was the staff in charge at the time?

A:      Dept. Manager Sang-Doo Choi was in charge at the time, but he is no longer with the company.

Q:      What do you know about the case?                    **Objection: FRE 801; FRE 802; FRE 602**

A:      The Legal Affairs Team of the company informed us about the case, and we searched past records to verify information.

Q:      Then, you were not directly in charge of the transactions related to this case at the time?

A:      No, I was not.

Q:      Then, you are here today because you can testify based on the information compiled by the company?

**Objection: FRE 801; FRE 802; FRE 602; Foundation**

A:      Yes, that is correct.

Q:      First, I would like to ask about the documents submitted by the company. I would like to ask whether the documents submitted match the actual transaction details. Looking at the documents submitted by Hyosung, I see that the documents labeled "Attachment 1" through "Attachment 21" were submitted. First, the documents requested by the U.S. were purchase orders and reports on inspections and testing. [Hyosung] submitted purchase orders, stated that there are no documents pertinent to inspections and that there is one testing report, and submitted the report. Is this correct?

A:      Yes, that is correct.

Q:      Let me first ask about "Purchase Orders." First, what is the content of "Attachment 1?" Who prepared this purchase order?

A:      This is a PO (Purchase Order) prepared by FIGS and sent to us, which meant that "an order of these details is placed."

Q:      So, this document in this format was prepared by FIGS and received by Hyosung?

A:      Yes, that is correct.

Q:      Is it true that the transaction took place in the terms stated in this document?

A:      Yes. We conducted internal research and found that the transaction took place in the terms stated.

Q:      When did the transaction shown on the first document take place?

A: "Attachment 1" is dated Sept. 19, 2014, under which we received the order and were required to release and ship. For accurate details about the transaction, we need to search further because we were not asked to submit the information.

Q: Did you receive a purchase request directly from FIGS on the date stated on the document?

A: Yes.

Q: So, you are saying that a purchase request with the terms stated in the document was received from FIGS on the date shown, correct?

A: Yes, that is correct.

Q: Is it also true that products were sold in accordance with the document?

A: Yes, that is correct.

Q: Are you stating that the transaction took place although you are not certain when exactly the delivery was made?

A: Yes, that is correct.

Q: The document labeled as "Attachment 2" is also in the same format. When was this document received?

A: The receipt date of the document is Oct. 20, 2014. Also with this document, we need to search further for the exact shipping date. Shipments do not necessarily go out all at once. For instance, "Attachment 2" states 18,000 yards, and it could have been shipped partially (partial shipments). So to find the exact information, we need to search the B/Ls (Bill of Lading) or invoices, etc.

Q: So, are you saying that the purchase request was indeed received, and that a transaction took place according to it?

A: Yes, that is correct.

Q:      Next, when did the transaction in "Attachment 3" take place?

A:      It was received on Dec. 1, 2014, and the details are the same.

Q:      So, also in this case, you received a purchase request and made a sale according to it?

A:      Yes, that is correct.

Q:      Next, "Attachment 4" seems to have a slightly different format. What is this document?

A:      Give me a minute.                                      Relevance. FRE 401/402.
                                                               Also, the section in
Q:      Was this received from a broker?                       parentheses is not testimony.

A:      I am sorry, but could I make a phone call? (Asked the Judge of the court whether he could make a phone call and made a phone call.) FIGS would sometimes place orders directly to us, and there are garment vendors. So, Hyosung is a producer and supplier of textiles. But brand names, generally, send POs to garment or sewing vendors, and sewing vendors would send [orders] to us to buy textiles, and this chart corresponds to that.

Q:      If so, was this received on Nov. 4, 2014?

A:      Yes, that is correct. "Attachment 4" is dated Nov. 6, 2014.

Q:      Is it true that FIGS' order received was dated the 6th?

A:      Yes, that is correct.

Q:      Then is it also true that the textile was sold to FIGS according to this document?

A:      Yes, that is correct.

Q:      Let's take a look at "Attachment 5." This also has the same date, does it not?

A:      Yes.

Q:      Did this transaction also take place?

A:      Yes, that is correct.

Q:      With regard to "Attachment 6," is this also one document?

A:      Yes. It is the format we received from the same source, so the contents are the same.

Q:      What are the differences between "Attachment 5" and "Attachment 6?" Or are they the same? Are they one document of the orders placed altogether on the same day?

A:      Yes, they were placed on the same day. But they have different PO numbers. There are PO numbers, and each PO has a different number. This is because sometimes, a PO can be used for a garment style. Then, the sewing vendor uses this chart for a garment style, and a different chart for a different garment style. Even when the colors are the same or the items are the same, the buyer can do so for their convenience.

Q:      If so, is it true that both "Attachment 6" and "Attachment 7" were ordered by FIGS and the transactions were completed [accordingly]?

A:      Yes.

Q:      Next, it seems that the same broker handled "Attachment 8" and "Attachment 9."

A:      Yes. "Attachment 8" and "Attachment 9" were from the same place.

Q:      Is it true that these were ordered by FIGS?

A:      Yes, that is correct.

Q:      Is it also true that [your company] sold products according to [the orders]?

A:      Yes, that is correct.

Q:      Let's take a look at "Attachment 10." What is "Attachment 10?"

A:      "Attachment 10" is from a different sewing vendor as explained before. It is a place called
        "Dongnam" and based in Vietnam. The PO for FIGS' order was received through another vendor,
        which is the vendor named "Dongnam."

Q:      So, are you stating that the transaction took place also after receiving a purchase order in this case
        as well?

A:      Yes, that is correct.

Q:      Is this the same for "Attachment 11" also?

A:      Yes, it is the same.

Q:      "Attachment 12" is dated June 25, 2015. Are you stating that the transaction actually took place
        after receiving the order?

A:      Yes, that is correct.

Q:      Is this the same for "Attachment 13" also?

A:      Yes, that is correct.

Q:      Is this the same for "Attachment 14" also?

A:      Yes, it is the same.

Q:      "Attachment 15" is dated Nov. 30, 2015. Does the same apply to this one also?

A:      Yes, that is correct.

Q:      Is "Attachment 16" for a transaction in 2016?

A:      Yes, that is correct.

Q:      Is this the same for "Attachment 17" also?

A:      "Attachment 17" is a case where we received a PO, but from 17, they are POs that were canceled. So they are the cases where we received POs but the orders were cancelled later before shipping. We did not ship.

Q:      17 and…

A:      17, 18, 19 and 20-1.

Q:      It seems that from 19, they are orders from other companies. Are you stating that all 4 transactions from that point on were cancelled?

A:      Yes, that is correct.

Q:      So [the orders] up to "Attachment 20-1" were cancelled, and "Attachment 20-2" is an email instructing cancellation, correct?

A:      Yes, that is correct.

Q:      And it seems that "Attachment 21" is an "Inspection Report."

**Objection: FRE 801; FRE 802; FRE 602; speculation; foundation; FRE 403**

A:      Yes, that is correct.

Q:      What prompted the inspection described in the aforesaid "Inspection Report?"

A:      After we receive a PO and the goods are produced, we conduct a test on the goods, in other words, a validation test. So, we conducted the validation test sought by the customer and obtained the outcome.

Q:      What was the gist of the test results?

A:      Basically, "textile" involves physical test and water-resistance test. To explain in layman's terms, "physical" test is to evaluate the textile's sturdiness whereas "water-resistance" is mostly to evaluate the colorfast performance after washing.

Q:      Then, does it mean that the products will be sold to FIGS in the condition consistent with the inspection report?

A:      Yes, that is correct.

Q:      Here, the purchase orders received from FIGS indicate the conditions, such as that a lab testing is required, or that an approval from FIGS is needed to ensure consistency with [the applicable] standards, etc. Does this mean that each sale of goods required a separate procedure, such as testing, receipt of approval, etc.?

A:      Yes. Generally, customers can request it upon each sale of our goods, or in this case, [the transactions] basically involved one product. For one product, the testing would basically be once, or sometimes even none. In any case, I was not a staff in charge of the transactions at the time, so I am not certain whether the customer requested the test to be conducted upon each [transaction] or just once for all transactions. I do not have the exact details to that aspect, but when we checked [relevant] emails internally, we came to the conclusion that this test report was the only one submitted. Also, the fact that goods were shipped, according to our presumption… buyer customers often request [a test report] to receive the goods. Test report of "Inspection Test" is the most important factor. Some buyers tell us not to ship the goods unless the report is ready. This is because shipping must take place after the test report if a test was requested. Some buyers instruct that "shipping cannot take place without a test report." Other buyers, as in this case, allow [subsequent] loading after receiving "one test report, because there shouldn't be a major issue since they are the same products." For your information, we cannot ship arbitrarily, and we need the customer's confirmation before we can proceed with shipping.

**Objection: FRE 801; FRE 802; FRE 602; FRE 403; Foundation; Speculation**

Q:    The lawsuit in the U.S., as you would probably know already after seeing the overview of the case, seems to be a dispute over whether the products underwent antibacterial processing. Did the orders for the textile for which Hyosung received the purchase orders from FIGS specify that the products should have antibacterial properties?

A:    No. [Such information] for this case should have been stated in emails or POs we received. Basically, a PO indicates all requirements instructed by the customer. Or, even when there is no PO, or if the requirements were omitted in error, subsequent instructions would state whether such a property was omitted or needs to be included. In such cases, we would accommodate the instruction. For this case, however, although we searched all information, we found no records of any information related to antibacterial [properties] and we have never shipped any goods related to antibacterial [textiles].

Q:    So there was no agreement on the goods to be delivered to FIGS, designating antibacterial textiles such as Silvadur manufactured by Dow Chemical, etc.?

A:    Correct. There was none.

Q:    Any relation between [Silvadur] and Hyosung?

A:    "Dow Chemical" is a producer and seller of antibacterial chemicals. We, Hyosung, were the business section that sold textiles in connection with this case, and we, given that we sell/produce textiles, at times would buy the chemicals from Dow Chemical on our own or depending on the customer. However, we had never purchased [the chemicals] in connection with this case or applied [such chemicals on our products] shipped.

Q:    But the commissioning letter from the U.S. states as though Hyosung and Dow had tested [the chemicals] in FIGS and submitted the testing data. Did Hyosung ever conduct a textile test with Dow Chemical or undergo a similar testing or inspection?

A:   As I mentioned just now, Dow Chemical is a company that produces antibacterial chemicals. We engage in development or sales in other cases that do not involve the buyer of this case, and although Dow Chemical is a business counterpart for our company, we had never received any agent from Dow Chemical for processing in connection with this case.

Q:   Is it true that the textile in question was a textile to produce medical garments?

A:   It was for medical garments, but to be more accurate, it was for nurse's uniforms. Medical garment may mean a surgical garment, etc., so I want to be precise. To our understanding, [the textile] was for general nurse's uniforms or daily apparel.

Q:   To put it in English, would it be "scrub?"

A:   Nursing scrub is referred to as "nurse's uniform" in Korean.

Q:   Then, was there any transaction between FIGS and Hyosung that required manufacturing and supply of another antibacterial textile?

A:   No, there was none.

Q:   Were the purchase orders submitted all documents concerning the past transactions?

A:   Yes, that is correct.

Q:   Do you know of any other document concerning other testing or inspections?

A:   No. We searched through all documents, and there was no case of antibacterial processing conducted on bulk products, which mean the products we shipped based on the POs for goods we received.

Q:   Do you mean that the products indicated in the submitted documents were not antibacterial products?

A:      Yes.

Q:      And you had never received an order for such products?

A:      Correct. We had never received a PO [for such products]. Our agreeing to "starting a development" may have been possible, as this is quite common. However, for us to conduct antibacterial processing in connection with this case, as mentioned before, we have to complete the validation step for antibacterial processing, and this would involve test reports. Then the buyer would receive the reports before [the products] are shipped. We checked all information we have and found that there was no antibacterial processing in our internal processing steps or in the POs we received.

Q:      You have stated that you were not a staff member in charge for this case. But in any case, the full review conducted inside your company found that [the textiles] were not antibacterial and that the documents submitted were all the relevant documents that existed. Is this correct?

A:      Yes, that is correct.

Objection: FRE 801; FRE 802; FRE 602; Foundation; Speculation; FRE 403

Q:      Anything you would like to add with regard to this case?

A:      No, I do not have anything to add.        END

# 서 울 서 부 지 방 법 원
## 회　신　서

공조번호 : **2021-D-798**
사건번호 : **2021 러 25**
촉탁국가 : 미국


　　귀 법원이 촉탁한 증인 효성 주식회사(Hyosung Corp)에 대한 증거조사를 실시하였으므로 그 증인신문조서 및 문서제출서를 송부합니다.


덧붙임 : 1. 증인신문조서.
　　　　 2. 문서제출서.


2022.　3.　10.

# 서 울 서 부 지 방 법 원 장

# 서 울 서 부 지 방 법 원
## 증 거 조 사 조 서

1차

사　　　　건　　2021러25　사법공조(증거조사촉탁)

수명법관 판사　조　영　은　　　　기　　　일 : 2022. 3. 3. 14:00

법 원 주 사 보　김　수　완　　　　장　　　소 : 제417호 법정

공개 여부 : 공　개


사건과 당사자의 이름을 부름

원　고　Careismatic Brand, Inc.　　　　　　　　　　　　불출석

피　고　FIGS, Inc.　　　　　　　　　　　　　　　　　　불출석

신청인　미국　　　　　　　　　　　　　　　　　　　　　불출석

피신청인 겸 증인 효성티앤씨 주식회사 대리인 천세원　　　출석

--------------------------------------------------------

판　사

　　민사소송법 제159조 제1항의 규정에 따라 증인의 증언내용을 녹음할 것을 명하고

　　당사자에게 이를 고지, 별도 조서와 같이 증인신문

　　종결


　　　　　　법 원 주 사 보　　　　김수완　　


　　　　　　판　　　　　　사　　　　조영은　　


Ex. A, Page 22

# 서 울 서 부 지 방 법 원
## 증인신문조서

(2022. 3. 3. 14:00 1차 변론조서의 일부)

사        건        2021러25   사법공조(증거조사촉탁)

증        인        이        름        천세원

생 년 월 일   1974. 9. 23.

주        소        서울 도봉구 마들로 859-19, 123동 802호 (도봉동, 한신아파트)

---

판  사

증인에게 선서의 취지를 명시하고 위증의 벌을 경고한 다음 별지 선서서에 의하여

선서를 하게 하였다.

증인에 대한 신문내용은 법정녹음시스템의 녹음파일(고유번호 : 000215-20210200

000025-220304144553)과 같다.

법 원 주 사 보        김수완  

판        사        조영은  

# 선       서

양심에 따라 숨기거나 보태지 아니하고

사실 그대로 말하며,

만일 거짓말을 하면

위증의 벌을 받기로

맹세합니다.

증인    천세원   ㉑ (또는 서명)

확인인

## 서울서부지방법원

## 속 기 록(요지)

| 사건번호 | 2021러25 |
|---|---|
| 기     일 | 2022. 3. 3. 14:00 |
| 장     소 | 제417호 법정 |
| 속기내용 | 증인 천세원의 진술 |
| 총 면 수 | 13면 |
| 비     고 | |

민사소송법 제159조의 규정에 따라 작성한 속기록을 붙임과 같이 제출합니다.

2022. 3. 3.

속기자   김수진 

---

※ 이 속기록은 진술의 주요한 부분만을 정리하여 기재하는 방식으로 작성되었습니다.

※ 당사자나 증인 등은 이 속기록에 적힌 사항에 대해 이의를 제기할 수 있습니다. 이의가 제기되면 법원이 그 이의의 취지를 이 속기록 또는 별도의 서면에 기재하거나 이 속기록 중 해당 부분을 정정하여야 합니다.

판     사

　　　증인에게

문　　사는 곳이 어디인가요, 주소 말씀 해 주세요.

답　　서울시 도봉구 도봉동 한신아파트 123동 802호입니다.

문　　지금 효성 주식회사에서 근무하고 있는가요.

답　　예.

문　　효성 주식회사인가요, 아니면 효성티앤씨 주식회사인가요.

답　　정확히 효성티앤씨 입니다. 저희가 이전에는 효성이었는데, 그룹으로 계열사가 분리

　　　되면서 효성티앤씨로 분류돼서 나왔습니다.

문　　지금 이 사건이 어떤 사건인지 알고 있는가요.

답　　예.

문　　지금 미국에서 소송중인 변경 전 상호가 Strategic Partners 와 FIGS 회사 사이에서

　　　소송을 하고 있는데, 이 FIGS 사와 거래를 한 상대가 '효성 주식회사'라고 나오는데

　　　요. 그 효성 주식회사인가요.

답　　예, 그 당시에는 효성 주식회사가 맞았고요. 그 이후에 저희가 분리돼서 효성티앤씨

　　　로 바뀐 겁니다.

문　　효성티앤씨로 바뀐 것은 언제인가요.

답　　제가 정확하게 기억나지 않는데, 몇 년 됐습니다.

문　　거래 이후라는 것인가요.

답　　예, 맞습니다. 효성티앤씨로 변경된 후에는 FIGS 와 거래한 적은 없습니다.

문    그러면 FIGS와 거래할 당시에는 효성 주식회사가 맞았던 것인가요.

답    예, 맞습니다.

문    증인이 지금 회사에서 담당하고 있는 업무는 어떤 업무인가요.

답    효성티앤씨 생활의류팀에서 해외 영업을 담당하고 있습니다.

문    언제부터 효성에서 근무했던 것인가요.

답    2006년도에 입사했습니다.

문    그때부터 지금까지 근무하고 있나요.

답    예.

문    지금 직함은 어떻게 되는가요.

답    부장입니다.

문    이 사건 당시인 2013년~2019년까지는 어떤 직함으로 여기에 관여하였던 것인가요.

답    아마 과장, 차장 단계였을 겁니다.

문    이 사건 거래는 증인이 담당자였나요.

답    아니요. 제가 담당자는 아닙니다.

문    그러면 그때 담당자는 누구인가요.

답    그때 담당자는 최상두 과장이 있었는데, 지금은 퇴사했습니다.

문    증인께서 이 사건과 관련해서 어떻게 알고 있나요.

답    회사 법무팀으로부터 이전에 이런 일이 있었다고 해서 저희가 받아서 그 이전 자료를 다 뒤져서 확인을 한 건입니다.

문    그러면 증인께서 근무할 당시 직접 이 사건과 관련한 거래를 담당했던 것은 아닌가

요.

답    예, 그건 아닙니다.

문    회사에서 취합한 자료를 가지고 거기에 대해서 얘기할 수 있어서 나왔다는 것인가요.

답    예, 맞습니다.

문    먼저, 회사에서 제출한 문서에 대해서 묻겠습니다. 제출한 서류가 실제 거래내역과 맞는지를 물어보려고 하는데요. 효성에서 제출한 서류를 보면, '첨부1'부터 '첨부21' 까지의 자료를 제출하였습니다. 지금 먼저 미국에서 제출을 요청했던 서류는 구매주 문서와 검사하고 테스팅(testing) 한 보고서였는데요. 일단, 구매주문서와 인스펙션 (inspection)에 대한 것은 없고, 테스팅 보고서는 1개가 있다고 제출하였지요.

답    예, 맞습니다.

문    먼저, '구매주문서'에 대해서 묻겠습니다. 첫 번째 '첨부1'은 어떤 내용인가요. 이 구 매주문서는 누가 작성하였나요.

답    이것은 FIGS에서 작성해서 저희한테 피오(Purchase order)장 즉 '이렇게 오더를 하 겠다'고 발주서를 보낸 것입니다.

문    지금 이 양식으로 되어 있는 문서는, FIGS에서 작성해서 효성에서 받은 것인가요.

답    예, 맞습니다.

문    이 문서에 적혀 있는 대로 거래가 이뤄졌던 것은 맞나요.

답    예, 내부적으로 조사를 해 봤는데, 이렇게 이루어진 것은 맞습니다.

문    지금 첫 번째 문서에 적혀 있는 것은 언제 거래한 것인가요.

답    '첨부1'은 2014. 9. 19.자로 저희가 주문을 받아서 출고, 선적을 해야 되는 건데요. 거기에 대한 정확한 것은, 따로 자료를 제출하라는 요청을 받지 않아서 저희가 찾아 봐야 합니다.

문    근데, 여기 문서에 적힌 날짜에 FIGS로부터 직접 구매 요청을 받았나요.

답    예.

문    FIGS로부터 이 날짜에 이와 같은 구매 요청을 받은 게 맞다는 말씀이지요.

답    예, 맞습니다.

문    여기에 따라서 제품을 판매한 것도 맞나요.

답    예, 맞습니다.

문    여기에 이 거래가 언제 인도를 됐다는 것은 정확하게 모르지만 거래가 이뤄진 것은 맞다는 것인가요.

답    예, 맞습니다.

문    '첨부2'에 있는 문서도 같은 양식인데, 언제 받은 문서인가요.

답    이것은 2014. 10. 20.자로 받았고요. 이것도 마찬가지로 선적 날짜는 저희가 정확하게 다시 자료를 찾아봐야 합니다. 이게 한 번에 나가는 게 아니고, 만약에 '첨부2' 같은 경우는 18,000야드라고 하면 partial(분할선적)로 나 갈수도 있고요. 그래서 정확하게 하려면 저희가 B/L(bill of landing)이나 인보이스(invoice)나 그 기준으로 찾아 봐야 합니다.

문    구매요청을 받은 것은 맞고, 여기에 따라서 거래를 한 것은 맞다는 것인가요.

답    예, 맞습니다.

문    다음 '첨부3'은 언제 거래한 것인가요.

답    2014. 12. 1.자 받았고, 내용은 똑같습니다.

문    이것도 마찬가지로 실제 구매요청을 받아서 이대로 판매를 했다는 것인가요.

답    예, 맞습니다.

문    다음 '첨부4'를 보면, 약간 양식이 다른 것 같은데 이것은 어떤 문서인가요.

답    잠깐만요.

문    이것은 중개인으로로부터 받았나요.

답    죄송한데 전화한 통화만 해도 되겠습니까. (법정에서 판사님께 전화를 걸어도 되는지를 여쭤보고 전화 통화를 하다.) 이게 FIGS가 저희한테 다이렉트로 오더를 줄 때도 있고, 가먼트 벤더(garment vendor)라고 그래서 효성은 원단을 생산하는 공급자입니다. 근데 일반적으로 브랜드 같은 경우에서 가먼트, 봉제를 만드는 벤더에게 피오장을 주고요. 봉제 벤더는 원단을 사기 위해서 저희한테 주는 경우가 있는데 이 표가 그 건입니다.

문    그러면 이것은 2014. 11. 4.에 받은 것인가요.

답    예, 맞습니다. '첨부4'는 2104. 11. 6. 자입니다.

문    6일자로 FIGS로부터 주문을 받은 것은 맞나요.

답    예, 맞습니다.

문    그러면 여기에 따라서 FIGS한테 이 원단을 판매한 것도 맞나요.

답    예, 맞습니다.

문    '첨부5'를 보겠습니다. 이것도 같은 날짜로 되어 있는데 날짜는 같지요.

답    예.

문    이것도 마찬가지로 실제 거래가 이뤄진 게 맞나요.

답    예, 맞습니다.

문    '첨부6'을 보면, 이것은 계속 하나의 문서인가요.

답    예, 저희가 똑같은 곳에서 받은 양식이니까 똑같은 내용입니다.

문    '첨부5', '첨부6'은 어떤 게 다른 것인가요, 아니면 똑같은 것인가요. 같은 날 쭉 같이 주문한 하나의 문서인가요.

답    예, 같은 날 한 것은 맞고요. 이게 피오 번호가 틀립니다. 피오 번호가 있는데 각 피오 마다 각 각 번호가 틀린데 그 이유는, 한 피오가 가먼트 스타일에 따라서 사용된 경우가 있거든요. 그러면 봉제 벤더에서 가먼트 스타일에는 이 표를 내리고 또 다른 가먼트 스타일은 다르게 내립니다. 컬러가 같거나 아이템이 같더라도 구매한 입장에 서 편의를 위해서 그렇게 하는 경우가 있습니다.

문    그러면 '첨부6', '첨부7'도 FIGS로부터 주문을 받아서 거래한 게 맞다는 것인가요.

답    예.

문    그 다음 '첨부8', '첨부9'도 같은 중개인이 한 것 같은데요.

답    예, '첨부8', '첨부9'도 같은 곳입니다.

문    이것도 FIGS로부터 주문받아서 한 게 맞나요.

답    예, 맞습니다.

문    거기에 따라서 제품을 판매한 것도 맞다는 것인가요.

답    예, 맞습니다.

문    다음은 '첨부10'을 보겠습니다. '첨부10'은 어떤 것인가요.

답    '첨부10'은 아까 말씀드린 봉제 벤더가 바뀐 곳입니다. '동남'이라고 베트남에 있는 곳인데요. 여기에서 FIGS 오더를 다른 벤더 즉 '동남'이라는 벤더를 통해서 피오를 받은 겁니다.

문    여기도 마찬가지로 실제로 구매주문을 받아서 거래를 한 게 맞다는 말씀이지요.

답    예, 맞습니다.

문    '첨부11'도 마찬가지인가요.

답    예, 같은 겁니다.

문    '첨부12'는 2015. 6. 25.자로 되어 있는데, 이것도 주문받아서 실제로 거래를 했다는 것인가요.

답    예, 맞습니다.

문    '첨부13'도 마찬가지인가요.

답    예, 맞습니다.

문    '첨부14'도 마찬가지인가요.

답    예, 동일한 것입니다.

문    '첨부15'는 2015. 11. 30.자인데 이것도 마찬가지인가요.

답    예, 맞습니다.

문    2016년에 거래한 게 '첨부16'인가요.

답    예, 맞습니다.

문    '첨부17'도 마찬가지인가요.

답      '첨부17'은 저희가 피오장은 받았는데, 17 이후부터는 취소된 피오장입니다. 그러니

        까 즉 저희가 피오는 받고, 선적을 하지 않고 주문이 취소된 경우입니다. 선적을 하

        지 않았습니다.

문      17하고,

답      17, 18, 19, 20-1.

문      19부터는 다른 회사에서 받은 오더 같은데, 이 뒤로 거래 4개가 다 취소됐다는 것인

        가요.

답      예, 맞습니다.

문      '첨부20-1'까지는 취소가 됐고, '첨부20-2'가 취소하는 메일이라는 것이지요.

답      예, 맞습니다.

문      다음에 '첨부21'에 있는 게 '검사보고서'같은데요.

답      예, 맞습니다.

문      위 '검사보고서'는 어떻게 해서 받게 된 검사인가요.

답      저희가 피오장을 받아가지고, 이제 물건이 생산이 되면 물건에 대한 테스트 즉, 시험

        검증을 합니다. 그래서 저희가 고객이 요구하는 시험검증에 대해서 테스트를 해서

        결과를 받은 겁니다.

문      이 테스트 결과라는 요지가 어떻게 되는가요.

답      기본적으로 '원단'이라는 것은 물성 테스트와 결래도 테스트가 있는데, 쉽게 얘기하

        면 '물성'은 원단이 얼마나 잘 안 찢어지고 잘 견디느냐는 것이고, 그 다음 '결래도'

        는 세탁을 했을 때 물이 얼마큼 빠지는지 보기 위한 검사가 주를 이루고 있습니다.

문    그러면 이 검사보고서에 나오는 결과대로 FIGS에게 이 제품을 판매한 거라는 말씀

인가요.

답    예, 맞습니다.

문    여기 보면, FIGS로부터 받은 구매주문서에는 랩 테스팅을 해야 된다거나 FIGS로부터

기준에 맞아야 되기 때문에 승인을 받아야 된다든가 이런 조건이 적혀있는데, 이것

은 물건을 판매할 때마다 따로 테스팅을 받는다든지 승인을 받는다든지 이런 절차를

거쳤던 것인가요.

답    예, 일반적으로 저희가 물건을 판매할 때마다 고객이 요청하는 경우도 있고, 아니면

이 건의 경우에는 기본적으로 한 제품입니다. 한 제품은 기본적으로 한 번만 하고,

안 하는 경우도 있고요. 근데, 저도 그 당시 담당자가 아니라서 정확하게 이 테스트

를 고객이 할 때마다 해달라고 한 것인지 아니면 한 번만 하고 끝났는지 정확하게

모르겠지만 저희가 내부적으로 이메일을 다 확인을 했을 때는 이 테스트 레포트(test

report)만 제출한 걸로 되어 있습니다. 그리고 선적이 됐다는 것은, 저희가 추측을

해 볼 때 일반적으로 바이어(buyer) 고객들이 물건을 가져가기 위해서 요청을 많이

합니다. 제일 중요한 게 '시험검사' 테스트 레포트거든요. 이게 없으면 선적을 하지

말라는 바이어도 있고요. 왜냐면, 처음에 내가 요청했을 때 테스트 레포트를 주고 선

적해야 되는 건데 그게 아니고 '테스트 레포트가 없으면 선적 할 수 없다'는 바이어

도 있고요. 또 다른 바이어는 지금처럼 '한 제품이기 때문에 한 번만 하면 그 다음부

터 그냥 선적해도 크게 문제가 없다'고 하면 선적을 하고 있습니다. 참고로 저희가

선적을 마음대로 할 수 있는 게 아니고 고객이 선적 컨펌을 해야지 저희가 선적을

할 수 있는 겁니다.

문   미국에서 소송하는 것을 대충 보면, 이 사건의 주된 내용은 봐서 알겠지만 향균 처리를 한 제품인지 아닌지에 대한 게 쟁점이 되고 있는 것 같은데요. 효성이 FIGS로부터 구매주문을 받은 원단이 원래 향균 성능이 있는 제품을 납품하는 걸로 주문을 받았던 것인가요.

답   아닙니다. 저희가 이 건을 보고 이메일이라든지 피오장에 거의 다 나와 있거든요. 기본적으로 피오장에는 고객이 요구하는 사항이 들어가 있습니다. 또는 피오장이 없다고 하더라도, 뭐 실수로 안 넣었다고 하더라도 차후에 이런 기능성이 없는지 아니면 넣어달라는 경우가 있고요. 그런 경우에는 저희가 하는데, 이 건과 관련해서 저희가 다 찾아보고 했음에도 불구하고 향균에 대한 것은 받은 적도 없고, 향균에 대한 물건이 나간 적도 없습니다.

문   FIGS에다가 납품하기로 한 물건이 다우케미칼에서 제조한 실바두르(Silvadur)라는 향균 원단이라던지 그런 약정은 없었던 것인가요.

답   예, 없었습니다.

문   그것과 효성은 전혀 관련이 없나요.

답   '다우케미칼'이라는 곳이 어디냐면, 향균 약재를 생산해서 판매하는 곳입니다. 저희 효성은 이 사건과 관련해서 원단을 판매하는 부서이기 때문에 원단을 판매·생산하는 사람들은 저희 자체적으로 또는 고객에 따라서 다우케미칼에서 사기도 합니다. 그런데 저희가 이 건과 관련해서 구매해가지고 처리해서 나간 적은 없습니다.

문   근데, 미국에서는 FIGS 사에서 다우랑 같이 효성이 테스팅을 해서 테스팅 한 자료를 제출한 것처럼 촉탁서에 적혀 있는데요. 효성에서 다우케미칼과 같이 원단 테스팅을 한다든지 그런 테스팅이나 인스펙션(inspection)을 거친 적은 전혀 없나요.

답   저희가 조금 전에 말씀들인 대로 다우케미칼은 항균 케미칼 생산회사고요. 저희는 이 바이어 말고 다른 건으로는 개발도 하고 또는 판매도 하는데, 다우케미칼이 저희 거래처는 맞지만 이 건과 관련해서 저희가 다우케미칼에서 받아서 처리한 것은 없습니다.

문   지금 이 사건 원단이 의료복을 제조하기 위한 원단은 맞나요.

답   의료복은 맞는데 정확하게 얘기하면 간호사복이죠. 혹시나 의료복으로 말씀드리면 수술실이라든지 이런 경우도 있어서 정확하게 말씀드리면, 저희가 알기로는 일반 간호사 평상복으로 나가는 걸로 알고 있습니다.

문   이게 영어로 말하자면 스크럽(scrub)이라는 것인가요.

답   널싱 스크럽(nursing scrub)이 한국말로 '간호사복'입니다.

문   그러면 이 사건 FIGS와 효성 사이에서 다른 항균 원단을 제조해서 납품하기로 한 거래를 했던 것은 없었나요.

답   예, 없었습니다.

문   지금 제출한 주문서들이 거래한 것에 전부인가요.

답   예, 맞습니다.

문   따로 다른 테스팅이라던지 검사를 한 자료 같은 것을 추가로 했는지 안 했는지 모르나요.

답   아니요, 저희가 다 조사를 진행 해 봤는데 이 건과 관련해서 저희가 벌크 즉 물건 피오장 받은 것으로 선적한 제품에 대해서 항균을 한 적은 없습니다.

문   지금 제출한 자료에 나타나는 제품들은 항균 제품은 아니라는 것인가요.

답    예.

문    따로 그런 주문을 받은 적도 없었나요.

답    예, 피오장을 받은 것은 없습니다. 그 외에 저희가 '개발을 해보자'는 것은 있을 수 있겠지만 일반적으로 많이 하니까요. 근데 저희는 이 건과 관련해서 항균 처리를 하거나 아까도 말씀드렸지만 항균 처리가 되려면 저희가 검증을 해야 합니다. 그러면 시험 레포트가 있어야 되고요. 그러면 바이어는 그 레포트를 받고 선적을 해야 되는 거고요. 근데, 저희가 다 확인해 봤지만 저희 내부적으로 가공처리 할 때도 그렇고 그 다음에 피오장을 받았을 때도 그렇고 항균 가공을 한 적은 없습니다.

문    증인께서는 실제로 이 건을 담당했던 담당자가 아니라고 했는데, 회사에서 내부적으로 다 검토한 결과는 어쨌든, 항균은 아니고 지금 제출한 서류가 이 사건과 관련된 서류의 전부라는 말씀이지요.

답    예, 맞습니다.

문    추가로 이 사건과 관련해서 하고 싶은 말씀이 있는가요.

답    아니요, 없습니다.      끝.