1   Jacob S. Kreilkamp (State Bar No. 248210)
        jacob.kreilkamp@mto.com
2   Adam B. Weiss (State Bar No. 296381)
        adam.weiss@mto.com
3   Sara A. McDermott (State Bar No. 307564)
        sara.mcdermott@mto.com
4   James R. Salzmann (State Bar No. 324527)
        james.salzmann@mto.com
5   Hunter V. Armour (State Bar No. 334874)
        hunter.armour@mto.com
6   MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue, Fiftieth Floor
7   Los Angeles, California 90071-3426
    Telephone:  (213) 683-9100
8   Facsimile:  (213) 687-3702

9   Ekwan E. Rhow (State Bar No. 174604)
        erhow@birdmarella.com
10  Julia B. Cherlow (State Bar No. 290538)
        jcherlow@birdmarella.com
11  Fanxi Wang (State Bar No. 287584)
        fwang@birdmarella.com
12  Kate S. Shin (State Bar No. 279867)
        kshin@birdmarella.com
13  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
    DROOKS, LINCENBERG & RHOW, P.C.
14  1875 Century Park East, 23rd Floor
    Los Angeles, California 90067-2561
15  Telephone:  (310) 201-2100
    Facsimile:  (310) 201-2110

16  *Additional Counsel on Next Page*

17

18                    **UNITED STATES DISTRICT COURT**

19                    **CENTRAL DISTRICT OF CALIFORNIA**

20

21  | STRATEGIC PARTNERS, INC., | Case No. 2:19-cv-02286-JWH-KS |

22           Plaintiff,          **DEFENDANTS' OBJECTION TO
23                               INTRODUCTION OF EVIDENCE
          vs.                    RELATING TO THE DISMISSED
24                               BLACKSTONE CLAIMS**
    FIGS, INC., CATHERINE ("TRINA")
25  SPEAR, HEATHER HASSON,        Judge:   Hon. John W. Holcomb

26           Defendants.

27

28

1

*Additional Counsel*

2

Xiaonan April Hu (State Bar No. 321354)
     april.hu@mto.com

3

MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Suite 500E

4

Washington, D.C. 20001-5369
Telephone:  (202) 220-1100

5

Facsimile:  (202) 220-2300

6

Sara H. Worth (State Bar No. 341088)
     sara.worth@mto.com

7

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor

8

Los Angeles, California 90071-3426
Telephone:  (213) 683-9100

9

Facsimile:  (213) 687-3702

10

Miri E. Gold (State Bar No. 319060)
     mgold@birdmarella.com

11

BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.

12

1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561

13

Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

14

15

Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

---

DEFENDANTS' OBJECTION TO INTRODUCTION OF EVIDENCE RELATING TO THE DISMISSED
BLACKSTONE CLAIMS

1   I.      **<u>INTRODUCTION</u>**

2          Plaintiff Strategic Partners, Inc.'s (SPI) ongoing trial examination of

3   Catherine "Trina" Spear makes clear that it has no intention of following this

4   Court's order prohibiting the introduction of any evidence of the Blackstone Claims.

5   Dkt. 826 at 20–24. This Court should nip this effort in the bud for the myriad

6   reasons articulated in that order. As this Court has already recognized, because

7   evidence concerning SPI's dismissed Blackstone Claims is "simply irrelevant to

8   SPI's false advertising claims," *id.* at 22, and the introduction of this evidence at

9   trial is both highly prejudicial and will "result in litigating collateral distractions,"

10  *id.* at 24, it is barred by the balancing test set forth in Federal Rules of Evidence 403.

11  Indeed, the publication of multiple articles in the press *during the trial* (encouraged

12  and facilitated by SPI)—including an article touting an "exclusive" interview with

13  *trial counsel for SPI* published *the same day SPI began its examination of Ms.*

14  *Spear*—underscore SPI's actual motivation for seeking the introduction of this

15  highly prejudicial evidence (i.e., tarnishing FIGS in the press with false attacks) and

16  highlight the importance of preventing SPI from using the trial in this way.

17         In those articles, SPI and its counsel have repeatedly accused Ms. Spear of

18  "stealing" SPI's confidential information: SPI's latest article in its very own Scrubs

19  Magazine (also published the day SPI began its examination of Ms. Spear) is quite

20  literally titled "CBI Sues FIGS After Founder Admits to Stealing Confidential

21  Information," and trial counsel for SPI was *quoted* by the Daily Mail in an article

22  published that same day describing "Hasson & Spear's business as '*deception from*

23  *inception*,'" alongside descriptions of SPI's allegations that FIGS "stole" SPI's

24  "information." These allegations, of course, are entirely false, and irrelevant to the

25  claims actually being adjudicated in this trial. They are also contrary to SPI's

26  statements in open court, which have admitted that SPI does "not have any new

27  evidence the Court had not already seen" for claims that this Court *dismissed*.

28

1   Declaration of Xiaonan April Hu in Support of Defendants' Objection (Hu
2   Declaration), Ex. A at 14:17–25 (Hearing on Motions for Summary Judgment).

3       SPI's media campaign highlights its improper attempts to inflame the press
4   during an ongoing trial by pushing this false narrative of trade secret theft in the
5   media, even though the Court dismissed its Blackstone Claims *more than eighteen*
6   *months ago* and SPI did not seek to amend its complaint to add a trade secret claim
7   anytime since. It is obvious that SPI seeks to weaponize the highly prejudicial nature
8   of these false and *unproven* allegations against FIGS. Having poisoned the well of
9   public opinion, SPI now seeks to do the same with the jury by asking Ms. Spear
10   questions about any research, investigation, or analysis of SPI she may or may not
11   have conducted during her time at either Citigroup or Blackstone (and then
12   "impeaching" her with out-of-court statements that are not even attributed to her) to
13   suggest to the jury that Ms. Spear took something confidential of SPI's to launch
14   FIGS—precisely the type of inquiry prohibited by this Court's motion *in limine*
15   order.

16       SPI's ongoing media campaign and conversations with the press make clear
17   that the Court should not allow any questioning on this subject, because SPI's only
18   reason for doing so is to fuel its incendiary and false media narrative that FIGS
19   "gathered trade secrets" from SPI to succeed. SPI is clearly trying to use this trial to
20   create a media circus around a claim that has been dismissed from this case and has
21   no relevance to this trial. The Court should not countenance this.

22   **II.**    **<u>ARGUMENT</u>**

23       This Court's order granting Defendants' Motion *in Limine* No. 7 to exclude
24   evidence of SPI's long-dismissed Blackstone claims could not be clearer:
25   "[E]vidence of the Blackstone Claims is barred by Rule 403" because "its admission
26   would result in litigating collateral distractions." Dkt. 826 at 24. Notwithstanding
27   that order, SPI began its examination of Ms. Spear on October 20, 2022, by asking
28   the following question: "Was SPI one [of] the companies that you studied while at

-2-

Citigroup Strategic Partners, Inc.?" When Ms. Spear (accurately) answered that it was not, counsel for SPI sought to impeach Ms. Spear with a newspaper article from a third party stating (without attribution) that Ms. Spear "warmed to the idea at investment firm *Blackstone Group*, where she worked on a financing deal for Strategic Partners," Tr. at 176–77 (Oct. 20, 2022) (rough) (emphasis added)—an entirely different entity from Citigroup.[1] The proposed "impeachment" was thus no impeachment at all. It was instead a transparent attempt to smuggle out-of-court statements into the record to suggest that Defendants owe their success to SPI's business model, and to provide fodder for an ongoing and false media campaign that asserts Ms. Spear committed trade secret theft against SPI. That is the precise inference and line of inquiry forbidden by this Court's order, and the Court should not allow any additional questioning on the subject, which threatens not only to devolve into a mini-trial over an entirely unrelated question (whether Ms. Spear ever had access to SPI's trade secrets during her prior time on Wall Street, which she did not) but to unduly prejudice Defendants as well.

**A.    This Court's order granting Defendants' Motion *in Limine* correctly recognized that evidence of the Blackstone Claims is irrelevant and likely to distract the jury with collateral issues.**

As this Court previously explained in its order, "SPI's allegations of theft of confidential materials may have been relevant to SPI's dismissed claims, but they are not relevant to commercial advertising or advertising statements." Dkt. 826 at 22. What is more, SPI "has *admitted* that the available evidence does not support such a claim." *Id.* at 23 (emphasis added). Meanwhile, the prejudicial nature of evidence regarding the Blackstone Claims remains undeniable: any evidence or testimony (falsely) suggesting that Ms. Spear stole confidential information about

---

[1] Defendants note that the article did not quote Ms. Spear for that proposition, and that the assertion in the article is therefore unfounded and improper impeachment material. *See supra* p.6.

SPI during her time at either Blackstone or Citigroup is sure to poison the jury based on nothing more than allegations of trade secret theft that SPI itself has admitted it cannot prove.

Recent articles in the press, including one SPI directly published itself, as well as statements by lead trial counsel for SPI to the media during the trial, confirm the highly prejudicial nature of this line of inquiry. On the *very first day of trial*, October 17, 2022, Careismatic Brands Management published an article in Scrubs Magazine (which is owned by SPI) describing its lawsuit as follows: "From its inception, FIGS has broken the rules. In 2012, co-founder Trina Spear got the idea to start a scrubs company while working on a private equity financial deal for a healthcare apparel company…ours. Trina gathered trade secrets on just about every aspect of the business we built over the course of 17 years. She then violated her contract with us and her employer, Blackstone Capital, by sharing a highly-confidential, 300-page report with her friend, Heather Hasson." Careismatic Brands Management, *Why We Are Challenging FIGS to Tell the Truth*, Scrubs Magazine, https://scrubsmag.com/why-we-are-challenging-figs-to-tell-the-truth/ (Oct. 17, 2022). Embedded in the article itself is an excerpt from one of the Blackstone videos that this Court ordered excluded in its order granting Defendants' motion *in limine*. *Id.*

When SPI began its examination of Ms. Spear on October 20, 2022, at least two articles were simultaneously pushed out by the press at SPI's urging. One was published by the Daily Mail, the other again in Scrubs Magazine, which SPI owns. The Daily Mail article touted an "[e]xclusive interview" with trial counsel for SPI, Sanford Michelman, and highlighted and repeated SPI's allegations that Spear "stole the confidential information and used it to start her own company in 2013." *See* Josh Boswell, *Exclusive: Scrubs War! Co-Founders of Trendy $1.4bn Medical Apparel Company FIGS Are Sued for False Advertising and Unfair Business Practices Over Claims They Lied About 'Bacteria-Killing' Fabric and 'Stole' Another Firm's Ideas*,

-4-

1   Daily Mail (Oct. 20, 2022), *available at* https://www.dailymail.co.uk/news/article-

2   11341427/Scrubs-company-FIGS-sued-false-advertising-unfair-business-

3   practices.html. Mr. Michelman actively leaned into this framing and is directly

4   *quoted* in the article describing "Hasson & Spear's business as '*deception from*

5   *inception*,'" *id.* (emphasis added), mirroring SPI's language that "[f]rom its

6   inception, FIGS has broken the rules" because of Ms. Spear's purported theft of

7   SPI's "trade secrets." The second Scrubs Magazine article, titled "CBI Sues FIGS

8   After Founder Admits to Stealing Confidential Information," brazenly asserts,

9   contrary to what SPI knows to be true, that "FIGS co-founder Trina Spear admitted

10  to stealing a confidential, 300-page report on Careismatic's business practices while

11  working for Blackstone" and, again, embeds the same video excerpt that this Court

12  previously ordered excluded from evidence.[2] *See* Scrubs, *CBI Sues FIGS After*

13  *Founder Admits to Stealing Confidential Information*, Scrubs Magazine (Oct. 20,

14  2022), *available at* https://scrubsmag.com/cbi-sues-figs-after-founder-admits-to-

15  stealing-confidential-information/. The notion that the timing of these two articles—

16  published the *day* SPI began its examination of Ms. Spear by inquiring *into this very*

17  *topic*—was mere happenstance defies belief. Rather, the combination of events

18  strongly suggests (if not outright confirms) that SPI intends to leverage any evidence

19  or testimony on this subject that comes into evidence at trial for a highly damaging,

20  unsubstantiated media campaign against FIGS—and had, in fact, banked on such

21

22  _____

23  [2] Notwithstanding the fact that counsel for SPI has already admitted to the Court that
    it possesses no new evidence (or really, any evidence) of this "trade secret" claim,

24  Hu Decl., Ex. A at 14:17–25. SPI's article in Scrubs Magazine implausibly asserts
    that this "confidential, 300-page report" no one (including SPI) has been able to

25  locate "included data about Careismatic's customer base across 70 countries,
    factories, margins, products fabrics, employees, costs, prices, inventory and more."

26  Scrubs, *CBI Sues FIGS After Founder Admits to Stealing Confidential Information*,
    Scrubs Magazine (Oct. 20, 2022), *available at* https://scrubsmag.com/cbi-sues-figs-

27  after-founder-admits-to-stealing-confidential-information/.

28

DEFENDANTS' OBJECTION TO INTRODUCTION OF EVIDENCE, TESTIMONY, AND ARGUMENT
REGARDING BLACKSTONE

testimony coming in by waiting until Ms. Spear had taken the stand to publish these articles.

Such inflammatory accusations, levied in the media by lead trial counsel for SPI, are inappropriate. Those same accusations, if permitted to make their way to the jury in open court through a series of insidious and suggestive questions and "impeachment," would, of course, be extraordinarily prejudicial, particularly since some of the purported impeachment materials may not be used for impeachment at all. As this Court is aware, counsel for SPI has indicated it intends to "impeach" Ms. Spear with articles written by third parties that do not quote from or otherwise attribute their contents to Ms. Spear. Such articles lack the indicia of reliability necessary for proper impeachment and may not be used for that purpose. *See, e.g.*, *United States v. Sutton*, 2007 WL 1341400, at *6 (D. Ariz. May 7, 2007) ("[N]ewspaper articles that rely upon an anonymous source or do not attribute the information to a source does not present a reasonable or good faith belief that the conduct occurred" and may not be used to impeach a witness).

Moreover, any attempts by Defendants to cure the prejudice that would inevitably arise from allowing counsel for SPI to elicit testimony or introduce evidence concerning the Blackstone Claims would lead the court, the jury, and the parties down a rabbit hole of litigating the purported merits of a trade secret claim this Court dismissed *more than eighteen months ago*. Rightfully recognizing this risk, the Court ordered this evidence excluded under Rule 403's balancing test, and the Court should continue rejecting SPI's efforts to backdoor this evidence in at trial and prohibit further questioning on the subject.

### B. This Court Should Not Permit Questioning on Whether Ms. Spear "Researched" SPI During Her Time in Private Equity.

As discussed above, inquiry into the Blackstone Claims and Ms. Spear's purported research of SPI is entirely irrelevant, and the Court should not allow it. However, during the examination of Ms. Spear, this Court suggested that it would

be open to allowing counsel for SPI to "establish that Ms. Spear learned about the industry before she was at FIGS," but not that Ms. Spear *researched* SPI, specifically, as part of learning about the industry. Tr. at 230:11–24– (Rough). Defendants agree that to the extent this Court is willing to entertain any questioning into Ms. Spear's prior experience with the industry, that distinction would be a sensible one. As this Court correctly observed, any evidence that Ms. Spear "researched" or analyzed SPI, *specifically*, as opposed to learning about the industry *more generally*, carries with it the "suggestion that she stole trade secrets, which is not a part of the case" and has the potential to be highly "inflammatory." *Id*. Indeed, the inflammatory value of this evidence is clear from both the way SPI and its trial counsel are using the media to cover this case, which has fixated on the notion that FIGS was founded on "deception."

The Court correctly limited this line of questioning at trial, and it should continue to do so. SPI may not be permitted to impeach Ms. Spear with evidence of an email stating that Ms. Spear "researched," Ex. 253-1, SPI during her time at Citigroup.

DATED:  October 23, 2022          MUNGER, TOLLES & OLSON LLP


By:  _____*/s/ Jacob S. Kreilkamp*_____
      Jacob S. Kreilkamp
      Attorneys for Defendants

DEFENDANTS' OBJECTION TO INTRODUCTION OF EVIDENCE, TESTIMONY, AND ARGUMENT
REGARDING BLACKSTONE