1 | Jacob S. Kreilkamp (State Bar No. 248210)
jacob.kreilkamp@mto.com
2 | Adam B. Weiss (State Bar No. 296381)
adam.weiss@mto.com
3 | Sara A. McDermott (State Bar No. 307564)
sara.mcdermott@mto.com
4 | James R. Salzmann (State Bar No. 324527)
james.salzmann@mto.com
5 | William M. Orr (State Bar No. 331842)
william.orr@mto.com
6 | MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
7 | Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
8 | Facsimile:  (213) 687-3702

9 | Ekwan E. Rhow (State Bar No. 174604)
erhow@birdmarella.com
10 | Julia B. Cherlow (State Bar No. 290538)
jcherlow@birdmarella.com
11 | Fanxi Wang (State Bar No. 287584)
fwang@birdmarella.com
12 | Kate S. Shin (State Bar No. 279867)
kshin@birdmarella.com
13 | BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
14 | 1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
15 | Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

16

*Additional Counsel on Next Page*

17

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRATEGIC PARTNERS, INC., | Case No. 2:19-cv-02286-JWH-KS |
| Plaintiff, | **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)** |
| vs. | |
| FIGS, INC., CATHERINE ("TRINA") SPEAR, HEATHER HASSON, | Date:    October 31, 2022 |
| Defendants. | Time:    8:00 a.m. |
| | Crtrm.:  9D |
| | Judge: Hon. John W. Holcomb |

1  *Additional Counsel*

2  Xiaonan April Hu (State Bar No. 321354)
       april.hu@mto.com
3  MUNGER, TOLLES & OLSON LLP
   601 Massachusetts Ave. NW, Suite 500E
4  Washington, D.C. 20001-5369
   Telephone:  (202) 220-1100
5  Facsimile:  (202) 220-2300

6  Sara H. Worth (State Bar No. 341088)
       sara.worth@mto.com
7  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, Fiftieth Floor
8  Los Angeles, California 90071-3426
   Telephone:  (213) 683-9100
9  Facsimile:  (213) 687-3702

10  Miri E. Gold (State Bar No. 319060)
       mgold@birdmarella.com
11  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW, P.C.
12  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
13  Telephone:  (310) 201-2100
   Facsimile:  (310) 201-2110

14

15  Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **To the court, all parties, and their attorneys of record:**

2         **PLEASE TAKE NOTICE THAT**, Defendants FIGS, Inc. (FIGS), Catherine

3    ("Trina") Spear, and Heather Hasson will and hereby do move for judgment as a

4    matter of law on (1) Plaintiff Strategic Partners Inc. (SPI)'s intentional interference

5    with prospective economic relations (IIPER) claim; and (2) SPI's Lanham Act

6    claim.[1] This Motion is brought pursuant to Rule 50(a) of the Federal Rules of Civil

7    Procedure. This Motion is based on this notice of motion and motion, the

8    accompanying Memorandum of Points and Authorities, and on all the records,

9    documents, pleadings, and papers on file or to be filed in this action, arguments of

10   counsel, and any other matters that may properly come before the Court for its

11   consideration.

12

13   DATED:  October 28, 2022          MUNGER, TOLLES & OLSON, LLP

14

15                                     By:    _/s/ Jacob S. Kreilkamp_

16                                            Jacob S. Kreilkamp
                                            Attorneys for Defendants
17

18

19

20

21

22

---

23   [1] Due to delays in receiving the rough transcript for the afternoon session of trial on
24   October 27, 2022, which counsel for Defendants did not receive until approximately
     7:30am the morning of October 28, 2022, Defendants were unable to finalize their
25   motion and file by noon on October 28, 2022, the time set by the Court. Anticipating
     this delay, counsel for Defendants notified counsel for SPI at approximately 1:00am
26   on October 28, 2022, of the issue and asked if SPI would object if the motion were
27   filed one or two hours after noon. SPI responded that it would reserve the right to
28   object.

---

1

DATED:  October 28, 2022

2

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

3

4

5

By: _____*/s/ Ekwan E. Rhow*_____

6

Ekwan E. Rhow
Attorneys for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT ...................................................................................... 1

    A.   SPI failed to present a legally sufficient basis for a reasonable jury to find that FIGS, Trina Spear, or Heather Hasson intentionally and wrongfully interfered with SPI's relationship with any specific, identifiable third party. ................................. 1

        1.   California courts require plaintiffs to prove interference to a relationship with a specific, named third party ......................... 2

        2.   SPI has not presented any evidence that Defendants intentionally interfered (let alone *wrongly* interfered) with any relationship SPI had with specific customers, retailers, or distributors. .......... 4

    B.   SPI failed to present sufficient evidence of causation or actual injury to prove its Lanham Act claim. .................................... 9

        1.   SPI was required to introduce sufficient actual evidence of causation and cannot rely on a speculative chain of inferences. ............... 10

        2.   SPI failed to provide a legally sufficient evidentiary basis for a reasonable juror to find a causal link between the challenged claims and any actual injury ............................ 11

    C.   SPI has failed to introduce any evidence that the One-for-One, On Contact, and Liquid Repellency Claims are literally false or misleading. ........................................................................ 14

        1.   No reasonable jury could find that FIGS' One-for-One Claim is false or misleading. ......................................... 14

        2.   No reasonable jury could find that the On Contact Claim is literally false or misleading. ......................................... 16

        3.   No reasonable jury could find that FIGS' Liquid Repellency Claim is false or misleading. ............................ 21

III. CONCLUSION .................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) ........................................................................... 22

*Buetow v. A.L.S. Enters.*,
   650 F.3d 1178 (8th Cir. 2011) ........................................................... 14

*Cassells v. Mehta*,
   2007 WL 2390392 (E.D. Cal. Aug. 20, 2007) ................................... 21

*Castrol, Inc. v. Quaker State Corp.*,
   977 F.2d 57 (2d Cir. 1992) ................................................................ 14

*Chung v. City of L.A.*,
   587 F. App'x 428 (9th Cir. Dec. 12, 2014) ........................................ 21

*Crowe v. Wiltel Commc'ns Sys.*,
   103 F.3d 897 (9th Cir. 1996) ............................................................. 21

*Damabeh v. 7-Eleven, Inc.*,
   2013 WL 1915867 (N.D. Cal. May 8, 2013) ........................................ 3

*Grasshopper House, LLC v. Clean & Sober Media LLC*,
   2019 WL 12074086 (C.D. Cal. July 1, 2019) ............................... 10, 11

*Harper House, Inc. v. Thomas Nelson, Inc.*,
   889 F.2d 197 (9th Cir. 1989) ...................................................... 9, 10, 11

*In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*,
   882 F. Supp. 915 (C.D. Cal. 1994) ................................................ 16, 21

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
   2014 WL 572290 (N.D. Cal. Feb. 11, 2014) ......................... 14, 21, 22, 23

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ........................................................... 14

*Omega Env'l, Inc. v. Gilbarco, Inc.*,
   127 F.3d 1157 (9th Cir. 1997) ........................................................... 22

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,
   2019 WL 5320390 (S.D. Cal. Oct. 21, 2019) ..................................... 21

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,
    2020 WL 4747724 (S.D. Cal. Aug. 17, 2020)................................................. 10, 13

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ....................................................................... 14, 19

*Strategic Partners, Inc. v. Vestagen Protective Techs. Inc.*,
    2016 WL 10611186 (C.D. Cal. Nov. 23, 2016) ................................................. 20

*Summers v. Delta Air Lines, Inc.*,
    508 F.3d 923 (9th Cir. 2007) .................................................................................. 1

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011) ....................................................................... 10, 11

*United States v. Alexander*,
    106 F.3d 874 (9th Cir. 1997) .......................................................................... 2, 3

**STATE CASES**

*George v. eBay, Inc.*,
    71 Cal. App. 5th 620 (2021) ................................................................................. 3

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
    2 Cal. 5th 505 (2017) ........................................................................................... 2

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
    42 Cal. App. 4th 507 (1996) ......................................................................... 2, 3, 7

**FEDERAL STATUTES**

Lanham Act....................................................................................................... 1, passim

**STATE STATUTES**

Cal. Civ. Pro. Code § 339 .......................................................................................... 9

**FEDERAL RULES**

Fed. R. Civ. P. 50........................................................................................................ 1, 5

## I.  <u>INTRODUCTION</u>

Rule 50(a) authorizes this Court to grant judgment as a matter of law against Plaintiff Strategic Partners, Inc. where the trial so far has shown that "a reasonable jury would not have a legally sufficient evidentiary basis to find for" SPI.  Fed. R. Civ. P. 50(a)(1). Granting such relief serves "economy and expedition" by cutting short this trial on the issues and claims on which SPI has been "unable to carry a burden of proof that is essential to [its] case." *Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 927 (9th Cir. 2007) (quoting 1991 Advisory Committee Notes to Fed. R. Civ. P. 50(a)(1)).

SPI has rested, and cannot meet its burden of proof on the essential issues identified here that relate to its intentional interference with prospective economic relations (IIPER) and Lanham Act claims. To serve the interests of economy and efficiency animating Rule 50, the Court should grant judgment as a matter of law against SPI and in favor of Defendants on these two claims.[2]

## II.  <u>ARGUMENT</u>

**A.  SPI failed to present a legally sufficient basis for a reasonable jury to find that FIGS, Trina Spear, or Heather Hasson intentionally and wrongfully interfered with SPI's relationship with any specific, identifiable third party.**

SPI has known for years that it bore the burden at trial to present evidence that FIGS, Ms. Spear, and Ms. Hasson intentionally and wrongfully interfered with economic relationships between SPI and specific, identifiable third parties. Yet after two weeks of trial, SPI failed to meet this high bar. No reasonable jury could find for SPI on the evidentiary record.

---

[2] Defendants reserve their rights both to renew this motion and to move again under Rule 50(a) for judgment as a matter of law on other issues at the close of all evidence. *See* Fed. R. Civ. P. 50(a)(2) ("A motion for judgment as a matter of law *may be made at any time* before the case is submitted to the jury.").

An IIPER claim under California law focuses on interference with particular third-party relationships and requires SPI to prove five elements: "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017). California courts unequivocally read this "usual formulation of the elements" to require specific proof that a defendant intentionally and wrongfully interfered with a plaintiff's relationship with a specific, identifiable third party. *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 525–26 (1996). Consistent with that, Judge Wu long ago determined that SPI is "required to identify specific economic relationships with third parties." Dkt. 144 at 9. That ruling is now the law of the case. *See United States v. Alexander*, 106 F.3d 874, 877 (9th Cir. 1997) ("The law of the case doctrine ordinarily precludes reconsideration of a previously decided issue.").

SPI has failed, however, to introduce any evidence whatsoever that a specific, identifiable third party *switched* from SPI to FIGS *because of* the Challenged Claims. That failure is fatal to its case, and the Court should grant judgment as a matter of law against SPI on the IIPER claim against FIGS, Ms. Spear, and Ms. Hasson.

### 1.     California courts require plaintiffs to prove interference to a relationship with a specific, named third party.

To prevail on its IIPER claim, SPI must identify specific third-parties whose economic relationship with SPI was wrongfully disrupted by FIGS. That requirement is amply supported by California case law: California courts uniformly recognize that a plaintiff must prove that the defendant intentionally and wrongfully interfered with the plaintiff's relationship with a specific, identifiable third party.

1   Just last year, the California Court of Appeal dismissed an IIPER claim where the

2   plaintiff alleged that defendant interfered with the plaintiff's relationship with

3   unspecified "repeat buyers" by hiding the plaintiff's product listings from the

4   defendant's website. *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 639 (2021). The

5   court reasoned that "merely referring to unidentified repeat buyers is insufficient

6   when there are no facts to show that the unidentified buyers were likely to purchase

7   the unidentified listings that were supposedly 'hidden.'" *Id.* In other words, IIPER

8   plaintiffs may not simply allege disruption to its relationships with a category of

9   third parties, but instead must prove intentional disruption to discrete relationships

10  with specifically named persons or entities. Countless IIPER cases from California

11  and federal courts sitting in diversity hold the same. *See, e.g.*, *Westside Ctr. Assocs.*,

12  42 Cal. App. 4th at 527; *Damabeh v. 7-Eleven, Inc.*, 2013 WL 1915867, at *10

13  (N.D. Cal. May 8, 2013) ("Plaintiff does not *specifically identify* any of these

14  employees and customers. Accordingly, Plaintiff's interference with prospective

15  business advantage claims fail." (emphasis added)).

16          This Court has agreed. Two years ago, Judge Wu granted SPI one final

17  opportunity to amend its complaint and identify "specific economic relationships

18  with third parties" that would support an IIPER claim. Dkt. 144 at 9–10; Dkt. 147 at

19  6. Judge Wu warned SPI that it could not "sidestep" this requirement by relying on

20  "unidentified" customers, retailers, or distributors, but would instead need to

21  specifically identify and name the third-parties whose relationship with SPI FIGS

22  allegedly disrupted. Dkt. 144 at 9–10; Dkt. 147 at 7. That ruling is the law of the

23  case, and it binds SPI. *See Alexander*, 106 F.3d at 877 ("The law of the case doctrine

24  ordinarily precludes reconsideration of a previously decided issue."). Thus, to

25  survive a motion for judgment as a matter of law, SPI had to introduce as part of its

26  case-in-chief evidence that Defendants did, in fact, intentionally and wrongfully

27  interfere with and/or disrupt SPI's economic relationship with a specifically

28

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)

1  identified third party. As discussed below, SPI did not do so, and each of the

2  Defendants is entitled to judgment as a matter of law on the IIPER claim as a result.

3      **2.    SPI has not presented any evidence that Defendants**

4          **intentionally interfered (let alone *wrongly* interfered) with**

5          **any relationship SPI had with specific customers, retailers, or**

6          **distributors.**

7      SPI has failed to satisfy its burden of establishing that it had a relationship

8  with a specific, named third party; that Defendants intentionally and wrongfully

9  interfered with that relationship; and that Defendants' interference harmed that

10 specific relationship. Indeed, SPI has failed to produce evidence of even a *single*

11 relationship with an identifiable customer, retailer, or distributor that Defendants

12 disrupted *at all*, let alone intentionally and wrongfully. SPI presented no evidence

13 that a single person who purchased SPI's products ever *stopped* purchasing from

14 SPI in favor of FIGS, let alone evidence that such consumers did so *because of* the

15 challenged claims, as SPI must prove.

16     SPI will likely argue that Exhibits 104 and 2233 identify consumers with

17 whom FIGS interfered,[3] and it reiterated this theory of liability to the Court just

18 yesterday, when it asserted that the list of "identified third parties" for its IIPER

19

20 _____

21 [3] Counsel for SPI represented to the Court on October 27, 2022, that "Exhibit A" to

22 SPI's Fifth Amended Complaint included a list of customers it intended to rely on

   for its IIPER claim. Hu Decl., Ex. A at 129:24–130:11 ("[W]e have in the record a

23 list of customers who identified certain of these false claims as reasons for

   purchasing FIGS. I believe that was Exhibit A to our fifth amended complaint.").

24 That is not possible, as counsel for SPI later seemed to recognize. *Id.* at 130:9–11

   ("I'm being told that [Exhibit A] did not [become a trial exhibit].")). Exhibit A is a

25 heavily excerpted version of a consumer survey FIGS undertook in 2016, *see infra*

26 p. 6, and was not admitted into evidence, meaning it cannot form the basis for IIPER

   liability. Defendants thus address instead Exhibit 2233, which *was* admitted into

27 evidence and which includes the full set of original, unaltered FIGS survey results

28 from which SPI derived Exhibit A.

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)

claim could be found in "the list of customers, Cherokee customers, that was sent to Ms. Hasson and Ms. Spear," as well as "Exhibit A to our fifth amended complaint." Declaration of Xiaonan April Hu in Support of Defendants' Rule 50(A) Motion (Hu Declaration), Ex. A at 129:23–130:22 (Oct. 27, 2022 PM Rough Transcript). Not so. To begin, although it is true that Exhibit 104 includes a list of *retailers* who purchased scrubs from Cherokee in the past, Hu Decl., Ex. B at 112:10–16 (Oct. 24, 2022 Final Transcript), there is no evidence that *any* of the retailers on that list bought FIGS scrubs due to any of the challenged claims (or even that FIGS wound up sending catalogs to those retailers, as the internal email to which the list was attached tentatively suggests, *see* Hu Decl., Ex. C (Exhibit 104)). Nor is there any evidence that any of these retailers ever *stopped* buying SPI's scrubs.

In short, Exhibit 104 provides no basis for a reasonable jury to conclude that Defendants intentionally and wrongly interfered with SPI's relationship with the customers named within because (i) there is no evidence that Defendants ever actually contacted those customers; (ii) there is no evidence that Defendants ever communicated any of the challenged claims to those customers (the "wrongful act" SPI alleges FIGS engaged in); (iii) there is no evidence that the listed customers ever purchased from Defendants on account of the challenged claims; and (iv) there is no evidence that any of the listed customers ceased purchasing from SPI at all, much less that they did so in favor of FIGS. SPI's attempts to rely on Exhibit 104 effectively amount to an argument that the mere fact that FIGS at one point knew the identities of some of SPI's customers is enough to show that FIGS intentionally interfered with SPI's relationship with those customers. That position is absurd: IIPER concerns *tortious interference* with a competitor's prospective economic relations, not mere knowledge of a competitor's customers, and SPI's complete failure to establish the former through evidence dooms its attempts to prove up an IIPER claim through Exhibit 104.

SPI's reliance on Exhibit 2233 fares no better. As SPI previously stipulated, Exhibit 2233 is a FIGS-commissioned survey of *FIGS* customers that FIGS produced during discovery, Dkt. 663-1 at 257 (FIGS' Amended Joint Statement of Undisputed Facts), and that merely identifies customers who have worn both SPI and FIGS scrubs.[4] That survey, however, "did not ask respondents whether they had ceased buying scrubs from any brands and switched to FIGS." *Id.* at 258. Nor did it ask whether customers would have purchased SPI brands *instead of* FIGS if, for example, FIGS' scrubs were not water repellant. *See* Hu Decl., Ex. D (Exhibit 2233). This does SPI no good.

Most recently, on October 27, 2022, counsel for SPI suggested that the jury might "infer" intentional interference from the list of customers set forth in Exhibit 2233. *See* Hu Decl., Ex. A at 130:23–131:3. That, too, is inaccurate. The survey included in Exhibit 2233 asked FIGS customers "what other scrubs brands *do you wear or have you worn*." Customers who answered Dickies, Cherokees, or other of SPI's scrub brands were simply stating that (i) they *continued to wear* SPI's brands in addition to FIGS; (ii) they had previously *worn* scrubs from SPI brands in the past; or (iii) both. None of these options speaks at all to whether Defendants *tortiously interfered* with SPI's relationship with those customers, much less whether they did so through the use of the challenged claims. Furthermore, the survey provides *no information whatsoever* as to which of the three circumstances applied to each customer's answers, making it impossible to distinguish between them. The most one can glean from this document is the unsurprising and uncontroversial fact that SPI and FIGS had some customer overlap. But the mere existence of customer overlap (which is to be expected given the nature of the

---

[4] To address Judge Wu's express requirement that it allege specific relationships, SPI excerpted this document and attached that excerpt as an exhibit to its Fifth Amended Complaint, despite the fact that those customers nowhere indicated that they had stopped purchasing from SPI in favor of FIGS. Dkt. 151-1.

industry) does not provide a legally sufficient basis for any reasonable jury to conclude that Defendants *intentionally and wrongfully interfered* with SPI's relationship with the customers listed in Exhibit 2233.

Put simply, neither Exhibit 104 nor Exhibit 2233 identifies a single consumer who stopped buying SPI scrubs and switched to buying FIGS scrubs. As a result, a reasonable juror looking at these two exhibits and the rest of the evidence that has been introduced could not conclude or reasonably infer that FIGS disrupted any relationship of SPI's at all, much less that it disrupted them through *wrongful* means (i.e., purportedly false advertisements of the challenged claims)—a necessary predicate to establishing IIPER liability. Again, at most these exhibits simply identify consumers who have purchased scrubs from either FIGS or SPI (or both). But a plaintiff cannot sue another company in the market simply because consumers have purchased from both companies: that is the free market at work, not actionable interference. *Cf. Westside Ctr.*, 42 Cal. App. 4th at 527 (holding that "interference with the market" is not cognizable under IIPER).

Nor has SPI introduced sufficient evidence from which a reasonable jury could find that FIGS (a company that sells *directly to consumers*) intentionally and wrongfully disrupted SPI's relationships with its retailers or distributors. The only evidence that FIGS ever interacted with one of SPI's retailers is Exhibit 262, an email to a third-party retailer named Inka's Uniforms, which placed an order for FIGS scrubs way back in 2015. Even then, however, the retailer specifically noted that "we *currently* carry all of the antimicrobial lines from Cherokee," Hu Decl., Ex. E (Exhibit 262) (emphasis added); in other words, the evidence shows that Inka's Uniforms did *not* stop purchasing Cherokee (an SPI brand). Rather, it was *simultaneously* purchasing 114 scrub tops and pants from FIGS. That is no wrongful interference at all, but instead the basic economics of doing business as a retailer— as even Michael Singer, SPI's former CEO, acknowledged during his testimony. Hu Decl., Ex. A at 83:16–84:4 (Oct. 27, 2022 PM Rough Transcript) ("I don't think

1   there is ever a case where there isn't some conflict [between retailer and

2   manufacturer]. . . . The retailer carries a variety of other competing products, too,

3   and the retailer cares about their total sales from all those brands as well as the total

4   profits from all of those brands.").

5        Just as fatal to SPI's IIPER claim with respect to Inka's Uniforms is the fact

6   that there is no evidence that any of the purportedly false advertising claims was a

7   factor in Inka's Uniforms' decision to purchase from FIGS. A reasonable juror

8   could not find that Defendants *wrongfully* disrupted any relationship between Inka's

9   Uniforms and SPI. The email from Inka's Uniforms specifically states: "I love the

10  unique look . . . . The hand is fantastic (ridiculously soft as you say) and the threads

11  for threads initiative is simply awesome. I also love the fact that they are

12  antimicrobial." Hu Decl., Ex. E. Neither the "threads for threads initiative" nor

13  "antimicrobial" are challenged claims in this case. Rather, as SPI itself has argued to

14  the jury, the four purportedly false advertising claims are that (i) FIGS' scrubs kill

15  bacteria and infection immediately on contact; (ii) FIGS' scrubs reduce hospital-

16  acquired infection rates by 66%; (iii) FIGS' scrubs are liquid repellant; and

17  (iv) FIGS donates a set of scrubs for every set purchased. Exhibit 262 includes none

18  of those four claims. Hu Decl., Ex. Z at 12:9–13:3, 17:11–14, 26:19–21. Even if a

19  reasonable juror could find that FIGS disrupted SPI's relationship with this specific

20  retailer (and they could not), there is no evidence that the disruption was wrongful.

21       Finally, judgment as a matter of law is separately warranted because SPI's

22  IIPER claim as to Inka's Uniforms is unquestionably barred by the statute of

23  limitations. Exhibit 262 makes clear that FIGS's sale of 114 scrub tops and bottoms

24  to Inka Uniforms took place on October 22, 2015—*three and a half years* before

25

26

27

28

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)

1   SPI filed its complaint. The statute of limitations for IIPER is *two years*. Cal. Civ.

2   Pro. Code § 339.[5] That alone bars SPI's IIPER claim as to Inka's Uniforms.

3         At bottom, without any proof of specific relationships that were disrupted by

4   FIGS' alleged misconduct, no reasonable jury could find in favor of SPI on its

5   IIPER claim. Defendants are therefore entitled to judgment as a matter of law. At a

6   minimum, this Court should grant judgment as a matter of law to individual

7   defendants Ms. Spear and Ms. Hasson because SPI failed to introduce any evidence

8   at all that they intentionally and wrongfully interfered with any specific third-party

9   relationship of SPI's.

10        **B.**    **SPI failed to present sufficient evidence of causation or actual**

11               **injury to prove its Lanham Act claim.**

12         To prevail on a Lanham Act claim for false advertising, SPI must prove *both*

13   that it was actually injured *and* that the injury it suffered was directly attributable to

14   the challenged claims. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d

15   197, 210 (9th Cir. 1989). That means that SPI bears the burden of proving that the

16   challenged claims directly caused SPI to suffer economic losses. To do so, SPI must

17   introduce evidence that FIGS' allegedly misleading or false advertisements led

18   consumers who otherwise would have purchased an SPI product to buy a FIGS

19   product instead. Because SPI failed to do so, the Court should grant FIGS judgment

20   as a matter of law.

21

22

23

24

25

—————————

26   [5] In addition, under IIPER's two-year limitations period, no reasonable jury could
find Defendants liable based on Exhibit 104 or Exhibit 2233 because the documents
27   included, respectively, customer information from September 2015 and June/July
2016. *See* Hu Decl., Exs. C & D.
28

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)

1. **SPI was required to introduce sufficient actual evidence of causation and cannot rely on a speculative chain of inferences.**

Contrary to SPI's assertions to this Court, SPI cannot simply rely on a "chain of inferences" to prove causation. *See* Dkt. 833 at 57, 60. The Ninth Circuit's decision in *Harper House* expressly *rejects* such speculation, stating that "actual evidence of some injury *resulting from the deception* is an essential element of the plaintiff's case." 889 F.2d at 210 (emphasis in original). SPI cannot point to a series of attenuated inferences or the bare fact that SPI and FIGS are both companies in the healthcare apparel industry; that would render proof of causation no hurdle at all. SPI instead was required to produce *actual evidence* of past consumer behavior showing that sales were in fact diverted from SPI to FIGS on account of the challenged claims. Common business sense supports this requirement, because an "injury to a competitor may be a small fraction of the defendant's sales, profits, or advertising expenses." *Id.* at 209 n.8; *see also id.* (noting difficulties of establishing causation "when advertising does not directly compare defendant's and plaintiff's products, when numerous competitors participate in a market, or when the products are aimed at different market segments"). Requiring a plaintiff to specifically identify losses caused by the defendant's conduct is therefore necessary to prevent that plaintiff from "enjoy[ing] a windfall from a speculative award of damages simply by being a competitor in the same market" as the defendant. *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2020 WL 4747724, at *10 (S.D. Cal. Aug. 17, 2020).

SPI previously cited two cases in support of its argument: *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011) and *Grasshopper House, LLC v. Clean & Sober Media LLC*, 2019 WL 12074086 (C.D. Cal. July 1, 2019). Both cases miss the mark. *TrafficSchool*'s reference to a "chain of inferences" was specific to Article III standing. *TrafficSchool*, 653 F.3d at 825. Where *TrafficSchool* did discuss Lanham Act damages, it echoed *Harper House*'s instruction that non-

-10-

comparative advertising injury must be limited to purely compensatory damages supported by *actual evidence* that the plaintiff was harmed. *Id.* at 831 (quoting *Harper House*, 889 F.2d at 209 n.8). *Grasshopper House* discussed the need for *actual evidence* directly supporting a causal connection between the specific challenged representations and specific harm suffered by the allegedly injured party. 2019 WL 12074086 at *8 (determining such concrete evidence would then "support an inference" of injury). The court did *not* infer injury and causation from the mere fact that the plaintiff and defendant competed in the same market. In fact, the court granted summary judgment to the counterclaim defendants on a different counterclaim because of a lack of evidence showing "the cause or effect of these visitors [to the counter claim defendant's website] to [counterclaim plaintiff's] business." *Id.*

TrafficSchool and *Grasshopper House* did not disturb—nor could they disturb—settled Ninth Circuit law requiring a Lanham Act plaintiff to provide affirmative evidence that it suffered economic losses that were the direct result of the defendant's challenged actions.

**2.      SPI failed to provide a legally sufficient evidentiary basis for a reasonable juror to find a causal link between the challenged claims and any actual injury.**

SPI has not introduced any evidence showing whether and *how* SPI was injured *because of* the alleged deception of the challenged claims specifically. The volume of admitted evidence, which largely consists of internal emails and the like, do not establish causation. At most, SPI has offered the testimony of Dr. Gregory Bell in an attempt to prove injury and causation, but his testimony fails to give a reasonable jury the legally sufficient evidentiary basis to find for SPI that it suffered injury "*resulting from the deception*" of the challenged claims, *Harper House*, 889 F.2d at 210 (emphasis in original).

Dr. Bell admitted that he simply *assumed* that each of the challenged claims was "false and misleading," had been "put forth from 2014 through 2021," and that they were "ubiquitous" in association with FIGS' products. Hu Decl., Ex. P at 143:13–144:4. Dr. Bell admitted that his entire causation theory was "all based on Professor Simonson's survey," Hu Decl., Ex. Q at 14:12–13 (October 26, 2022 PM Transcript), and Dr. Bell chose not to rely on any survey other than Professor Simonson's. *Id.* at 14:12–13, 37:13–38:5. Dr. Bell never saw surveys of actual FIGS or SPI customers, focused only on Dr. Simonson's limited hypothetical comparison of several SPI Cherokee products to FIGS products, and never analyzed any other SPI brand. *Id.* at 46:4–11, 48:5–18. SPI merely gave Dr. Bell the Simonson survey and then told him to *assume everything else about injury and causation* so that Dr. Bell could then *quantify* damages.

Dr. Simonson's survey does not provide a sufficient basis for Dr. Bell to opine on whether the challenged claims *in fact* caused SPI's alleged injury. Dr. Simonson's survey asked about hypothetical comparisons between FIGS and SPI. Hu Decl., Ex. B at 303:1–305:10, 307:13–19. Dr. Simonson did not rely on any "real-world advertisements for FIGS that contained any challenge[d] statement." *Id.* 315:18–25. Dr. Simonson did not get any feedback from consumers from any time before this lawsuit was filed, did not speak to any actual healthcare professionals, and did not analyze "how many actual consumers of scrubs actually saw the challenge[d] claims in the real world." *Id.* 329:12–24. Dr. Simonson refused to credit the tens of thousands of actual responses given by FIGS customers as to why they chose FIGS, which overwhelmingly focused on attributes other than the challenged claims. *Id.* 326:17–19. Dr. Simonson therefore could not testify to whether any consumer *actually* chose FIGS over SPI because of the challenged claims. And Dr. Bell could not in turn rely on Dr. Simonson's survey to establish injury or causation.

1    Plainly missing from Dr. Bell's testimony is any un-assumed testimony

2  drawing an actual causal link for the jury from the challenged claims to harm to SPI.

3  Spoon-fed assumptions from SPI's counsel to Dr. Bell that the challenged claims

4  were false, material, and ubiquitous cannot substitute for "actual evidence" of the

5  injury resulting from the alleged deception. Dr. Bell admitted as much: The *only*

6  way for the jury to adopt Dr. Bell's opinion is if the jury agrees that, between 2014

7  and 2021, "95 percent of FIGS purchasers saw the challenged claims." Hu Decl.,

8  Ex. Q at 53:9–13. But there is *no* evidence that the assumed "fact" is true. Dr. Bell

9  never saw a survey to support that 95 percent figure, and SPI has introduced no

10 evidence that *95% of FIGS purchasers* saw the sparse social media posts or web

11 pages it contends are FIGS' advertising. Nor did Dr. Bell himself analyze whether

12 FIGS' sales came from "word of mouth," "product videos," or the "hand feel of its

13 products." *Id.* 77:9–17.

14    Dr. Bell also failed to rule out other potential causes for any (never-specified)

15 injury SPI claims to have suffered: Dr. Bell never analyzed the amount of sales SPI

16 lost to other brands through the AllHeart website; never analyzed the amount of

17 sales SPI lost to the Jaanuu scrubs company or other scrubs companies; and never

18 analyzed the amount of sales SPI lost due to the failure—captured in numerous

19 documents from SPI—to implement a direct-to-consumer website until 2018. *Id.*

20 66:9–13, 67:12–18, 67:19–68:1, 70:19–22. And Dr. Bell never analyzed whether

21 any sales allegedly lost by SPI were "offset by an increase in the overall scrubs

22 market." *Id.* 77:18–22. In sum, nothing from Dr. Bell's testimony provided actual

23 evidence of injury or causation. Instead, Dr. Bell merely *quantified* assumptions of

24 injury and causation given to him by SPI's counsel. The jury may not assume injury

25 or causation, and SPI introduced no evidence to fill the gaping evidentiary holes in

26 Dr. Bell's testimony. No reasonable juror is permitted to simply *assume* injury and

27 causation to find for SPI. Any jury award based on the evidence in this case would

28 be a "windfall" to SPI. *Quidel*, 2020 WL 4747724, at *10.

Injury is an element of proof distinct from the obligation to quantify damages. Dr. Bell testified only to the latter. Because Dr. Bell was instructed to *assume* injury and causation, he did not—and could not—establish the factual proof the Ninth Circuit requires. That absence of proof entitles FIGS to judgment as a matter of law.

### C.     SPI has failed to introduce any evidence that the One-for-One, On Contact, and Liquid Repellency Claims are literally false or misleading.

At a minimum, the Court should grant judgment as a matter of law to Defendants on the One-for-One, On Contact, and Liquid Repellency Claims, because SPI has failed to introduce sufficient evidence that each of the challenged claims was either literally false or "true but misleading"—a required element of SPI's Lanham Act claim. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008).

#### 1.     No reasonable jury could find that FIGS' One-for-One Claim is false or misleading.

"The standard for proving literal falsity is rigorous." *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 WL 572290, at *5 (N.D. Cal. Feb. 11, 2014) (citing *Buetow v. A.L.S. Enters.*, 650 F.3d 1178, 1185 (8th Cir. 2011)). To satisfy this exacting standard, the plaintiff bears the burden of affirmatively introducing evidence that proves that the challenged claim is literally false. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62–63 (2d Cir. 1992)). SPI has failed to produce any evidence or testimony at all that would permit a reasonable jury to find that FIGS did not, in fact, donate one set of scrubs for every set sold, and the Court should grant judgment as a matter of law to FIGS.

During SPI's case-in-chief, the following evidence was presented about FIGS' One-for-One Claim:

- FIGS has sponsored numerous giving trips to resource-poor areas and given away hundreds of thousands of scrubs from 2013 to approximately late 2017, when it transitioned away from a one-for-one donation program to a more holistic giving effort. Hu Decl., Ex. F at 133:19–138:10 (Oct. 20, 2022 Transcript), Hu Decl., Ex. G at 75:1–4 (Oct. 25, 2022 AM Transcript); Hu Decl., Ex. H (EX-3032).

- FIGS donated 610,000 sets of scrubs between 2013 and 2019. Hu Decl., Ex. R (Run Sheet of Devon Duff Gago, Vol. I at 313:7–25; 314:11–23); Hu Decl., Ex. I (EX-158). Of these, more than 400,000 sets were donated through the end of 2017, which substantially *exceeds* the total number of sets of scrubs sold from 2014 to 2017. Hu Decl., Ex R at 403:9–15; Hu Decl., Ex. J (EX-3348).

- FIGS removed all references to "one-for-one" giving in connection with its broader Threads for Threads program after it transitioned away from the program, with the exception of a few isolated and inadvertent references made on stray documents such as invoices sent after January 2018, but, even still, it continued to donate a significant volume of scrubs in 2018 and beyond (in addition to substantial philanthropic giving beyond scrubs donations). Hu Decl., Ex. F at 193:17–194:7; Hu Decl., Ex. K at 242:14–242:25 (Oct. 24, 2022 Transcript); Hu Decl., Ex. L (EX-129); Hu Decl., Ex. M (EX-497); Hu Decl., Ex. N (EX-593); Hu Decl., Ex. R at 399:11–400:11.

- While FIGS comprehensively revised its Thread for Threads messaging in late 2017 to remove references to the one-for-one model, FIGS did not send out a specific press release "announcing" it decision to move away from a one-for-one model. Hu Decl., Ex. B at 243:1–13.

Neither this evidence nor the additional stray references to FIGS' charitable giving in other testimony would allow a reasonable juror to find that FIGS falsely

-15-

advertised the One-for-One Claim. Indeed, the evidence establishes exactly the opposite—namely, that the claim is *literally true and not misleading*.

Notwithstanding that evidence, SPI apparently wants to argue to the jury that (i) consumers were misled into believing that FIGS continued to donate one set for every set sold simply because its giving program is called "Threads for Threads" and (ii) that this "claim" was false or misleading because the company stopped donating one-for-one in beginning in 2018. But here, too, judgment as a matter of law is required because if SPI intends to make the argument to the jury, the law requires SPI to establish that consumers *actually* interpreted the phrase "Threads for Threads" to refer to one-for-one donations, and it has not even attempted to do that. *In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*, 882 F. Supp. 915, 923 (C.D. Cal. 1994) ("pertinent inquiry" for misleading claims is "whether the [claim] was likely to confuse its audience"). More specifically, SPI has introduced *no evidence* that *anyone*, much less FIGS' consumers, considered the nondescript slogan "Threads for Threads" to stand for the proposition that FIGS would donate one set of scrubs for every set sold. That is unsurprising. The phrase "threads for threads" communicates no specific claim at all, let alone that any donations would be done on a one-for-one basis. SPI's survey expert, Dr. Itamar Simonson, did not test whether consumers understood Threads for Threads in such a way, and SPI did not call a *single customer* to the stand to support SPI's fanciful interpretation. There is simply nothing in the record from which a reasonable juror could infer that consumers interpreted the phrase "Threads for Threads" to mean the One-for-One Claim, and thus, no evidence that the claim was either literally false or misleading. The Court should grant judgment as a matter of law to FIGS.

## 2.   No reasonable jury could find that the On Contact Claim is literally false or misleading.

SPI has likewise failed to introduce any reliable evidence from which a reasonable jury could find the On Contact Claim to be false or misleading, and in

-16-

1  fact (as with the One-for-One claim), SPI has introduced affirmative evidence
2  establishing that the claim is *true*.

3      First, there is no expert evidence that would support even an inference that the
4  On Contact Claim is literally false. At trial, SPI offered the testimony of Dr. Peter
5  Hauser, ostensibly to prove that Silvadur, the antimicrobial technology FIGS applies
6  to its scrubs, does not kill bacteria on contact. Dr. Hauser's testimony in no way
7  supports that position. First, Dr. Hauser simply is not qualified to opine on whether
8  Silvadur does or does not kill bacteria immediately on contact. By his own
9  admission, Dr. Hauser is a chemist (not a biologist) who has never studied cell
10 death; he did not consult any academic research or literature describing the
11 processes by which antimicrobial treatments like Silvadur kill bacteria; he has never
12 worked with bacteria before; and he cannot even describe the differences between a
13 fungus and a bacteria—two entirely different microorganisms. Hu Decl., Ex. S
14 128:11–16 (Oct. 25, 2022 Final P.M. Transcript). Dr. Hauser also did not bother to
15 familiarize himself with Silvadur, FIGS' antimicrobial treatment, and its product
16 description. Hu Decl., Ex. P at 22:24–25:17. Notwithstanding his complete lack of
17 familiarity with antimicrobial processes, cell death, and even Silvadur itself, Dr.
18 Hauser purported to offer an opinion on whether the On Contact Claim—a claim
19 about *the immediacy of cell death*—was false. No reasonable juror could credit Dr.
20 Hauser's opinion. In the absence of a reliable, informed opinion from a qualified
21 expert that contradicts Silvadur's *own* descriptions of its method of action, no
22 reasonable jury could find that the On Contact Claim was literally false.

23     In any event, even assuming that a reasonable jury could find that Dr. Hauser
24 and the five-second tests EMSL (the lab with whom he worked) conducted were
25 capable of evaluating immediate bacterial kill (and it could not), that evidence only
26 *confirms* that Silvadur kills bacteria immediately on contact. As Dr. Hauser testified
27 at trial, he modified the industry-standard 24-hour antimicrobial test for five seconds
28 because he believed it to be "probably the best way . . . to check if the fabric was

-17-

1 truly antimicrobial and killed . . . bacteria and infection within contact in that five-

2 second period." Hu Decl., Ex. G 125:18–25. He believed that if FIGS' scrubs truly

3 killed bacteria and infection immediately on contact, "there would be *much less*

4 bacteria than what was applied." *Id.* (emphasis added). And that is exactly what the

5 jurors saw.

6        On cross-examination, Dr. Hauser acknowledged that EMSL's tests showed

7 reductions of up to approximately 70% of bacteria *within the first five seconds*. Hu

8 Decl., Ex. G 142:7–10 (Oct. 25, 2022 A.M. Final Transcript); EX-715 (showing

9 reductions between 55.2% and 69.7% for *B. cereus*). Other tests showed reductions

10 of 15–30%, again in the first five seconds. Hu Decl., Ex. U at 6 (EX-700) (*P.*

11 *aeruginosa*); *id.*, Ex. W at 6 (EX-713) (*S. enterica*); *id.*, Ex. X at 6 (EX-716) (*S.*

12 *maltophilia*); Ex. Y at 6 (EX-717) (*E. faecalis*). These reductions corresponded to

13 hundreds of thousands, and in some instances, *millions* of cells being killed on

14 FIGS' treated scrubs compared to the untreated control *within the first five seconds*.

15 Hu Decl., Ex. U at 6 (EX-700) (*P. aeruginosa*); *id.*, Ex. W at 6 (EX-713) (*S.*

16 *enterica*); *id.*, Ex. X at 6 (EX-716) (*S. maltophilia*); Ex. Y at 6 (EX-717) (*E.*

17 *faecalis*). In short, *all* of the evidence SPI has presented in its case-in-chief shows

18 that FIGS' scrubs *do*, in fact, kill bacteria and infection immediately on contact.[6]

19 Faced with this evidence, no reasonable juror could conclude otherwise and SPI

20 cannot meet its burden to prove that the On Contact Claim is literally false.

21

22 _____

23 [6] Dr. Hauser's opinion that these results (which undeniably show substantial bacteria kill in the first five seconds) do not support FIGS' On Contact Claim appears to be

24 based on his subjective belief that the number should be closer to 90-100%. Hu Decl., Ex. G 134:3–6. But as he admitted on cross-examination (and as all of the

25 admitted evidence reflects), FIGS did not advertise that its scrubs kill "100%" of all bacteria and infection immediately on contact or even "all" bacteria and infection

26 immediately on contact. FIGS stated instead that its scrubs kill "bacteria and

27 infection immediately on contact"—a statement EMSL's tests indisputably have

28 proven to be true.

Indeed, SPI has known for years that the On Contact Claim is *true*, because it made the *same claim*. In a press release dated May 11, 2015, SPI (quoting Michael Singer, SPI's then-CEO) announced that its Silvadur-treated scrubs "will help reduce, inhibit and minimize the growth of bacteria on garments, contributing to peace of mind for healthcare workers." Hu Decl., Ex. T (EX-2018). The press release further asserted that "[w]hen the undesirable bacteria *come into contact with* CERTAINTY-treated fabrics, *the growth of the bacteria is disrupted and the bacteria are continually reduced*." *Id.* (emphasis added); *see also* Hu Decl., Ex. A at 49:22–23 (Q: When life is disrupted, that means someone dies, right? A: Yes, it can be . . . .). Nor was that the only instance when SPI touted the protective qualities of the exact same antimicrobial treatment FIGS uses for its scrubs. In a video released online describing its new Certainty technology, SPI advertised that its Silvadur treated scrubs "turns ordinary scrubs into a protective shield against unwanted bacteria on fabric." Hu Decl., Ex. O (EX-3112). The same advertising video later asserts that SPI's Silvadur-treated scrubs include "silver ions that . . . reduce and minimize bacteria on the garments. Certainty inhibits the growth of these unwanted bacteria on the fabric." *Id.* That statement was accompanied by a *visual animation of bacteria being eliminated immediately on contact*. *Id.* at 1:50–1:55. And Mr. Singer testified on cross-examination that those statements were *true*. Hu Decl., Ex. A at 53:1–5 ("Q: Information unavailable. It's not true. There was information available on YouTube about SPI's antimicrobial technology, right? A: Actually there was information on Certainty antimicrobial technology, but there were no false claims.").

Nor could a reasonable jury find that SPI has shown that the On Contact Claim, though literally true, "misled, confused, or deceived the consuming public," as would be required to prevail on a Lanham Act claim. *Southland Sod Farms*, 108 F.3d at 1140 (9th Cir. 1997). "Typically," plaintiffs prove that a literally true advertising was nonetheless misleading (and thus actionable under the Lanham Act)

by presenting consumer surveys that show that consumers found the advertisement misleading or confusing. *Id.* Here, SPI has failed to present *any* consumer surveys about how consumers interpreted the On Contact Claim, let alone surveys that suggest that consumers were misled or confused by FIGS' statement into believing that "100%" or "all" bacteria would be killed immediately on contact—words that appear nowhere in the claim. Indeed, SPI did not introduce *any* testimony from consumers *at all*, rendering it impossible to know if any consumers actually adopted the tortured interpretation of the claim that SPI proposes. SPI indeed does not even have a *common-sense* argument that reasonable jurors could interpret a claim that does not reference *any quantity of bacteria at all* to include a specific percentage or to refer to *all* bacteria. As the district court correctly observed in *Strategic Partners, Inc. v. Vestagen Protective Techs. Inc.*, 2016 WL 10611186 (C.D. Cal. Nov. 23, 2016), when SPI was defending against a claim of false advertising asserted against it for making a substantially similar claim, "a reasonable factfinder would not infer 'all bacteria' from 'bacteria,' especially in the context of an advertisement." *Id.* at *3.

Rare is the case that the plaintiff's *own evidence* disproves its theory of liability. And yet, that is precisely the circumstance here: SPI has introduced *affirmative evidence* that FIGS' scrubs consistently killed anywhere between hundreds of thousands to millions of bacteria cells across a wide range of bacteria within SPI's own arbitrarily chosen five-second tests, thereby proving that the claim is *literally true*. And although SPI's position undoubtedly will be (as it has been all along) that the On Contact Claim was nonetheless false or misleading because FIGS' scrubs did not kill *all* (that is, 100% or close to 100% of) bacteria from *all* of the different tested types of bacteria within the first five seconds, that argument is patently unsupported and no reasonable juror could accept it. That is because SPI has *no* evidence that consumers interpreted the *general* language of the On Contact Claim ("FIGS' scrubs kill bacteria and infection immediately on contact") to

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)

promise a *specific* result, *e.g.*, that FIGS' scrubs kill "100%" or "all bacteria of all types" immediately on contact. *Crowe v. Wiltel Commc'ns Sys.*, 103 F.3d 897, 899 (9th Cir. 1996) (judgment as a matter of law proper when there is "no legally sufficient evidentiary basis for a reasonable jury" to have found for the plaintiff on an element of his or her claim).

Without any studies or testimony disputing the On Contact Claim or any survey showing that the claim was misleading or confusing, no reasonable jury could find that the On Contact Claim is false or misleading under the Lanham Act. *See Chung v. City of L.A.*, 587 F. App'x 428, 429 (9th Cir. Dec. 12, 2014) (affirming grant of judgment as a matter of law where the plaintiff "presented no evidence that Defendants failed to apply [the standard] level of care); *Cassells v. Mehta*, 2007 WL 2390392, at *7 (E.D. Cal. Aug. 20, 2007) ("There is no evidence about who is responsible for filing and distributing these records. On this evidence, no reasonable jury could find that [the defendant] was the responsible individual."). FIGS is therefore entitled to judgment as a matter of law with respect to the On Contact Claim.

### 3. No reasonable jury could find that FIGS' Liquid Repellency Claim is false or misleading.

FIGS is also entitled to judgment as a matter of law on the Liquid Repellency Claim because no reasonable juror could find the claim either literally false or misleading. At the outset, only unambiguous claims can be literally false *as a matter of law*. Claims that are subject to more than one reasonable interpretation can never be literally false. *See, e.g.*, *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2019 WL 5320390, at *4 (S.D. Cal. Oct. 21, 2019) ("An advertisement is not literally false if consumers need extrinsic information, assumptions, or inferences to reach the false conclusion." (internal citation marks omitted)); *Kwan Software Eng'g*, 2014 WL 572290, at *5 ("To be 'literally false' the statement must be unambiguously false.");

1  *In re Century 21-RE/MAX Real Estate Advertis. Claims Litig.*, 882 F.Supp. at 923

2  (ambiguous statements cannot be literally false).

3       Here, SPI's *own* expert in liquid repellency, Dr. Hauser, has *already* testified

4  that the term "liquid repellant" is, in his own words, "inherently ambiguous." Hu

5  Decl., Ex. P at 33:22-25. That is because "liquid repellant" can refer to any number

6  of different liquids, such as coffee, diet coke, or apple juice, *id.* 34:1–10, and

7  because there is no pass/fail test for "liquid repellency" but rather a subjective

8  interpretation that consumers and manufacturers reach as to whether a particular

9  product does or does not qualify as such, *see supra*—rendering it precisely the sort

10  of ambiguous term that courts have regularly rejected as insufficient to support a

11  claim of literal falsity under the Lanham Act *as a matter of law*. A reasonable jury

12  could not decide the issue differently. *See Omega Env'l, Inc. v. Gilbarco, Inc.*, 127

13  F.3d 1157, 1160 (9th Cir. 1997) ("[A] reasonable jury is presumed to know and

14  understand the law . . . ." (quoting *Brooke Grp. Ltd. v. Brown & Williamson*

15  *Tobacco Corp.*, 509 U.S. 209, 243 (1993)).

16       Nor could a reasonable jury find that the claim was misleading based on the

17  evidence admitted in SPI's case-in-chief. Dr. Hauser opined that FIGS' scrubs were

18  *not* liquid repellant because they did not repel blood or oil, but he *admitted* that he

19  never saw FIGS describe its scrubs as being either blood repellant *or*

20  oil/hydrocarbon-repellant, and had only seen advertisements from FIGS that

21  describe its products as repelling *water*. Hu Decl., Ex. P at 35:1–11. The evidence in

22  the record is consistent with Dr. Hauser's testimony in that respect: there is no

23  advertisement, social media post, or even a single communication with a customer

24  admitted into evidence that describes FIGS' scrubs as oil or blood repellant. And

25  SPI introduced no evidence—whether through consumer survey evidence or

26  otherwise—that FIGS' customers would have interpreted the ambiguous term

27  "liquid repellent" to mean, specifically, blood repellant *or* liquid repellant. Yet,

28  undeterred, Dr. Hauser incredibly stated that he tested FIGS' scrubs for blood

-22-

repellency because "from advertisements, . . . from commercials and things on TV, I see a lot of blood when healthcare workers work in – especially emergency-type situations," and he offered no explanation at all for his decision to test for oil repellency. *Id.* at 37:13–25. Just as remarkable, Dr. Hauser conducted his blood repellency test of FIGS' scrubs using a test made for *personal protective equipment*, which, *unlike* FIGS scrubs, is "special clothing that's worn in situations where healthcare providers would be expected to have extensive" and "continuous" "contact with blood." *Id.* at 35:20–36:6, 36:7–13.

Dr. Hauser's blood and oil repellency results are meaningless. No reasonable juror could find that these test results—which tested two liquids FIGS never mentioned in its advertisements and which there is no evidence customers ever understood the Liquid Repellency Claim to encompass—show that the claim is misleading. That is especially true when one considers the fact that Dr. Hauser *did not test* FIGS' FIONlite or FREEx scrubs (which are marketed as water repellent), *id.* at 52:8–13, but instead tested exclusively FIGS' FIONx scrubs from 2022, which are *not even advertised as liquid repellant*.[7] *Id.* at 45:16–18. Making matters worse for SPI, Dr. Hauser admitted that "[t]here is no such thing as a pass or a fail on the AATCC TM 22 test," *id.* at 40:10–12, and that FIGS' scrubs from 2015 scored straight 70s on the TM-22, which would be "acceptable" if that was the level of repellency FIGS and its customers desired. *Id.* at 40:20–23, 51:23–52:7. It should go without saying that water, of course, is a type of liquid, and that these water repellency results do not support the notion that consumers were actually misled. The Court should grant FIGS judgment as a matter of law on this claim as well.

---

[7] It is thus irrelevant that FIGS' 2022 FIONx scrubs scored a 0 on the liquid repellency tests.

DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)

## III.   <u>CONCLUSION</u>

For the forgoing reasons, the Court should grant judgment as a matter of law to all Defendants with respect to SPI's IIPER claim and to FIGS with respect to SPI's Lanham Act claims.

DATED:  October 28, 2022            MUNGER, TOLLES & OLSON, LLP


                                    By:   ___/s/ Jacob S. Kreilkamp___
                                              Jacob S. Kreilkamp
                                          Attorneys for Defendants


DATED:  October 28, 2022            BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.



                                    By:   ___/s/ Ekwan E. Rhow___
                                              Ekwan E. Rhow
                                          Attorneys for Defendants