# EXHIBIT C

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1                 UNITED STATES DISTRICT COURT
 2                CENTRAL DISTRICT OF CALIFORNIA
 3
 4     STRATEGIC PARTNERS,       )
 5     INC.,                     )
 6          Plaintiff,           )
 7          vs.                  ) Case No.
 8     FIGS, INC., CATHERINE     ) 2:19-cv-02286-JWH-KS
 9     (TRINA) SPEAR, HEATHER    )
10     HASSON,                   )
11          Defendants.          )
       --------------------------)
12         HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
13                          - - -
14                   Thursday, July 22, 2021
15                          - - -
16
17         Videotaped Remote Deposition of LARS JOHANSSON,
18     beginning at 7:58 a.m., before Nancy J. Martin, a
19     Registered Merit Reporter, Certified Shorthand
20     Reporter.  All parties appeared remotely.
21
22
23
24
25
```

Page 1

HIGHLY CONFIDENTIAL-ATTORNEYS EYES ONLY

21                LARS JOHANSSON,

22      having been first duly sworn/affirmed,

23      was examined and testified as follows:

```
 5         Q.   So New Mountain Capital had a relationship

 6    with SPI; correct?

 7         A.   Correct.

 8         Q.   And can you define the terms of the

 9    relationship between New Mountain Capital and SPI?

10         A.   We were the control shareholder of the

11    company.

12         Q.   And you were the control shareholder of the

13    company for what time period?

14         A.   From approximately -- 2016, I believe,

15    through the early part of 2021.
```

Page 14

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

17     Q.   Why did New Mountain Capital ultimately
18  decide to proceed with the investment in SPI?

22     A.   We felt the industry was a good industry with
23  good growth opportunities, and that the company was a
24  strong company within the space and that we could make
25  an attractive financial return by investing in the

1   company.

10   Q. And when you say, "a good financial return by
11   investing behind the company," what do you mean by
12   that?
13   A. We generally target doubling our money for
14   our investors over a four- to six-year period of time.
15   Q. And ultimately, you realized your investment
16   with SPI; correct?
17   A. Correct.
18   Q. And so that would mean you -- you met your
19   target of doubling your money for your investors.
20       Is that fair to say?
21   A. In the case of SPI, yes.

```
4        Q.  So as of 2016, SPI was pretty much the market
5   leader in the medical apparel domestically; correct?
6        A.  That's how they viewed themselves, yes.
7        Q.  Do you disagree with that statement?
8        A.  No.
```

Page 21

```
 7        Q.   And you mentioned earlier today that your
 8   investment in SPI grew at least 2X over the course of
 9   your investment relationship; correct?
10        A.   Correct.
11        Q.   And that growth was through revenue and
12   earnings for SPI; correct?
13        A.   Yeah.  Revenue growth, earnings growth, and
14   through cash generation over the period of time we
15   owned the company, correct.
16        Q.   And that period was 2016 to 2021; correct?
17        A.   Correct.
```

Page 61

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

```
16          You have no knowledge one way or another that
17     the claims attributed to FIGS in this lawsuit actually
18     influenced consumer behavior; correct?


21              THE WITNESS:  I'm not aware of any specific
22     examples.
23     BY MS. CHERLOW:
24         Q.  When you mentioned that FIGS was a competitor
25     and that, of course, it "would have an impact on the
```

Page 79

```
1    SPI business, as all our competitors did"; correct?
2        A.   Correct.
3        Q.   Would you say that the impact of FIGS was
4    equal to SPI's other competitors?



7             THE WITNESS:  I couldn't quantify the
8    relative impact of FIGS versus any other individual
9    competitor.
```

Page 80

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
17            MS. CHERLOW:  I'll mark as exhibit next in
18    order Exhibit 560.
19            (Deposition Exhibit 560 was marked for
20            identification.)
21            MS. CHERLOW:  An E-mail from Lisa Hatfield
22    dated 8-21-2008 to a number of people, including
23    yourself.  Subject line, "Finalized Board deck with
24    Silvert's Updated slides," attaching a number of PDFs.
```

Page 137

```
 8          Q.  Let's see.  Go to Page 5 of the document.
 9     It's the "Executive Overview" again.  Subheader
10     "Challenges/Risks since last meeting."  We looked at a
11     similar page prior; right?
12          A.  Yes.
13          Q.  And again on this page there's a bullet point
14     for what FIGS is doing in the marketplace; correct?
15          A.  Correct.
16          Q.  And it states, "Figs is blitzing the market
17     in a variety of ways."
18              It goes on to note a public relations blitz
19     on television and in publications.
20              "Sending free try-on scrubs to offices and
21     send back the rest
22              "Direct mail, postcards and catalog send to
23     affluent areas" and
24              "On Amazon as a third party seller."
25              Do you see that?
```

Page 140

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1   A.   I see that, yes.

2   Q.   None of these activities that FIGS is noted

3   to be participating in relates to the claims

4   challenged in the lawsuit; correct?


7              THE WITNESS:  Not that I'm aware of.

```
 8        Q.   And in your recollection, SPI was continuing
 9   to grow as of October 2019; correct?
10        A.   Correct.
```

Page 165

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

CERTIFICATE

I do hereby certify that the aforesaid testimony was taken before me, pursuant to notice, at the time and place indicated; that said deponent was by me duly sworn to tell the truth, the whole truth, and nothing but the truth; that the testimony of said deponent was correctly recorded in machine shorthand by me and thereafter transcribed under my supervision with computer-aided transcription; that the deposition is a true and correct record of the testimony given by the witness; and that I am neither of counsel nor kin to any party in said action, nor interested in the outcome thereof.

*[signature]*

Nancy J. Martin, RMR, CSR

Dated: July 26, 2021

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying shorthand reporter.)