# EXHIBIT F

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3

 4      _____

 5      STRATEGIC PARTNERS, INC.,     )
                                      )
 6              Plaintiff,            )
                                      )
 7         vs.                        )  Case No. 2:19-cv-02286-JWH-KS
                                      )
 8      FIGS, INC., CATHERINE         )
        ("TRINA") SPEAR, HEATHER      )
 9      HASSON,                       )
                                      )
10              Defendants.           )
        _____)

11

12

13        ** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY **

14

15              REMOTE VIDEOTAPED DEPOSITION OF

16                    ROBERT PIERPOINT

17                 Thursday, July 22, 2021

18                       Volume I

19

20      Reported by:

21      NADIA NEWHART

22      CSR No. 8714

23      Job No. 4686132

24

25      PAGES 1 - 176

                                              Page 1
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

22          I will swear you in.  Please raise your right

23    hand.

24    ///

25    ///

Page 11

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1                ROBERT PIERPOINT,

2      having been first duly sworn, was examined and

3             testified as follows:

4

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



1

20        And are you still CFO today?                    10:21:05

21     A   I am COO and CFO today.

22     Q   Got it.  When did you get the COO title?

23     A   Oh, perhaps 10, 12 years ago.

24

                                                          10:21:30

                                                          Page 19

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



1

8     Q   I'm looking for SPI's market share in 2017.

9     A   Oh, approximately -- probably in the range of

10    30 plus percent.                                    10:37:00

11    Q   And do you know if in this time frame SPI had

12    the biggest share of the market out of all of its

13    competitors?

14

15    THE WITNESS:   I -- I think we would have the    10:37:21

16    largest share.

17    BY MS. WANG:

18

21    And to your knowledge, is SPI still -

22    does SPI still have the largest market share today

23    out of all of its competitors?

24    A   I think we do.

25    MS. WANG:   Okay.  So let me mark the next    10:38:00

Page 29

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY

1          exhibit.

2

9              (Exhibit 502 was marked for identification

10

25

Page 30

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

19          MS. WANG:  I have gone ahead and introduced

20     Exhibit 503, so just let me know if you see it and          11:13:47

21     then take a moment to -- to read it.

22          (Exhibit 503 was marked for identification

23          and is attached hereto.)

24

Page 42

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

15          So Exhibit 503 is an email chain with an          11:18:49

16     attachment, the top e-mail from Mr. Steve Davis

17     dated November 7th, 2017 and is to Mr. Singer, you,

18     yourself are copied and some others from New

19     Mountain Capital.

20

Page 43

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1



18        So let us scroll down to the

19   underlined subheading "How Sleepy are We?"

20        Do you see that?                    11:29:47

21   A   I do.

22   Q   And the first sentence says (as read):

23        "While we may seem sleepy to Jaanuu

24        and Figs, we do not 'sell direct'

25        because we do not want to compete    11:29:59

Page 50

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

```
 1          with our retailers."

 2          Do you see that?

 3      A   I do.

 4      Q   So my question is, you know, from your

 5  experience at SPI, was SPI reluctant to go to a sell    11:30:11

 6  direct model because of the possible impact on its

 7  retailers?

 8      A   Yes.

 9
```

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

1

10          MS. WANG:  Okay.  Let me introduce the next        11:35:11

11     exhibit.

12          (Exhibit 504 was marked for identification

13           and is attached hereto.)

14

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1



```
 5        Q    What is your understanding of the basis of     11:47:52

 6    that statement, then, that consumers found SPI's

 7    website antiquated and frustrating?

 8        A    They were brand websites, and you could -- as

 9    a consumer, you could not purchase on those

10    websites.                                                11:48:11
```

11

11:49:01

Page 61

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

11:57:31

6          (Exhibit 505 was marked for identification

7       and is attached hereto.)

8

25

Page 67

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

17

18

24        Q   All right.  So this Exhibit 505, I'd like to

25     focus your attention to the middle of the first          12:02:17

Page 68

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    page, the email from Mike Singer to Lars Johansson,

2    January 27th, 2018 and you yourself and Matthew Lori

3    and Daniel Gestetner are copied.

4         Do you see that?

5       A   I do.                                    12:02:38

6
```

Page 69

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

25        Q    Do you agree with the assessment here that          12:08:44

                                                        Page 73

HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

1      Jaanuu and FIGS were so far ahead of SPI in terms of

2      web retailing?

3

5           THE WITNESS:  Yeah, I think both were ahead        12:09:02

6      of us at that time with direct-to-consumer sales.

7

Page 74

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

6              But were a lot of retailers of SPI,

7      to your knowledge, concerned that SPI's expansion

8      into the DTC space was take customers away from

9      those retailers?

10

11          THE WITNESS:  Yeah, I think it's natural for

12      retailers to have some of that concern.

13

Page 139

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

1

2      Q   Did SPI's valuation increase between 2016,

3   the New Mountain Capital deal and the Partners

4   Group's acquisition earlier this year?

5      A   It did.                                      03:50:39

6      Q   By how much, percentage wise --

7      A   So --

8      Q   -- or numbers?  Whatever -- whatever is

9   easier.

10     A   Yeah.  I don't recall the exact valuations,   03:51:00

11   and so I can't do the -- do the math.  They -- they

12   did a little -- they did a little bit better than

13   doubling their investments.

14

Page 162

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

17      Q    Okay.  Thank you.  So let's focus on the

18   period from 2012 to the present.  And feel free to

19   break down your answers by year if that's easier for

20   you.                                                    03:57:31

21          But how would you describe SPI's revenue

22   trends from 2012 to the present?  Have they gone up?

23   Have they decreased?  Have they remained relatively

24   stable?

25

Page 165

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

```
 1          THE WITNESS:  So overall, in those nine

 2     years, they're up.  It hasn't been a straight line,

 3     but we've had growth over those nine years.

 4     BY MS. WANG:

 5        Q   And over those nine years -- and again, break     03:58:06

 6     down the answer if you want -- has SPI gained market

 7     share?

 8        A   I think SPI has probably gained a little

 9     market share during that time frame.

10        Q   What -- what do you mean by a little?           03:58:30

11          Like 5 percent?  10 percent?

12

14          THE WITNESS:  I don't remember the data

15     points.  I don't -- you know, market share is           03:58:44

16     usually in the form of an estimate.  It's not an

17     exact science.  And I just don't remember what the

18     range was then.  And I'm -- and I'm not even a

19     hundred percent sure what to use as a range at the

20     moment, but I would think over the nine years, that     03:59:03

21     we've picked up some market share.

22     BY MS. WANG:

23        Q   Okay.  And we talked about revenue trends

24     earlier.  I have the same question about profit

25     trends since 2012.                                      03:59:21
```

Page 166

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

6         THE WITNESS:  So again, over those nine

7    years, profits are up, EBITDA or net income -- we

8    focus on EBITDA, but EBITDA is up over that time

9    frame.

10   BY MS. WANG:                                    03:59:44

11        Q   By roughly how much are they up over that

12   time frame?

13

14        THE WITNESS:  I'd have to look it up.

15   BY MS. WANG:                                    03:59:54

16        Q   Do you have a -- a best estimate?

17

18        THE WITNESS:  2012.  You know, with the --

19   but also you've got all the acquisitions in there.

20   Maybe with the acquisitions and everything, our     04:00:29

21   EBITDA has doubled or so in those nine years

22   roughly.

23

Page 167

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 171

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

1          I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby

3    certify:

4          That the foregoing proceedings were taken

5    before me at the time and place herein set forth;

6    that any witnesses in the foregoing proceedings,

7    prior to testifying, were administered an oath; that

8    a record of the proceedings was made by me using

9    machine shorthand which was thereafter transcribed

10   under my direction; that the foregoing transcript is

11   a true record of the testimony given.

12         Further, that if the foregoing pertains to the

13   original transcript of a deposition in a Federal

14   Case, before completion of the proceedings, review

15   of the transcript [ ] was [ ] was not requested.

16         I further certify that I am neither financially

17   interested in the action nor a relative or employee

18   of any attorney or any party to this action.

19         IN WITNESS WHEREOF, I have this date subscribed

20   my name.

21         Dated: July 26, 2021

22

23

24         NADIA NEWHART

25         CSR NO. 8714

                                        Page 172