# EXHIBIT 1

Signature Resolution

Suzanne Segal

Special Master

---o0o---

Strategic Partners, Inc.,      )
                               )
                               )
         Plaintiff,            )   Case No. 2:19-cv-02286
                               )
         vs.                   )
                               )
FIGS, et al.,                  )
                               )
         Defendants.           )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Monday, January 17, 2022

REPORTED BY:

MARY JACKSON

CSR 8688

(Appearing remotely)

67329

TRANSCRIPT OF PROCEEDINGS

January 17, 2022

1   administrator next Friday.
2           If we can't come to an agreement by then, I
3   think we'd want to move fairly quickly and sort of
4   getting to the heart of the dispute and really finishing
5   this process.
6           THE COURT:  All right.  Well, I'm optimistic
7   that Mr. Friedenberg is so motivated not to see me again
8   that he'll get it done.  I don't think it's necessary to
9   set a conference now.
10          What I'd suggest is if it appears that there
11  is a need for a conference, just reach out as soon as
12  you know that to my case administrator, and we will try
13  to get you a time that works for everybody.
14          MS. GOLDSTEIN:  Thank you so much, Your Honor.
15  Really appreciate it.
16          THE COURT:  All right.  With that, I think
17  you're excused, Mr. Friedenberg.
18          MR. FRIEDENBERG:  Thank you, Your Honor.
19          THE COURT:  Thank you.  On to the issues
20  between SPI and FIGS.
21          So who's going to speak on behalf of SPI on
22  that front?
23          MS. GOLDSTEIN:  So I believe Kevin Kim is
24  going to be speaking about the consumer survey issue,
25  Your Honor, and I'll be speaking about the disputes with

TRANSCRIPT OF PROCEEDINGS

January 17, 2022

1  respect to the reopened 30(b)(6) deposition.
2          MR. KIM:  Your Honor, correction.  As to the
3  consumer survey issue, Adam Korn will be speaking to
4  that.
5          As to the -- a new issue we've encountered,
6  which is sort of the direct to consumer document
7  production deadline, that is something I'd be speaking
8  to.
9          As far as FIGS's issues regarding dates to set
10 for SPI's 30(b)(6) deposition and production of
11 documents referenced in the prior 30(b)(6), the Mike
12 Singer deposition, that will be handled by Jennifer
13 Goldstein.
14         THE COURT:  All right.  I probably won't
15 remember all of that, so I'm just going to invite
16 whomever is speaking on the topic to speak first.
17         So seems like, Mr. Korn, you're up first on
18 the consumer survey.
19         MR. KORN:  Good afternoon, Your Honor.  My
20 name is Adam Korn on behalf of plaintiff SPI.
21         The issue here is that FIGS failed to comply
22 with Your Honor's November 8th, 2021, order requiring
23 FIGS to produce consumer survey records from 2014 to
24 2021.  And FIGS's production was insufficient for four
25 reasons.

1        First reason is that FIGS's search terms were
2   inadequate.  FIGS ran its search terms over a narrow set
3   of search terms which FIGS unilaterally drafted and did
4   not meet and confer with SPI about, and they didn't
5   encompass all of SPI's requests that Your Honor required
6   FIGS to produce documents in response to in your
7   November 8th order.
8        Now, these search terms didn't require key
9   phrases that are claims in the litigation here like
10  "kills" or "bacteria" or "infection."  So they were
11  inadequate.
12            THE COURT:  How do you know that those are
13  relevant terms?
14            MR. KORN:  They're relevant terms, Your Honor,
15  because SPI is alleging here today that one of the false
16  claims that FIGS made is that its product kills bacteria
17  immediately on contact, reduces infections --
18  hospital-acquired infections by 66 percent.  These are
19  pivotal to our issues.
20            THE COURT:  I don't know about that.  I mean,
21  the purpose of the order was to require the production
22  of consumer surveys that FIGS had conducted over the
23  period of time.  And the manner in which and the way in
24  which they phrase their surveys are within FIGS's
25  understanding.  It's not necessarily going to adopt the

1  words that SPI thinks are the words that they would have
2  used.
3        I mean, I think, you know, you have a high
4  threshold to show that a party has failed to conduct an
5  adequate search when all you're looking for is their
6  consumer surveys.
7        So I guess I'm questioning whether, you know,
8  you really have good grounds here to question what
9  they've produced.
10        MR. KORN:  Your Honor, the problem is that
11  these terms are key phrases in the litigation, and
12  FIGS --
13        THE COURT:  And how do you know those terms
14  are incorporated in the consumer surveys?
15        MR. KORN:  We know they're not incorporated
16  because FIGS did not draft search terms using these
17  terms.
18        THE COURT:  No, that's not the question.  The
19  question is, okay, your evidence has got to be that
20  these -- that FIGS has conducted surveys of its
21  consumers to show that these factors that you've
22  identified are false, i.e. that it kills bacteria, are
23  important to their consumers, right?  That's how you
24  prove false advertising.
25        MR. KORN:  Right.

1        THE COURT:  They took a material term, and
2   they lied about it.  That's your burden.  But it doesn't
3   necessarily mean that they drafted a consumer survey
4   that matches your vocabulary.  That doesn't -- it
5   doesn't necessarily follow that way.  You have to have
6   something more than that for me to believe that they're
7   withholding evidence.
8        MR. KORN:  We wouldn't know without the search
9   terms.  And we saw the search terms --
10        THE COURT:  Yes, you would.  Yes, you would
11   know, because it would be based on what they had
12   produced.
13        MR. KORN:  Even assuming that FIGS's search
14   terms were adequate, which it's our contention that
15   they're not adequate, FIGS ran its search term across
16   these narrow search terms with limited custodians, less
17   than the custodians that Your Honor enumerated in your
18   order.
19        FIGS skipped out on two of those custodians.
20   And assuming it's okay that FIGS skipped out on two of
21   these custodians, assuming that these search terms were
22   adequate, these search terms yielded 4,748 total
23   documents.  FIGS only produced 43 of those documents to
24   SPI.
25        Your Honor, that's less than 1 percent of the

1  documents that were responsive to FIGS's search terms.

2  And FIGS categorically determined that none of these

3  documents, these 99 percent of documents, should be

4  produced because they're not responsive.

5       That, in itself, shows that FIGS didn't do a

6  diligent search and didn't produce documents that were

7  responsive to your order in which they were required to

8  produce documents.

9       And from its production, we know, based on

10 public documents, that FIGS withheld documents from SPI.

11            THE COURT: What specific public documents?

12            MR. KORN: In FIGS's S1, Form S1, filed with

13 the SEC, publicly available, FIGS conducted --

14 commissioned a Frost & Sullivan survey across 200 health

15 care professionals and asked these health care

16 professionals about their consumer preferences regarding

17 liquid repellant, antimicrobial qualities of scrubs.

18            FIGS did not initially produce that document

19 to SPI. Only after SPI pointed out to FIGS this

20 document wasn't produced, even though FIGS was required

21 to produce these documents in response to your order,

22 then FIGS produced these documents and still hasn't

23 shown us the underlying survey data that this survey is

24 based on.

25            The fact that FIGS has refused to produce

1   documents that are clearly relevant and clearly

2   encompassed under your order undermines the integrity of

3   FIGS's search, and it undermines -- it makes us further

4   question why FIGS has withheld 99 percent of these

5   documents.  Out of 4,748 documents, why they only

6   produced 43 of these documents.

7            THE COURT:  All right.  Thank you.  Who's

8   going to speak on behalf of FIGS?

9            MS. MCDERMOTT:  Your Honor, this is Sara

10  McDermott of Munger, Tolles & Olson.  I will be -- I

11  apologize that I don't have video right now.  My

12  computer crashed right at the beginning of the hearing,

13  and I'm still trying to bring it back up.  So if you'll

14  bear with me.

15           THE COURT:  I don't take it personally.

16           MS. MCDERMOTT:  Thank you.

17           So in the first place, Your Honor, we think

18  that this -- this dispute that SPI has raised is

19  premature because the parties have not had a chance to

20  brief it in front of Your Honor.

21           Frankly, we think that if Your Honor were

22  given the opportunity to take a look at the declaration

23  that FIGS served on SPI alongside the document

24  production, that you would be confident or assured that

25  we did an adequate search, that we searched the

1  produced that should have been produced, that's
2  persuasive.
3           Just offering your preference for certain
4  search terms over their selected search terms is not as
5  compelling.
6           MR. KORN:  I'll stay away from mentioning the
7  search terms moving forward.
8           THE COURT:  I'm just sharing with you.  I
9  mean, it's a rare case where somebody can prove an
10 intentional withholding of documents based upon a
11 preferred search term selection.  It happens, but it is
12 the exception.  It is more compelling when you have some
13 other kind of evidence that shows a failure to produce.
14          MR. KORN:  And we do have other sorts of
15 evidence, Your Honor.  For one, FIGS did not produce any
16 third party documents other than the Frost & Sullivan
17 survey after we asked for it and one-third party survey
18 for two weeks between February 21st and March 3rd of
19 2019.  The fact that this consumer survey --
20          THE COURT:  Let me stop you for just a second.
21 So when you're talking about third party documents, I
22 heard Ms. McDermott say that a fair number of these
23 emails had to do with surveys that were sent to them
24 from third parties that wouldn't have any meaning in
25 this case, okay.

```
1           So are you talking about a different kind of
2   third party document?
3           MR. KORN:  I'm talking about surveys that were
4   commissioned by third parties themselves on behalf of
5   FIGS.
6           THE COURT:  So what exactly are you talking
7   about?
8           MR. KORN:  After-purchase reports that were
9   commissioned by third parties for FIGS.  Documents that,
10  you know, look like that Frost & Sullivan survey which
11  FIGS didn't initially produce to us.
12          THE COURT:  So are you saying there are other
13  third parties like Frost & Sullivan that conducted
14  surveys on behalf of FIGS?  Is that what you're saying?
15          MR. KORN:  There might be, Your Honor, yes.
16  And the fact that there's only two weeks within the year
17  2019 in which these documents were produced, indicates
18  that there are likely other third party survey documents
19  that have also been omitted from the production.  Maybe
20  not necessarily withheld, but omitted from the
21  production.
22          THE COURT:  So "there might be "-- "there
23  might be" is not compelling grounds to bring a motion.
24  That's the kind of concern that's best addressed in a
25  meet and confer process.  If you have suspicions that
```

1  Ms. McDermott has not, you know, adequately represented

2  the record or that FIGS itself has not conducted an

3  adequate search, it's really well-addressed in the meet

4  and confer process where she can address all of your

5  concerns.

6         So I'm not saying that we won't set a briefing

7  schedule, but at the moment, everything that you've

8  provided me seems somewhat speculative and not

9  tremendously compelling.

10         MR. KORN: Your Honor, we've exchanged

11  multiple meet and confer letters at this point. We've

12  exchanged four letters all together, and we've tried to

13  meet and confer. And the declaration doesn't indicate

14  that FIGS has searched for these specific third party

15  documents.

16         THE COURT: I'm not -- well, finish what you

17  have to say, then I'll hear from Ms. McDermott. I'm not

18  convinced that there are meaningful third party

19  documents. I'm not interested, and you shouldn't be, I

20  guess, whether or not American Airlines submitted a

21  survey request to an email address at FIGS. That's not

22  going to be relevant to this case.

23         MR. KORN: Your Honor, even surveys

24  commissioned by FIGS itself, the fact that 2015 lacks

25  any of these survey records, that there's only three

1  production, that what she had in mind was the Delighted

2  data, the NPS data.

3           THE COURT:  All right.  And did she give a

4  date by which that began or...

5           MS. MCDERMOTT:  Yeah, so in her declaration

6  she stated that data began to be collected in February

7  of 2019.

8           THE COURT:  All right.  And you've provided

9  that declaration to Mr. Korn?

10          MS. MCDERMOTT:  Yes, Your Honor.

11          THE COURT:  Okay.  All right.  So let me go

12  back to Mr. Korn for a minute.

13          So, Mr. Korn, what's not truthful about what

14  Ms. Duff Gago, perhaps, is her name.  What is not

15  truthful about what she said?

16          MR. KORN:  How Ms. McDermott has characterized

17  Ms. Duff Gago's declaration is accurate.  And Ms. Duff

18  Gago, before she gave that declaration, actually was

19  deposed and said something a little bit different.  She

20  said that they conducted consumer surveys on a weekly

21  basis and then changed that testimony in the

22  declaration.

23          But for a -- this would be handled better by a

24  complete record so we can show you exactly what was said

25  previously and what is being said now.  And this is why

1  we're asking for an expedited briefing schedule on this
2  issue.
3         THE COURT:  You're entitled to bring briefs
4  that you think are appropriate.  You're entitled to
5  bring a motion.  But what you've shared with me thus far
6  is not compelling.
7         I am concerned because we are getting so far
8  down the road in this case.  I know one of my list of
9  questions to ask today is where are the dates in this
10  case, and where is the cutoff, and, you know, what do we
11  need to get done before you have to start preparing for
12  a pretrial conference.
13         And I'm a little concerned, given the history
14  of this case, Mr. Korn, that some of the -- I'm not
15  saying your motion in particular -- but some of the
16  discovery practice at this time, this much, is beginning
17  to suggest to me, you know, strategic purposes behind
18  the discovery that are not necessarily the discovery of
19  meaningful information for the case.
20         So I'm beginning to get that concern, and
21  that's why when someone suggests a motion that I'm not
22  seeing very clearly the grounds for it, it heightens
23  that concern for me.
24         So I -- you know, of course, you can bring any
25  motion you think is appropriate.  I'm just letting you

1  know that I'm concerned at this late date that we're

2  going to have that type of a situation unless you have

3  something really compelling.

4          MR. KORN:  Your Honor, the date at issue here

5  is February 3rd.  That's when the parties have agreed to

6  conduct the further deposition of FIGS's 30(b)(6)

7  witness.

8          We would like a proposed briefing schedule so

9  that SPI can submit its opening brief on this Friday or

10  Monday, a week from today, and then FIGS could respond

11  to that brief later that week, maybe Friday of next

12  week, have a brief hearing before FIGS's 30(b)(6)

13  deposition takes place.

14          THE COURT:  I'm going to ask that you do a

15  good faith meet and confer first with Ms. McDermott.

16  And think very long and hard as to whether or not you

17  have a reasonable basis in fact and law to bring such a

18  motion.  I just -- based on what you've shared with me,

19  it is not a compelling motion.

20          MR. KORN:  Understood.  Thank you.

21          THE COURT:  But, of course, you can bring any

22  motion that you wish to bring, and, you know, you should

23  on behalf of your client.  I'm just sharing with you

24  that I'm concerned.

25          MR. KORN:  We agree to meet and confer, and we

1  have no further argument at this point, Your Honor.

2  Thank you.

3             THE COURT:  What is the next issue to be

4  raised?

5             MR. KIM:  Your Honor, the next issue to be

6  raised here is the deadline that Your Honor set for

7  production of direct to consumer financial records in

8  Your Honor's January 5th order.

9             And, Your Honor -- just to jog Your Honor's

10 memory -- had ordered SPI to speak -- or our office to

11 speak to our clients and determine, you know, every

12 brand, all brands, for which the products were sold

13 direct to consumer and to produce financial figures on

14 those items as well.

15            And we have done so in terms of we've

16 communicated with our clients.  I had calls with members

17 of SPI who would have knowledge about these -- these --

18 this information, and it's taken a little bit of time

19 for us to meet the January 19th deadline, which is

20 upcoming, given sort of the holidays, given sort of the

21 year-end issues that arise with taxes that the same

22 department that would handle these numbers, you know,

23 would also handle.

24            And we sought a 9-day extension from FIGS, so

25 January 28th proposed deadline, which FIGS has indicated

TRANSCRIPT OF PROCEEDINGS

January 17, 2022

1  STATE OF CALIFORNIA          )

2  COUNTY OF SAN JOAQUIN        )

3

4      I, MARY JACKSON, duly authorized shorthand

5  reporter, do hereby certify:

6      That the foregoing transcript constitutes a true,

7  full and correct transcript of my shorthand notes taken

8  as such reporter of the proceedings herein and reduced

9  to typewriting under my supervision and control to the

10  best of my ability.

11

12

13

14           _____

15           MARY JACKSON

16           CSR No. 8688

17