Jacob S. Kreilkamp (State Bar No. 248210)
  jacob.kreilkamp@mto.com
Adam B. Weiss (State Bar No. 296381)
  adam.weiss@mto.com
Sara A. McDermott (State Bar No. 307564)
  sara.mcdermott@mto.com
James R. Salzmann (State Bar No. 324527)
  james.salzmann@mto.com
William M. Orr (State Bar No. 331842)
  william.orr@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Ekwan E. Rhow (State Bar No. 174604)
  erhow@birdmarella.com
Julia B. Cherlow (State Bar No. 290538)
  jcherlow@birdmarella.com
Fanxi Wang (State Bar No. 287584)
  fwang@birdmarella.com
Kate S. Shin (State Bar No. 279867)
  kshin@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

*Additional Counsel on Next Page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRATEGIC PARTNERS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>FIGS, INC., CATHERINE ("TRINA") SPEAR, HEATHER HASSON,<br><br>Defendants. | Case No. 2:19-cv-02286-JWH-KS<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S POST-TRIAL BRIEF ON EQUITABLE CLAIMS AND CAUSATION**<br><br>Judge:  Hon. John W. Holcomb<br>Date:    February 3, 2023<br>Time:    1:00 p.m.<br>Crtrm.:  9D |

1    *Additional Counsel*

2    Xiaonan April Hu (State Bar No. 321354)
         april.hu@mto.com
3    MUNGER, TOLLES & OLSON LLP
     601 Massachusetts Ave. NW, Suite 500E
4    Washington, D.C. 20001-5369
     Telephone:  (202) 220-1100
5    Facsimile:  (202) 220-2300

6    Sara H. Worth (State Bar No. 341088)
         sara.worth@mto.com
7    MUNGER, TOLLES & OLSON LLP
     350 South Grand Avenue, Fiftieth Floor
8    Los Angeles, California 90071-3426
     Telephone:  (213) 683-9100
9    Facsimile:  (213) 687-3702

10   Miri E. Gold (State Bar No. 319060)
         mgold@birdmarella.com
11   BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
     DROOKS, LINCENBERG & RHOW, P.C.
12   1875 Century Park East, 23rd Floor
     Los Angeles, California 90067-2561
13   Telephone:  (310) 201-2100
     Facsimile:  (310) 201-2110

14

15   Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>**TABLE OF CONTENTS**</u>

2

**Page(s)**

3

4  I.     INTRODUCTION .......................................................................................... 1

5  II.    ARGUMENT ................................................................................................. 2

6       A.    SPI has failed to establish causation and statutory standing for its UCL
              and FAL claims. ................................................................................... 2

7            1.    The jury found FIGS did not engage in false advertising. ......... 3

8            2.    SPI has failed to prove that FIGS' statements caused SPI to

9                  suffer an economic loss. ............................................................. 4

10      B.    SPI's equitable claims also fail on other grounds. ............................... 9

11           1.    Federal law preempts SPI's regulatory UCL claim. ................. 10

12           2.    Injunctive relief is unavailable for SPI's equitable claims. ....... 12

13  III.   CONCLUSION ........................................................................................... 15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY TO PLAINTIFF'S POST-TRIAL BRIEF ON EQUITABLE CLAIMS AND CAUSATION

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4
5
*AllChem Performance Prods., Inc. v. Oreq Corp.*,
   2013 WL 12131737 (C.D. Cal. Nov. 5, 2013) ...................................................... 11

6
7
*Arriaga v. Logix Fed. Credit Union*,
   2022 WL 3098495 (C.D. Cal. Apr. 22, 2022) ......................................................... 4

8
9
*Biolase, Inc. v. Fotonza Proizvodnja Optoelektronskih Naprav D.D.*,
   2014 WL 12577153 (C.D. Cal. Sept. 15, 2014) ..................................................... 4

10
*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001) ............................................................................................. 12

11
12
*Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*,
   2018 WL 3618243 (S.D. Cal. July 30, 2018) ........................................................ 7

13
14
*Certified Nutraceuticals, Inc. v. Clorox Co.*,
   2022 WL 2803118 (S.D. Cal. July 18, 2022) ...................................................... 13

15
16
*CKE Rest. v. Jack in the Box, Inc.*,
   494 F. Supp. 2d 1139 (C.D. Cal. 2007) ................................................................. 6

17
18
*Grasshopper House, LLC v. Clean & Sober Media LLC*,
   394 F. Supp. 3d 1073 (C.D. Cal. 2019) ............................................................... 13

19
20
*In re Hain Celestial Seasonings Prods. Consumer Litig.*,
   2017 WL 11633199 (C.D. Cal. June 20, 2017) .................................................... 13

21
*Hartless v. Clorox Co.*,
   2007 WL 3245260 (S.D. Cal. Nov. 2, 2007) ....................................................... 12

22
23
*Hybe Co. v. Does 1-100*,
   598 F. Supp. 3d 1005 (D. Nev. 2022) .................................................................. 13

24
25
*Johnson v. PNC Mortg.*,
   2014 WL 3962662 (N.D. Cal. Aug. 12, 2014) ...................................................... 3

26
27
*Martinez v. Welk Grp., Inc.*,
   907 F. Supp. 2d 1123 (S.D. Cal. 2012) ................................................................. 3

28

DEFENDANTS' REPLY TO PLAINTIFF'S POST-TRIAL BRIEF ON EQUITABLE CLAIMS AND CAUSATION

*Nathan Kimmel, Inc. v. DowElanco,*
   275 F.3d 1199 (9th Cir. 2002) .................................................................. 11, 12

*Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.,*
   2020 WL 6867069 (C.D. Cal. Nov. 18, 2020) ........................................... 10

*Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.,*
   48 F.4th 1040 (9th Cir. 2022) ........................................................ 10, 11, 12

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*
   810 F.3d 631 (9th Cir. 2015) ..................................................................... 14

*Rodriguez v. Am. Cyanamid Co.,*
   858 F. Supp. 127 (D. Ariz. 1994) ..................................................... 11, 12, 15

*TrafficSchool.com, Inc. v. Edriver Inc.,*
   653 F.3d 820 (9th Cir. 2011) ....................................................................... 1

*United States v. First Nat. Bank of Circle,*
   652 F.2d 882 (9th Cir. 1981) ....................................................................... 4

*Wille v. Dana,*
   962 F. Supp. 1334 (D. Or. 1997) ................................................................. 9

STATE CASES

*Cortez v. Purolator Air Filtration Prods. Co.,*
   23 Cal. 4th 163 (2000) .............................................................................. 14

*Daro v. Superior Court,*
   151 Cal. App. 4th 1079 (2007) .................................................................... 3

*Eckler v. Neutrogena Corp.,*
   238 Cal. App. 4th 433 (2015) .................................................................... 12

*Kendall-Jackson Winery, Ltd. v. Superior Court,*
   76 Cal. App. 4th 970 (1999) ...................................................................... 15

*Ticconi v. Blue Shield of Cal. Life & Health Ins.,*
   160 Cal. App. 4th 528 (2008) .................................................................... 14

CONSTITUTIONAL PROVISIONS

U.S. Const. art. VI, cl.2 .................................................................................. 10

**FEDERAL STATUTES**

Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 *et seq.* ...............11, 12, 15

Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C.
§ 136 *et seq.* ...............................................................................11, 12, 15

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 *et seq.* (UCL) .............................................1, *passim*

Cal. Bus. & Prof. Code § 17204 ................................................................................8

Cal. Bus. & Prof. Code § 17500 *et seq.* (FAL) ............................................1, *passim*

Cal. Bus. & Prof. Code § 17535 ................................................................................8

**FEDERAL RULES**

Fed. R. Civ. P. 1 ......................................................................................................4

# I.      INTRODUCTION

Hope is not a strategy. But for nearly four years now, Plaintiff Strategic Partners, Inc. (SPI) has clung to wishful thinking and inferences to keep this lawsuit alive. All this time, and even through trial, SPI has insisted that the Court (and jury) could simply "infer" that Defendant FIGS, Inc. (FIGS) harmed SPI under the Lanham Act's "lenient actual injury standard," and that liability as to the rest of its claims would follow. Dkt. 591-1 at 28; Dkt. 895 at 7–8.

That gambit is no longer viable. The jury found that FIGS did not engage in *any* false advertising whatsoever. As discussed in FIGS' opening brief, Dkt. 938 at 12–13 n.2, that alone is dispositive of SPI's Unfair Competition Law (UCL) and False Advertising Law (FAL) claims (Cal. Bus. & Prof. Code §§ 17200, 17500 *et seq.*), which are predicated on the same false advertising theory that the jury already rejected. SPI's post-trial attempt to create an alternative basis for UCL liability— FIGS' purported failure to comply with federal law—is foreclosed by the Final Pretrial Conference Order, which asserted a single UCL claim for false advertising.

Even setting these infirmities aside, however, SPI's equitable claims must fail. As the Court cautioned in its December 7, 2022 order, SPI now "bears the burden to prevail on each element of its remaining claims—including the element of causation—by a preponderance of the evidence." Dkt. 937 at 2. There is nothing "lenient" about the UCL's and FAL's standing requirements: Both require SPI to "prove a pecuniary injury and '*immediate*' causation"—a standard far stricter than that of the Lanham Act. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 n.1 (9th Cir. 2011) (emphasis added). SPI must now substantiate its years-long claim that FIGS' purportedly wrongful conduct (of which there was none) caused it to suffer a concrete and immediate economic loss. It cannot.

SPI's brief makes plain this failure of proof. Even now, SPI contends that "[t]aken as a whole, the trial record *compels the inference* that FIGS' unlawful, unfair, and deceptive business practices caused diversion of consumers and sales

from SPI." Dkt. 939 at 9 (emphasis added). Not only is that statement risible given the jury verdict, it misses the point. What matters now is *what the evidence shows*. There is simply no evidence that SPI lost any customers to FIGS *on account of* any of the conduct underlying SPI's equitable claims. What is more, there can be no reasonable dispute that SPI made similar and sometimes *identical* health claims about its own products (as the jury found) without obtaining regulatory approval—the very "unlawful" act of which SPI now belatedly complains.

All of this is fatal to SPI's ability to establish causation. Should the Court reach the merits of SPI's (waived) regulatory UCL claim, the Supremacy Clause preempts it. Furthermore, because (i) FIGS no longer makes the statements at issue and (ii) SPI made similar statements without regulatory approval, SPI's request for injunctive relief under the UCL and FAL is both moot and subject to unclean hands. The Court should enter judgment for FIGS.

## II.   ARGUMENT

### A.   SPI has failed to establish causation and statutory standing for its UCL and FAL claims.

Notwithstanding this Court's direction that the parties brief "whether SPI can establish . . . by a preponderance of the evidence adduced at trial, the causation element of its UCL and FAL claims," Dkt. 937 at 3, SPI's opening brief devotes little attention to the topic. That is telling. As discussed in FIGS' opening brief, *see* Dkt. 938 at 10–23, the trial record is devoid of any evidence that FIGS' purported wrongful acts *actually* caused SPI to suffer *actual* economic injury as required to establish standing. The absence of that evidence means that SPI does not have statutory standing to bring its equitable claims and those claims must fail.

SPI seeks to elide the causation requirement by asserting that a defendant's conduct need only be a "substantial factor" in causing harm. Dkt. 939 at 12. That is, SPI argues that it can prevail even if there are other, independent causes of harm. But that logic does not help SPI: Even under a "substantial factor" test, it is still

1  SPI's burden to prove that FIGS' conduct *caused* SPI to suffer an economic loss.

2  "That causal connection is broken when a complaining party would suffer the same

3  harm whether or not a defendant complied with the law." *Daro v. Superior Court*,

4  151 Cal. App. 4th 1079, 1099 (2007). Because SPI has neither evidence of actual

5  harm nor evidence that FIGS' conduct was the but-for cause of any such harm,

6  SPI's case for proving causation is hopeless.

7         Perhaps recognizing as much, SPI again urges the Court to "infer" causation

8  and statutory standing under the UCL and FAL based on what it describes as

9  "circumstantial evidence," Dkt. 939 at 19—a plea that courts routinely reject, and

10  that this Court should as well. *See, e.g.*, *Johnson v. PNC Mortg.*, 2014 WL 3962662,

11  at *12 (N.D. Cal. Aug. 12, 2014) (no standing where there was "no logical

12  connection" between wrongdoing and injury); *Martinez v. Welk Grp., Inc.*, 907 F.

13  Supp. 2d 1123, 1138–39 (S.D. Cal. 2012) (no standing where the only evidence

14  linking conduct to economic loss was a "self-serving" declaration).

15         **1.     The jury found FIGS did not engage in false advertising.**

16         As an initial matter, SPI cannot prove causation because there was no

17  wrongful predicate act. The jury found that FIGS did not engage in false

18  advertising—the sole predicate act upon which SPI based its UCL and FAL claims.

19  *See, e.g.*, Dkt. 925 at 2 (answering "No" to whether FIGS' statement is literally false

20  or misleading and had a tendency to deceive or actually deceived FIGS' consumers),

21  10 (answering "No" to whether FIGS "engage[d] in false advertising"). SPI attempts

22  to escape this inescapable jury finding by arguing that the Lanham Act requires

23  actual deception, whereas the UCL and FAL only require a likelihood of deception.

24  Dkt. 939 at 21 n.10. That is nonsense. The jury was *specifically* asked whether FIGS

25  had engaged in "false advertising"—and found that FIGS had not. Dkt. 925 at 10. In

26  addition, the verdict form asked the jury not only whether they believed consumers

27  were "actually deceived" but *also* whether they thought FIGS' statements "had a

28  *tendency* to deceive" consumers. *Id.* at 2, 4, 6, 8 (emphasis added). There is no

meaningful distinction between "likely to be deceived" and "tendency to deceive"—and SPI's brief is devoid of any citations suggesting otherwise. Dkt. 939 at 21 n.10.

Equally meritless is SPI's attempt to spin up a new UCL claim based on FIGS' purported failure to register its scrubs with the Environmental Protection Agency (EPA) and the Food and Drug Administration (FDA).[1] The Final Pre-Trial Conference Order is unambiguous: It "supersede[d]" all prior pleadings, "specified the . . . issues remaining to be litigated," and "govern[ed] the course of the trial." Dkt. 854 at 35. The sole basis for UCL liability articulated in the Order was that "[f]alse advertising, under the Lanham Act or [FAL], constitutes unfair business practices." Dkt. 854 at 7. The Ninth Circuit has held that because "[p]retrial orders play a crucial role in implementing the purposes of the Federal Rules of Civil Procedure," "[a] party [may not] . . . advance theories at the trial which are not included in the order." *United States v. First Nat. Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981) (citing Fed. R. Civ. P. 1); *see also Arriaga v. Logix Fed. Credit Union*, 2022 WL 3098495, at *2 (C.D. Cal. Apr. 22, 2022). Accordingly, SPI has waived any claim that FIGS violated the UCL by not registering its scrubs.

California false advertising claims "are substantially congruent to claims made under the Lanham Act and thus rise or fall with [them]." *Biolase, Inc. v. Fotonza Proizvodnja Optoelektronskih Naprav D.D.*, 2014 WL 12577153, at *2 (C.D. Cal. Sept. 15, 2014) (citation omitted). At trial, SPI's Lanham Act claim fell. Its FAL and UCL claims must follow.

### 2. SPI has failed to prove that FIGS' statements caused SPI to suffer an economic loss.

SPI's equitable claims also fail because there is no evidence that any of FIGS' challenged statements caused SPI to suffer an economic loss. A review of SPI's

---

[1] Notably, SPI's claim is *not* that FIGS falsely advertised that its products had received regulatory approval, but instead that FIGS was (allegedly) required to register its products with the EPA and FDA and did not do so.

hodge-podge of "circumstantial" evidence, Dkt. 939 at 19, reveals the exceptional weakness of SPI's case for statutory standing. In total, SPI's brief identifies five pieces of evidence that it asserts support an "inference" of causation for its (waived) regulatory UCL claim: (i) FIGS' surveys showing that a tiny proportion of its customers who also purchased from SPI liked the antimicrobial quality of FIGS' scrubs; (ii) testimony that FIGS competed with Cherokee; (iii) testimony from FIGS' materiality survey expert, Dr. Nowlis, that an immaterial percentage of surveyed FIGS consumers identified the 66% Claim and the On Contact Claim as reasons (among others) to purchase FIGS' scrubs; (iv) testimony from SPI's materiality survey expert, Dr. Simonson, that some respondents to his survey chose FIGS when shown the claim at issue against "information unavailable" for SPI's scrubs, which was a factually inaccurate comparison; and (v) general market research standing for the unremarkable proposition that some scrubs consumers consider health and safety. Dkt. 939 at 19–20, 22–23.

     None of this evidence comes close to proving that SPI lost customers to FIGS because of any statements FIGS made. Nor could it. To understand why, consider the nature of SPI's (waived) regulatory UCL claim, which asserts that SPI was injured because FIGS made statements for which SPI contends FIGS was required to obtain EPA or FDA registration. Assuming that the claims *mattered* to customers' purchasing decisions in the first place—which they did not—under what circumstances would making a purportedly unauthorized health claim theoretically cause a competitor harm? Presumably, *when the competitor did not itself make the same or a similar claim*, thereby losing business as a comparative matter.

     That is not the case here. The unrebutted trial evidence showed that SPI repeatedly touted the antimicrobial and protective qualities of its garments. The tagline for SPI's antimicrobial scrubs literally assured customers that they would "[b]e safe," with video advertisements proclaiming that SPI's scrubs offered "antimicrobial protection" (without caveat). App., Ex. A (Trial Exhibit 3112). At

1    least one video showed animated bacteria dying *upon contact* with the treated

2    scrubs. *Id.* The jury ultimately found that there was "clear and convincing evidence"

3    that SPI made advertising claims "that were functionally the same as or similar to"

4    FIGS' On Contact Claim. Dkt. 925 at 19. Tellingly, SPI nowhere claims that it

5    received federal regulatory approval for these statements. Dkt. 939 at 20 (SPI stating

6    it was *in the process* of "seeking EPA approval"). And logically speaking,

7    customers could not have chosen FIGS over SPI because of statements *that both*

8    *companies made*.

9        Therein lies the problem with SPI's fragmented evidentiary tapestry. To

10   establish standing and prove causation, SPI needs evidence that shows customers

11   actually chose FIGS over SPI because of the claims at issue. Yet none of SPI's

12   "evidence" of causation tested for that. At most, the cited surveys tested for

13   *materiality*, which is a completely separate question.[2] *See CKE Rest. v. Jack in the*

14   *Box, Inc.*, 494 F. Supp. 2d 1139, 1146 (C.D. Cal. 2007) (materiality survey

15   "explor[ing] consumers' impressions" not evidence of "injury and causation"). The

16   evidentiary gap is obvious. FIGS' surveys asked respondents "[w]hat other scrub

17   brands do you wear *or* have you worn," Dkt. 939-1 at 51–52 (Trial Exhibit 2282)

18   (emphasis added), and Dr. Nowlis' surveys did not ask about brands *at all*. Because

19   neither asked respondents whether they were *former* SPI customers, it is impossible

20   to infer from those surveys that any respondents left SPI for FIGS, much less why.[3]

21

---

22   [2] Even then, Dr. Nowlis testified that the overwhelming evidence was that *all*
      challenged claims were "immaterial" to consumers' purchasing decisions. App., Ex.

23   B at 73:1–6.

24   [3] Grasping at straws, SPI suggests that it was "disadvantage[d]" in establishing

25   causation because of a fantastical cache of surveys that FIGS purportedly did not
      produce in discovery. Dkt. 939 at 24. Setting aside that these surveys could not have

26   established causation because they never asked the relevant questions, SPI's
      suggestion that FIGS withheld survey evidence is nonsense. As SPI acknowledges,

27   that survey data was produced as Trial Exhibit 2282. *Id.* Moreover, Mr. Kim

28

1    Dr. Simonson's materiality surveys fare no better. Again, the surveys

2    themselves did not purport to test causation. And because Dr. Simonson asked

3    respondents to compare a FIGS scrub advertised with one of the "health claims" to

4    an SPI scrub with "information unavailable," it is impossible to isolate *why*

5    respondents who picked the FIGS scrub did so. *See* App., Ex. C at 304:25–305:25,

6    308:14–314:21. That is because respondents could—and did—choose FIGS because

7    they had a negative reaction to "information unavailable" rather than a positive

8    reaction to the "health claim" Dr. Simonson purported to test. *See id.* at 313:1–

9    314:21 (Dr. Simonson's testimony acknowledging that some survey respondents

10   found "the lack of information on [SPI] . . . offputting"). Moreover, assigning

11   "information unavailable" to SPI's scrubs was entirely divorced from reality since

12   SPI in fact *did* advertise its scrubs with similar claims, as Dr. Simonson himself

13   acknowledged. *See id.* at 316:4–317:24; App., Ex. B at 80:13–81:12 (Dr. Nowlis).

14   The Court recognized prior to trial that these were "compelling" deficiencies

15   that "pertain[ed] to the technical unreliability" of Dr. Simonson's surveys. Dkt. 701

16   at 14. Beyond that, however, they are further proof that the circumstantial evidence

17   upon which SPI now relies cannot establish causation. At a minimum, SPI must

18   show (i) that there was some meaningful delta between what FIGS said about its

19   products and what SPI said that affected customers' purchasing decisions; *and*

20   (ii) that consumers left SPI for FIGS rather than any of the myriad other competing

21   brands on the market. Because Dr. Simonson neither put SPI's comparable product

22   descriptions before his survey respondents nor asked them about other brands, SPI

23   has no such evidence. *See Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical,*

24   *LLC*, 2018 WL 3618243, at *8 (S.D. Cal. July 30, 2018) (no statutory standing

25   _____

26   testified at trial that because the data was continuously collected, the spreadsheet he
     pulled in 2018 included all comments collected up to the date he retrieved the data.

27   App., Ex. D at 65:15–66:23. As the Special Master recognized, FIGS fully complied
     with its discovery obligations. *See* Dkt. 936 at 4–5.

28

where plaintiff had no evidence that "but for Defendant's . . . statements, NeoCell would have purchased collagen products from Plaintiff").

That leaves SPI with toothless references to (i) testimony that SPI and FIGS were competitors and (ii) generic market research data about consumer preferences. Dkt. 939 at 19–20. The first boils down to the facile argument that statutory standing exists by default in any lawsuit between competitors—a sweeping proposition that ignores the statute. *See* Cal. Bus. & Prof. Code § 17204 (creating cause of action for "a person who has suffered injury in fact and has lost money . . . as a result of the unfair competition"); *see also id.* § 17535. The second underscores the complete absence of any *actual* causation evidence *in this case*. The market research SPI references shows that only a tiny percentage of 1,006 surveyed consumers considered the availability of antimicrobial-treated scrubs at all when choosing between brands.[4] Dkt. 939-1 at 58. Separately, a different (but still tiny) percentage of the total survey population consisted of "lapsed" purchasers of SPI brands, most of whom simply moved their purchases to another SPI brand, with the remainder purchasing from brands such as Grey's Anatomy, WonderWink, and FIGS. *Id.* SPI asserts that the combination of these two unrelated facts somehow compels the *inference* that some lapsed SPI customers must have gone to FIGS (and not another SPI brand, or another competitor) *because of* FIGS' antimicrobial statements. This amounts to but another improper request that the Court *assume* causation.

As it turns out, the authors of the market research report on which SPI hangs its hat asked this smaller universe of lapsed SPI customers to identify "the primary reason you discontinued purchasing scrubs from [BRAND]." Dkt. 939-1 at 58. Setting aside that the report was not limited to SPI customers who switched to FIGS,

---

[4] SPI attempts to dress this up as a preference for "infection control" in its brief, but the cited report makes clear that this is just a term the reporting company invented to capture consumer preferences for "antimicrobial fabrics." Dkt. 939-1 at 57.

*not a single respondent* identified "infection control" or "antimicrobial protection" as a reason for his or her decision. Instead, respondents identified a host of other, unrelated factors, such as "[t]his [CBI] brand did not fit me well" and "[b]rand is low quality and wears down too easily." *Id.* In no universe—much less this one, where the criteria for statutory standing under the UCL and FAL are stricter than Article III—does this evidence satisfy SPI's burden of proving that it lost sales to FIGS because of FIGS' "health claims." In fact, this evidence *disproves* causation.

Notably unaddressed in SPI's brief is the wealth of evidence showing that (i) SPI's profits, revenues, and market share *increased* as a result of FIGS' expansion of the scrubs market, Dkt. 938 at 15–16; (ii) SPI's experts and executives could not name *a single individual* who swapped his or her purchases from SPI to FIGS, much less for the reasons SPI complains of, *id.* at 16–18; and (iii) SPI executives themselves attributed SPI's struggles to its outdated business model, *id.* at 21–23. Each of these issues is discussed in greater detail in FIGS' opening brief and underscores the absence of causation and injury.

As the plaintiff, it is *SPI's* burden to prove causation (and statutory standing) by a preponderance of the evidence, *i.e.*, with "evidence that, when weighed with that opposed to it, has more convincing force and is more probably true and accurate." *Wille v. Dana*, 962 F. Supp. 1334, 1336 (D. Or. 1997). SPI's "circumstantial evidence" falls well short of that bar because, even now, SPI cannot connect FIGS' purported wrongdoing to any economic loss SPI purportedly suffered. The Court should grant judgment to FIGS on SPI's equitable claims.[5]

**B.    SPI's equitable claims also fail on other grounds.**

Because statutory standing is a threshold inquiry and because the Court's December 7, 2022 order directed briefing on causation *alone*, Dkt. 937 at 3, FIGS

---

[5] Because SPI relies on the same evidence in support of causation for its false advertising FAL and UCL claims, Dkt. 939 at 15–17, they fail for the same reason.

DEFENDANTS' REPLY TO PLAINTIFF'S POST-TRIAL BRIEF ON EQUITABLE CLAIMS AND CAUSATION

does not believe that it is necessary to consider any other arguments and has filed proposed Findings of Fact and Conclusions of Law (FOFCOL) consistent with that view. However, because the bulk of SPI's "causation" brief discusses the merits of SPI's (waived) regulatory UCL claim as opposed to causation, FIGS responds here to note that it is additionally entitled to judgment because (i) federal law preempts SPI's regulatory UCL claim; and (ii) SPI's request for injunctive relief is both moot and inequitable.[6]

### 1. Federal law preempts SPI's regulatory UCL claim.

The Supremacy Clause of the U.S. Constitution declares "the Laws of the United States . . . shall be the supreme Law of the Land," U.S. Const. art. VI, cl.2, and "invalidates state laws that are contrary to federal statutes." *Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040, 1045 (9th Cir. 2022). That principle of federal preemption invalidates SPI's regulatory UCL claim.

The Ninth Circuit has concluded that the Supremacy Clause invalidates state law claims that intrude upon a federal agency's enforcement authority over federal statutes and regulations. *Id.* at 1050–51. That is because "[i]f state law facilitates enforcement beyond what [the federal agency] has deemed appropriate, then state law claims . . . 'stand as an obstacle' to [the agency's] enforcement discretion by enabling what [it] regards as over-enforcement." *Id.* at 1048. Thus, in *Nexus*, the Ninth Circuit affirmed the district court's decision dismissing the plaintiff's UCL claim, which sought to hold a competitor liable for failing to obtain FDA approval. *Id.* at 1050–51; *see also Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 2020 WL 6867069, at *2 (C.D. Cal. Nov. 18, 2020). Because the lawfulness (and fairness) of the competitor's conduct turned on its compliance with the federal

---

[6] To the extent the Court wishes to address these additional arguments in an order, FIGS requests the opportunity to submit an amended FOFCOL that incorporates findings of fact and conclusions of law relevant to those additional arguments.

Food, Drug, and Cosmetic Act (21 U.S.C. § 301 *et seq.*) (FDCA), enforcement of which is entrusted to the FDA, the plaintiff's UCL claim was "squarely" preempted. 48 F.4th at 1050–51. The Ninth Circuit reached the same conclusion in *Nathan Kimmel, Inc. v. DowElanco¸* 275 F.3d 1199 (9th Cir. 2002), applying preemption to bar the plaintiff's California state law claim because "the existence of the FIFRA [Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq.*] requirements are . . . a critical element of [the plaintiff's] . . . case." *Id.* at 1206.

These two decisions doom SPI's regulatory UCL claim. Just as in *Nexus* and *Nathan Kimmel*, SPI seeks to improperly revise its regulatory UCL claim to contend that SPI was "harmed economically because the defendant violated the FDCA," *Nexus Pharms.*, 48 F.4th at 1050, and FIFRA. *See* Dkt. 939 at 10 ("FIGS caused SPI harm by its unlawful violation of FIFRA, FDCA, and applicable regulations."). SPI's claim is thus "squarely" preempted under binding Ninth Circuit law.[7]

A closer look at SPI's regulatory UCL claim illustrates why such claims are preempted. Both the FDCA and FIFRA are federal statutes that do not create a private cause of action. *See Nexus Pharms.*, 48 F.4th at 1049 (FDCA); *Rodriguez v. Am. Cyanamid Co.*, 858 F. Supp. 127, 131 (D. Ariz. 1994) (FIFRA). Enforcement of both statutes is exclusively entrusted to the FDA and EPA, respectively, acting in their broad discretion. *See Nexus Pharms.*, 48 F.4th at 1041 (FDCA); *AllChem Performance Prods., Inc. v. Oreq Corp.*, 2013 WL 12131737, at *5 (C.D. Cal. Nov. 5, 2013) (FIFRA). Moreover, there is no evidence that either the FDA or the EPA have concluded that FIGS violated the FDCA or FIFRA at all. And it is telling that even SPI concedes uncertainty as to whether the relevant federal agencies would consider FIGS to have violated their regulations; SPI at most contends that certain health claims are "*likely* unacceptable" under FDA and EPA guidance. Dkt. 939 at

---

[7] SPI's footnote discussing preemption omits any mention of Ninth Circuit case law, which plainly hold that claims like SPI's are preempted. Dkt. 939 at 15 n.6.

14 (emphasis added). That is unavoidable, because *the agencies themselves*—which, again, have taken no action here—are the entities that determine whether there has been a violation of the federal statutes they have been entrusted to enforce. Under these circumstances, allowing SPI to proceed on its regulatory UCL claim would raise the "troubl[ing]" prospect that FIGS' conduct, "although not challenged by the EPA (the very agency empowered by Congress to enforce FIFRA), may be judged illegal under state law." *Nathan Kimmel*, 275 F.3d at 1207.

The doctrine of implied preemption forecloses SPI from usurping the authority of the FDA and EPA by seeking to enforce the FDCA and FIFRA through state law. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001) (state law claims preempted where they "inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives"); *Nexus Pharms.*, 48 F.4th at 1050–51; *Nathan Kimmel*, 275 F.3d at 1207. Recognizing this, courts regularly dismiss UCL and other state law claims that allege a violation of these statutes. *See, e.g.*, *Hartless v. Clorox Co.*, 2007 WL 3245260, at *4 (S.D. Cal. Nov. 2, 2007) ("This Court finds that plaintiff is precluded from enforcing FIFRA privately by using it as a predicate for her UCL claim."); *Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433, 459 (2015) (applying preemption to UCL claim predicated on FDCA violation). Assuming the Court does not dispose of SPI's equitable claims based on waiver or a failure to establish causation, it should do so on preemption grounds.

### 2. Injunctive relief is unavailable for SPI's equitable claims.

Finally, FIGS is entitled to judgment because injunctive relief is unavailable under the twin doctrines of mootness and unclean hands.

Mootness. The passage of time has mooted SPI's request. As SPI acknowledges, "FIGS has voluntarily ceased propagating its health claims," Dkt. 939 at 9, and there is no reasonable expectation that FIGS will resume making those claims, as FIGS' Chief Operating Officer, Devon Duff Gago, attested in her sworn

-12-

declaration. *See* Dkt. 577-7 at 11–12. District courts regularly conclude that this combination of facts moots a plaintiff's request for injunctive relief in false advertising and product labeling cases. *See, e.g.*, *Certified Nutraceuticals, Inc. v. Clorox Co.*, 2022 WL 2803118, at *6–7 (S.D. Cal. July 18, 2022) (concluding request for injunction mooted where defendant removed the disputed term and filed an affidavit stating they would not use the term "at any time"); *In re Hain Celestial Seasonings Prods. Consumer Litig.*, 2017 WL 11633199, at *3 (C.D. Cal. June 20, 2017) (same). Notwithstanding this, SPI asserts that injunctive relief is still available because (i) unaffiliated third-party vendors on resale websites "have continued to repeat FIGS' unapproved . . . health claims"; and (ii) FIGS never explained why it stopped making the challenged claims. Dkt. 939 at 9 n.3. That is wrong.

First, FIGS does not control what private parties say about its products, and an injunction against FIGS to police others would be overbroad and unworkable. *See Grasshopper House, LLC v. Clean & Sober Media LLC*, 394 F. Supp. 3d 1073, 1107 (C.D. Cal. 2019) (request to enjoin the defendant from ensuring material "is not posted anywhere on the internet" was "infeasible" and "overbroad"), *vacated in part on other grounds*, 2021 WL 3702243 (9th Cir. Aug. 20, 2021). The Poshmark listing SPI cites illustrates the problem: That listing belongs to a private individual who *resells* thousands of used clothes and is unaffiliated with FIGS. Because "a court does not have the power . . . to enjoin the behavior of the world at large," the fact that persons outside FIGS' control occasionally use outdated descriptions of FIGS' product provides no basis for permanent injunctive relief against FIGS. *Hybe Co. v. Does 1–100*, 598 F. Supp. 3d 1005, 1007 (D. Nev. 2022) (internal quotation marks omitted); *see also Certified Nutraceuticals*, 2022 WL 2803118, at *5 (concluding injunctive relief unavailable where allegation was that nonparty retailers outside defendant's control continued to use discontinued language).

Second, whether FIGS formally explained its reasoning for updating its statements has nothing to do with redressing SPI's unsubstantiated injury. SPI's

claimed (and entirely unproven, *see supra* pp. 4–9) injury is that by making the statements it did, FIGS caused SPI to suffer an economic loss. But any such loss (and to be clear, there is no proof of any) would have stopped when FIGS ceased making the claims. Because injunctive relief requires a "relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint," *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015), SPI is not entitled to the injunctive remedy it seeks.

<u>Unclean Hands.</u> The doctrine of unclean hands also undermines any claim SPI has to injunctive relief. Because UCL and FAL claims are equitable in nature, courts must consider "the equities between the parties" "[i]n deciding whether to grant" injunctive relief. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 180–81 (2000). That includes consideration of a plaintiff's unclean hands, which directly implicates "the paramount principle that equity is . . . a forum of conscience." *Id.* at 180; *see also Ticconi v. Blue Shield of Cal. Life & Health Ins.*, 160 Cal. App. 4th 528, 544–45 (2008). Here, the jury has *already* found that SPI engaged in *the same* purportedly wrongful conduct of which it now accuses FIGS, rendering any injunctive relief inequitable.

Consistent with the jury's findings, the trial record is replete with evidence of SPI's inequitable conduct. That evidence includes (i) SPI's product videos advertising the "game-changing" "antimicrobial protection" of its scrubs, which transformed "ordinary scrubs into a protective shield against unwanted bacteria," App., Exs. A, E (Trial Exhibit 3129); (ii) SPI webpages stating that its "antimicrobial" scrubs "giv[e] healthcare professionals the freedom to perform their duties in *safer* . . . clothing" and that "[w]hen the undesirable bacteria come into contact with treated fabrics, . . . the bacteria are continually reduced," *id.*, Ex. F (Trial Exhibit 2016) (emphasis added), G (Trial Exhibit 2017); and (iii) press releases asserting that SPI's antimicrobial technology will "contribut[e] to peace of mind for healthcare workers" by reducing bacteria on "contact." *Id.*, Ex. H (Trial

Exhibit 2018), Ex. I (Trial Exhibit 2652). The evidence also shows that SPI did not receive EPA or FDA approval prior to making these claims, and SPI's executives never testified otherwise. *See* Dkt. 939 at 20; Dkt. 939-1 at 59 (Trial Exhibit 2825).

That is textbook unclean hands. SPI accuses FIGS of violating the FDCA and FIFRA because FIGS labeled its scrubs "antimicrobial" and made the 66% Claim and the On Contact Claim. Dkt. 939 at 14–18. But if SPI's theory of the law is right (it is not), SPI committed *the same violation*. The jury specifically found that SPI made "one or more advertising claims that were functionally the same as or similar to FIGS' advertising claims that its products kill bacteria and infection immediately upon contact." Dkt. 925 at 19. Nor were SPI's claims limited to "odor prevention," as its brief misleadingly contends. Dkt. 939 at 13. In fact, they were worse, because they expressly promised healthcare workers that they would "be safe" if they wore SPI's scrubs—a claim FIGS never made. App., Ex. A.

SPI's self-serving and counterfactual protestations that it followed the rules cannot be squared with the jury's finding, the evidentiary record, or its own articulation of the law. Because SPI's conduct "pertain[s] to the very subject matter involved and affect[s] the equitable relations between the litigants," *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 979 (1999), the doctrine of unclean hands undermines SPI's request for injunctive relief and eliminates any claim that FIGS engaged in "unfair" competition.

## III.   <u>CONCLUSION</u>

Trial is the great equalizer. A plaintiff must prove its case with concrete, compelling evidence. SPI had its chance and failed: It failed to prove that FIGS engaged in false advertising; it failed to prove that it has statutory standing to pursue its remaining claims; and it failed to prove that this lawsuit was anything more than an attempt to try to sideline a burgeoning competitor. SPI's time is up, FIGS has been burdened enough, and the Court should enter judgment for FIGS on SPI's remaining equitable claims.

1   DATED:  January 20, 2023                MUNGER, TOLLES & OLSON LLP

2

3

4                                          By: _____/s/ Jacob S. Kreilkamp_____
                                                    JACOB S. KREILKAMP
5                                          Attorneys for Defendants

6   DATED:  January 20, 2023                BIRD, MARELLA, BOXER, WOLPERT,
7                                           NESSIM, DROOKS, LINCENBERG &
                                            RHOW, P.C.
8

9

10                                         By: _____/s/ Ekwan E. Rhow_____
                                                    EKWAN E. RHOW
11                                         Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY TO PLAINTIFF'S POST-TRIAL BRIEF ON EQUITABLE CLAIMS AND CAUSATION