Jacob S. Kreilkamp (State Bar No. 248210)
    jacob.kreilkamp@mto.com
Adam B. Weiss (State Bar No. 296381)
    adam.weiss@mto.com
Sara A. McDermott (State Bar No. 307564)
    sara.mcdermott@mto.com
James R. Salzmann (State Bar No. 324527)
    james.salzmann@mto.com
William M. Orr (State Bar No. 331842)
    william.orr@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Ekwan E. Rhow (State Bar No. 174604)
    erhow@birdmarella.com
Julia B. Cherlow (State Bar No. 290538)
    jcherlow@birdmarella.com
Fanxi Wang (State Bar No. 287584)
    fwang@birdmarella.com
Kate S. Shin (State Bar No. 279867)
    kshin@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

*Additional Counsel on Next Page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRATEGIC PARTNERS, INC., | Case No. 2:19-cv-02286-JWH-KS |
| Plaintiff, | **[DEFENDANTS' PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| FIGS, INC., CATHERINE ("TRINA") SPEAR, HEATHER HASSON, | Judge:  Hon. John W. Holcomb<br>Date:     February 3, 2023<br>Time:     1:00 p.m.<br>Crtrm.:  9D |
| Defendants. | |

1   *Additional Counsel*

2   Xiaonan April Hu (State Bar No. 321354)
        april.hu@mto.com
3   MUNGER, TOLLES & OLSON LLP
    601 Massachusetts Ave. NW, Suite 500E
4   Washington, D.C. 20001-5369
    Telephone:  (202) 220-1100
5   Facsimile:  (202) 220-2300

6   Sara H. Worth (State Bar No. 341088)
        sara.worth@mto.com
7   MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue, Fiftieth Floor
8   Los Angeles, California 90071-3426
    Telephone:  (213) 683-9100
9   Facsimile:  (213) 687-3702

10  Miri E. Gold (State Bar No. 319060)
        mgold@birdmarella.com
11  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
    DROOKS, LINCENBERG & RHOW, P.C.
12  1875 Century Park East, 23rd Floor
    Los Angeles, California 90067-2561
13  Telephone:  (310) 201-2100
    Facsimile:  (310) 201-2110

14

15  Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

[DEFENDANTS' PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

**[DEFENDANTS' PROPOSED]**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This is a dispute between two medical apparel companies, Plaintiff Strategic Partners, Inc. (SPI) and Defendant FIGS, Inc. (FIGS). SPI asserted Lanham Act and various state-law claims predicated on allegedly false advertising against FIGS and its founders, Defendants Heather Hasson and Catherine "Trina" Spear. SPI tried its Lanham Act and intentional interference with prospective economic relations claims before a jury, commencing on October 17, 2022. On November 3, 2022, the jury returned a complete defense verdict, concluding that FIGS' advertising claims were not false or deceptive, and that neither FIGS nor either individual defendant had engaged in false advertising. Dkt. No. 925.

The Court reserved adjudication of SPI's two equitable claims, which alleged violations of Cal. Bus. & Prof. Code §§ 17200 (UCL) and 17500 (FAL) *et seq.*, until after the conclusion of the jury phase. On December 7, 2022, the Court requested briefing as to whether SPI had adduced evidence of causation sufficient to prove that essential element of its equitable claims by a preponderance of the evidence. Dkt. 937. The Court also ordered the parties to submit proposed findings of fact and conclusions of law. *Id.*

Threshold standing under both the UCL and FAL requires a plaintiff to have "lost money or property *as a result*" of unfair competition or false advertising. Cal. Bus. & Prof. Code §§ 17204, 17535 (emphasis added). Accordingly, the Court considers whether SPI has established by a preponderance of the evidence that FIGS' allegedly false advertising caused harm to SPI, and makes its findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## I.     FINDINGS OF FACT

1.     Through its UCL claim, SPI alleges that FIGS engaged in unfair, unlawful, and/or fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200. Dkt. 854 at 5. In the Final Pretrial Order, SPI identified "[f]alse

-1-

advertising, under the Lanham Act or Cal[.] Bus[. &] Prof[.] Code § 17500," as the basis for the allegedly "unfair business practices under Cal[.] Bus[. &] Prof[.] Code § 17200." *Id.* at 7.

2.     Through its FAL claim, SPI alleges that FIGS engaged in untrue and misleading advertising in violation of Cal. Bus. & Prof. Code § 17500.

3.     Because "the Court must ensure that [the plaintiff] has standing" "[b]efore evaluating the substance" of any UCL or FAL claims, the Court addresses only facts relevant to the proof of (i) any allegedly wrongful act by FIGS; (ii) SPI's alleged economic injury and (iii) whether FIGS' allegedly wrongful conduct caused any such harm. *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1156 (N.D. Cal. 2019).

### A.     The trial evidence does not support a finding that FIGS engaged in any wrongful act.

4.     SPI's UCL and FAL claims were each predicated on an assertion that FIGS engaged in false or deceptive advertising. Dkt. 939 at 7–8.

5.     The jury determined that FIGS did not engage in false advertising. Verdict Form Question 31.

6.     The jury determined that FIGS' statement that its scrubs "kill bacteria and infection immediately upon contact" (the On Contact Claim) was not literally false and did not actually deceive or have the tendency to deceive a substantial segment of FIGS' audience of consumers. Verdict Form Question 2.

7.     The jury determined that FIGS' statement that its scrubs "reduce hospital-acquired infection rates by 66%" (the HAI Claim) was not literally false and did not actually deceive or have the tendency to deceive a substantial segment of FIGS' audience of consumers. Verdict Form Question 9.

8.     The jury determined that FIGS' statement that its scrubs "are liquid or fluid repellent" (the Liquid Claim) was not literally false and did not actually

deceive or have the tendency to deceive a substantial segment of FIGS' audience of consumers. Verdict Form Question 16.

9.     The jury determined that FIGS' statement that FIGS "donates one set of scrubs for every set sold" (the One-for-One Claim) was not literally false and did not actually deceive or have the tendency to deceive a substantial segment of FIGS' audience of consumers. Verdict Form Question 23.

10.    The jury determined that SPI made advertising claims that were functionally the same or similar to FIGS' On Contact Claim. Verdict Form Question 52.

11.    To the extent SPI seeks to premise its UCL claim on alleged violations of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) and the Federal Food, Drug, and Cosmetic Act (FDCA) (collectively, the Regulatory Allegations), those bases are not set forth in the Final Pretrial Conference Order, which superseded the pleadings and governed the course of the trial. Dkt. 854 at 35.

12.    The Final Pretrial Conference Order referenced the Regulatory Allegations only as prospective evidence in support of the argument that FIGS made "false health claims." *Id.* at 11, 13, 15, 17.

13.    SPI does not seek, and the record does not support, a finding that FIGS ever claimed to have obtained EPA or FDA approval for its products or advertisements.

14.    Additionally, no evidence in the record indicates that the EPA or FDA has taken regulatory action against FIGS for any claims that FIGS has made.

### B.    The trial evidence does not support a finding that SPI experienced an economic injury.

15.    Separate and apart from the lack of any wrongful act by FIGS, the preponderance of the evidence adduced at trial does not show that SPI sustained any economic injury between 2013, when FIGS entered the medical apparel market, and the present. *See* Oct. 19 Tr., Vol. 1, at 44:22–23.

16.    SPI had the largest share of the medical apparel market in 2012 and still had the largest share as of 2021. Designated Alexander Tr. at 136:3–12. SPI's market share grew during that same period. *See* Designated Pierpoint Tr. at 166:5–21. *See also* Ex. 2825 at 14 (Ernst & Young report on SPI, reflecting growth through 2020); Oct. 26 Tr., Vol. 2 at 77:18–79:1 (Dr. Bell) (SPI's market share grew by nine points between 2018 and 2020).

17.    SPI's revenues increased annually between 2012 and 2021. Oct. 27 Tr. Vol. 2, at 69:10–13 (Singer); Designated Pierpoint Tr. at 165:17–166:3. *See also* Designated Johansson Tr. at 61:7–17 (SPI experienced "revenue growth, earnings growth, and [growth] through cash generation" from 2016 to 2021).

18.    SPI's earnings before interest, taxes, depreciation, and amortization "doubled or so" in the nine years following FIGS' 2013 entry into the market. Designated Pierpoint Tr. at 162:2–3, 167:6–22.

19.    SPI proffered no economic injury expert at trial. SPI's damages expert, Dr. Gregory Bell, opined on a damages quantification based on a long series of assumptions, including—as FIGS' damages rebuttal expert Dominic Persechini explained—that the jury would find harm. *See* Nov. 1 Tr., Vol. 2, at 11:23–25 ("It's not our role to tell you whether liability or harm actually exists.").

20.    The preponderance of the evidence adduced at trial also does not show that SPI lost customers or sales to FIGS.

21.    SPI admitted that it has no document identifying any customer(s) whose business SPI lost due to FIGS' alleged misconduct. Designated McAdam 30(b)(6) Tr. at 101:12–18.

22.    The only such customer purportedly named at trial was "Inka's Uniforms" (Inka's), as referenced in a 2015 email exchange between Inka's and FIGS. Ex. 262. However, in Exhibit 262 Inka's states that they are "excited about *adding* . . . Figs to our current lineup," *in addition to* "all of the antimicrobial lines from Cherokee," an SPI brand. Ex. 262 (emphasis added). This is not evidence

-4-

sufficient to conclude that SPI lost any business to FIGS, but rather is evidence only that Inka's chose to expand its product offerings and carry both brands simultaneously.

### C.   The evidence at trial does not support a finding that FIGS' conduct caused economic harm to SPI.

23.   Even if SPI had adduced evidence sufficient to prove by the preponderance standard (i) any wrongful conduct by FIGS, and (ii) any economic injury to SPI—the Court has found it did not—there is also insufficient evidence of a causal link between FIGS' conduct and SPI's alleged injury.

24.   SPI proffered no expert on causation at trial. SPI's survey expert, Dr. Itamar Simonson, opined on the *materiality* of certain challenged claims; and its damages expert, Dr. Bell, opined on the potential *amount of damages* and nothing more. Oct. 24 Tr., at 302: 2–6 (Dr. Simonson); Oct. 26 Tr., Vol. 2, at 35:1–5; 80:6–16 (Dr. Bell).

25.   Dr. Simonson's testimony is not evidence of causation. Dr. Simonson's survey asked about hypothetical comparisons between FIGS and SPI. Oct. 24 Tr., at 303:1–305:10; 307:13–19. Dr. Simonson did not rely on any "real-world advertisements for FIGS that contained any challenge[d] statement." *Id.* at 315:18–25; *see also* Oct. 24 Tr., at 310:18–311:13 (Dr. Simonson also did not test real-world advertisements of SPI's). Dr. Simonson did not seek any feedback from consumers from any time before SPI filed suit, did not speak to any actual healthcare professionals, and did not analyze "how many actual consumers of scrubs actually saw the challenge[d] claims in the real world." *Id.* at 329:12–24. Dr. Simonson refused to credit, or even consider, the tens of thousands of actual survey responses given by FIGS customers in the ordinary course of business as to why they chose FIGS, which overwhelmingly focused on attributes other than the challenged claims. *Id.* at 326:17–19. Dr. Simonson therefore could not testify to

whether any real-world consumer *actually* chose FIGS over SPI because of the challenged claims.

26.    Nor did Dr. Bell perform an analysis of injury causation. Dr. Bell admitted that his theory of causation was "based on Professor Simonson's survey," Oct. 26 Tr., Vol 2, at 14:12–13, and Dr. Bell chose not to rely on any survey other than Dr. Simonson's. *Id.* at 14:12–13, 37:13–38:5. Dr. Bell never saw surveys of actual FIGS or SPI customers, focused only on Dr. Simonson's limited hypothetical comparison of several SPI Cherokee products to FIGS products, and never analyzed any other SPI brand. *Id.* at 46:4–11, 48:5–18. Instead, Dr. Bell *assumed* that SPI had been injured, that FIGS caused the injury, and proceeded directly to the quantification of SPI's potential damages. *See, e.g.*, Oct. 26 Tr., Vol. 2, at 56:17-25; *id.* at 50:12–15 (Q: "You do not know the name of a single customer who switched from an SPI brand to a FIGS scrub because of the challenged claims, correct?" A: "That's correct."). Dr. Bell's testimony, too, cannot support a finding of causation.

27.    To the extent that SPI would rely on its own market research report that asked 1,006 lapsed SPI customers to identify "the primary reason you discontinued purchasing scrubs from [BRAND]," that is also not evidence of causation. *See* Exhibit 2825-94. First, the data do not identify which lapsed SPI customers switched to FIGS or any one of a number of other scrubs competitors. Furthermore, there is no indication that any respondent identified "infection control," "antimicrobial protection," or any other relevant consideration as a reason for his or her decision to switch brands. Such responses undermine any finding that SPI's customers ceased purchasing its products as the result of FIGS' claims.

28.    The trial record also supports a finding that any purported harm to SPI is most likely attributable to causes other than the FIGS claims challenged by SPI. As Mr. Singer testified at trial, "there are a lot of reasons why we lost sales that aren't related to the claims in this case." Oct. 27 Tr., Vol. 1, at 106:21–23. Indeed, SPI's internal analysis of FIGS asked "Why are they successful," and concluded that

-6-

the answer was because "[i]t is just like ordering food at your favorite restaurant, the food is always good. . . . FIGS Scrubs conveys social status. It screams '*you made it*'. . . . FIGS is the definition of being cool without even trying." Exhibit 2604-2 (SPI's social media comparative analysis); *see also* Exhibit 2006-2 (additional SPI internal analysis concluding that FIGS offered a "[h]igh quality, premium product, marketed via "[h]igh quality content and high levels of consumer engagement."). Similarly, Mr. Singer distributed to his executives as "[g]ood points to read" a retailer's description of FIGS as having "succeeded in creating a clean, modern aesthetic surrounded by a perception of luxury, exclusivity, and better quality," Exhibit 2574-2 (2019 email from Mr. Singer), while another executive informed him that "FIGS marketing is so damn good." Exhibit 2008 (2017 email to Mr. Singer).

29.     SPI's internal market research also identifies numerous reasons that its own customers stopped buying from SPI, such as "I found a different brand that offers better value for the price," "[t]his [CBI] brand did not fit me well," "I don't like the available styles," and "Brand is low quality and wears down too easily." *See* Exhibit 2825-94.

30.     Dr. Bell also failed to rule out other potential causes for any injury to SPI: Dr. Bell never analyzed the amount of sales SPI lost to other brands through its AllHeart website; never analyzed the amount of sales SPI lost to the Jaanuu scrubs company or other competitors; and never analyzed the amount of sales SPI lost due to its failure—captured in numerous documents from SPI—to implement a direct-to-consumer website until 2018. Oct. 26 Tr., Vol. 2, at 66:9–13, 67:12–18, 67:19–68:1, 70:19–22.

31.     Additionally, Dr. Bell never analyzed whether any sales allegedly lost by SPI were "offset by an increase in the overall scrubs market," *id.* at 77:18–22, in spite of evidence that SPI's own consultants and advisors believed that premium brands like FIGS had expanded the overall size of the scrubs market. Exhibit 2825

at -5, -14, -37 (an Ernst & Young report on SPI finding that premium scrubs brands including FIGS have expanded the market); *id.* at -16 (listing only FIGS, Jaanuu, and Medalita as "premium" scrubs brands).

32.     SPI has numerous industry competitors other than FIGS, including Landau, Carhartt, Amazon Essentials, Wonderwink, Grey's Anatomy, Barco, Jockey, Koi, and Jaanuu. *See* Exhibit 2825-16 (Ernst & Young report on SPI). Mr. Singer testified, "I would imagine we would lose sales to *all* competitors at times." Oct. 27 Tr. Vol. 1 at 104:9–11 (emphasis added). Similarly, a former SPI board member and owner, Lars Johansson of New Mountain Capital, testified, "I couldn't quantify the relative impact of FIGS versus any other individual competitor." Designated Johansson Tr. 80:7–9. SPI failed at trial either to quantify that impact or to connect it specifically to FIGS' challenged claims.

33.     Furthermore, FIGS' industry and causation expert, Dr. Kusum Ailawadi, offered unrebutted testimony that, to the extent SPI could articulate any economic injury over the past decade, those losses would most likely be attributable to SPI's own business model. *See* Oct. 27 Tr., Vol. 2, at 90:4–91:14; 97:23–99:23 (opining that SPI delayed in pivoting to an online strategy, which was then largely ineffective).

34.     SPI continues to sell almost entirely through third-party retailers. Designated McAdam Tr. at 25:13–15 (approximately 95% of SPI's scrubs revenue comes from sales to retailers). By contrast, direct-to-consumer sellers such as FIGS and others are now "industry standard." Oct. 31 Tr., Vol. 2 at 37:6–21 (Webb); *see also* Exhibit 3171 (FIGS' financials show that more than 99% of FIGS' sales are DTC).

35.     As late as 2016, SPI's customers could not purchase scrubs directly from any of SPI's branded websites. Oct. 31 Tr., Vol. 2 at 27:1–4. As of 2021, SPI owned and operated just two websites offering direct-to-consumer sales. Designated McAdam Tr. 70:7–12; *see also* Oct. 31 Tr., Vol. 2 (Webb) 25:2–4 (SPI's websites

-8-

"were built for B-to-B, not D-to-C."). Internal SPI documents indicate that its executives knew consumers found those websites "'old-school' and frustrating." Exhibit 2003 (Mr. Singer identifying SPI's own websites as the company's "Problem No. 1"). Mr. Singer also testified that as of late 2021, SPI still "had not solved" the issue, and he conceded that this might be a reason SPI had lost sales. Oct. 27 Tr., Vol. 1, at 106:9–23.

36.    The trial evidence showed that SPI's own employees had observed as early as 2018 that "[FIGS' and Jaanuu's] DTC e-commerce strategy gives them a huge advantage over retail-oriented manufacturers" such as SPI, and that SPI was still "years behind . . . the DTC companies." Exhibit 2003 (a draft email from Mr. Singer to SPI retailers); Exhibit 2022 (SPI's internal analysis of FIGS).

37.    FIGS also adduced evidence that SPI's relative under-investment in digital marketing was another contributing cause of any harm, with customers potentially interested in SPI products instead choosing to purchase from competitors that were more adept at search engine optimization. Oct. 27 Tr., Vol. 2, at 101:4–103:16 (Dr. Ailawadi). For example, in 2018 Mr. Singer stated that direct-to-consumer "companies nationally market a brand experience and their weapon is marketing—especially social media marketing along with their brand website." Exhibit 2003. Yet in that same year, SPI did not promote its "core" scrubs brand, Cherokee, through digital advertising. *Id.* at Oct. 31 Tr., Vol. 2 at 29:11–14 (Webb). SPI also digitally advertised another of its "core" brands, Dickies, just once a month, and then on an SPI-owned online magazine. *Id.* at 35:13–36:1. The evidence indicates that this lack of investment in digital marketing likely affected SPI's ability to compete effectively in the online market.

38.    There is no—let alone a preponderance of—evidence that FIGS' claims, rather than the numerous other factors outlined above, were the substantial cause of any losses suffered by SPI.

1

## II.    CONCLUSIONS OF LAW

2      39.    In light of the foregoing findings of fact, SPI cannot prove causation

3  under the UCL or FAL. Thus, SPI lacks standing to bring a claim for unlawful or

4  unfair competition against FIGS. *See* Cal. Bus. & Prof. Code §§ 17204, 17535.

5      40.    Pursuant to Cal. Bus. & Prof. Code §§ 17204 and 17535, a non-state

6  actor lacks standing to pursue either a UCL or an FAL claim unless it can "'(1)

7  establish a loss or deprivation of money or property sufficient to qualify as injury in

8  fact, i.e. *economic injury*, and (2) show that that economic injury was the result of,

9  i.e., *caused by*, the unfair business practice or false advertising that is the gravamen

10 of the claim.'" *In re Turner*, 859 F.3d 1145, 1151 (9th Cir. 2017) (quoting *Kwikset*

11 *Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)) (emphasis in original). It is the

12 plaintiff's burden to "establish those facts 'by a preponderance of the evidence.'"

13 *LegalForce RAPC Worldwide, P.C. v. DeMassa*, 532 F. Supp. 3d 856, 859 (N.D.

14 Cal. 2021) (quoting *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1351

15 (2009)).

16     41.    This standing requirement "imports a *reliance or causation* element"

17 into the UCL and FAL. *Kwikset*, 51 Cal. 4th at 326. Absent proof of a causal link to

18 "an economic injury 'which is (a) concrete and particularized . . . and (b) actual or

19 imminent, not conjectural or hypothetical,'" the defendant is entitled to judgment.

20 *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1049 (9th Cir. 2017)

21 (quoting *Kwikset*, 51 Cal. 4th at 322).

22     42.    Thus, "[s]tanding under the UCL and FAL is more exacting" than

23 standing under Article III of the U.S. Constitution. *Allbirds, Inc. v. Giesswein*

24 *Walkwaren AG*, 2020 WL 6826487, at *5 (N.D. Cal. June 4, 2020); *Vampire Fam.*

25 *Brands, LLC v. MPL Brands, Inc.*, 2021 WL 4134841, at *8 (C.D. Cal. Aug. 6,

26 2021). While a Lanham Act plaintiff may proceed on the basis of inferences of a

27 "likely or potential injury," proof of "*actual* injury and *immediate* causation are

28 required to establish standing under California's UCL and FAL." *McCabe v.*

-10-

*Guitars*, 2013 WL 12064539, at *7 (S.D. Cal. Mar. 4, 2013) (emphasis added); *accord TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 n.1 (9th Cir. 2011) ("Plaintiffs filing an unfair competition suit must prove a pecuniary injury . . . and 'immediate' causation.").

### A.    SPI has not proven that FIGS engaged in any wrongful conduct.

43.    Causation requires a predicate wrongful act. Yet SPI has not met its burden to prove by a preponderance of the evidence that FIGS engaged in any unfair business practice or false advertising. Without this, the causation inquiry ends.

>   *i.    The jury's verdict requires that SPI's UCL and FAL claims fail to the extent each is premised on allegedly false advertising.*

44.    **FAL Claim.** To prevail on its FAL Claim, SPI would have to prove that FIGS disseminated a false, misleading, or deceptive statement in advertising. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), *as modified* (May 22, 2002). The FAL requires "more than a mere possibility that the advertisement might conceivably be misunderstood." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, a plaintiff must show that "it is probable that a significant portion of the general public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

45.    SPI's FAL claim is based upon the same set of facts as its Lanham Act claim. *See* Dkt. 854 at 9–11, 13–15 (stating that SPI would rely on the same "key evidence" to prove liability under both the Lanham Act and the FAL).

46.    It is also well-established that FAL claims are "'substantially congruent' to claims made under the Lanham Act," and "[t]he same legal standard applies." *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2019 WL 5320390, at *3-4 (S.D. Cal. Oct. 21, 2019) (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)) (applying Lanham Act standard and granting summary judgment for

-11-

defendant on all false advertising claims), *aff'd* 2021 WL 4622504 (9th Cir. Oct. 21, 2021). *See Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 WL 572290, at *3 (N.D. Cal. Feb. 11, 2014) (same).

47.     "[W]here legal claims are tried by a jury and equitable claims tried by a judge, and the claims are 'based on the same set of facts,' . . . 'the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.'" *Acosta v. City of Costa Mesa*, 718 F.3d 800, 829 (9th Cir. 2013). The Court is thus bound by the jury's findings that FIGS did *not* violate the Lanham Act (i.e., that it did not engage in advertising that was false, actually deceptive, or that had the tendency to deceive a substantial segment of FIGS' audience of consumers), and by the jury's separate finding that FIGS "did not engage in false advertising." FOF 5, 6, 7, 8, 9.

48.     Deceptive statements under the FAL are those that have a "*tendency* to deceive or confuse the public." *Kasky*, 27 Cal. 4th at 951 (emphasis added). The applicable standard is whether it is "probable that a *significant portion* of the general consuming public *or of targeted consumers*, acting reasonably in the circumstances, could be misled." *Lavie*, 105 Cal. App. 4th at 508 (emphasis added). Here, the jury was asked not only whether FIGS' challenged statements were literally false or actually deceptive, but also whether they had a "tendency to deceive a substantial segment of FIGS' audience of consumers." *See*, *e.g.*, Verdict Form Question 2. The jury's determination that none of FIGS' claims had a "tendency to deceive a substantial portion of FIGS' audience" is therefore dispositive as to the FAL.

49.     Accordingly, the Court concludes that SPI has not proven by a preponderance of the evidence that FIGS engaged in false advertising in violation of Cal. Bus. & Prof. Code § 17500.

50.     ***UCL Claim.*** SPI's UCL claim is also premised on "[f]alse advertising, under the Lanham Act or California Business and Professions Code § 17500," insofar as such would constitute "unfair business practices." *See* Dkt. 854 at 7; *id.* at

9–11, 11–13 (noting that SPI again intended to rely on the same "key evidence" to prove liability under both the Lanham Act and the UCL).

51.     In post-verdict briefing, SPI also invoked the "fraudulent" prong of the UCL, asserting that FIGS' allegedly false advertising constituted a fraudulent business practice. Dkt. 939 at 21 n.10.

52.     UCL claims "stand[] or fall[] depending on the fate of the antecedent substantive causes of action." *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1137 (C.D. Cal. 2011) (citation omitted).

53.     As stated *supra*, the Court is bound by the jury's findings that SPI failed to prove that FIGS violated the Lanham Act by engaging in advertising that was false, actually deceptive, or that had the tendency to deceive a substantial segment of FIGS' audience of consumers; or that it otherwise "engage[d] in false advertising." *See supra,* COL 47. The Court has also concluded that SPI failed to prove that FIGS violated the FAL, meaning that claim also cannot serve as the predicate for a UCL claim. COL 48.

54.     Accordingly, the Court concludes that to the extent SPI's UCL claim is premised on allegedly false advertising, SPI has not proven a violation of section 17200 by a preponderance of the evidence.

> ii.     *SPI has not established an actionable regulatory violation as an alternative basis for a UCL claim.*

55.     Although not articulated in the Final Pretrial Conference Order, FOF 11, in its post-verdict briefing SPI contends that its UCL claim should proceed on the basis that FIGS violated federal regulatory requirements by making the following statements about its scrubs: that FIGS scrubs are "antimicrobial"; that they "kill bacteria and infection immediately on contact"; and that they "reduce hospital acquired infections by 66%." Dkt. 939 at 14–15.

56.     SPI asserts that these statements exceed FIFRA's safe harbor from pesticide registration, codified at 40 C.F.R. 152.25(a), and that FIGS' antimicrobial

scrubs are subject to the preclearance requirements of Section 510(k) of FDCA. Dkt. 939 at 17.

57.    "Pretrial orders play a crucial role in implementing the purposes of the Federal Rules of Civil Procedure 'to secure the just, speedy, and inexpensive determination of every action.'" *United States v. First Nat. Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981) (quoting Fed. R. Civ. P. 1.). A party may not "offer evidence or advance theories at the trial which are not included in the order or which contradict its terms." *Id.*

58.    SPI did not seek to try its UCL or FAL claims on the basis of alleged violations of FIFRA and the FDCA: No such bases are set forth in the Final Pretrial Conference Order. FOF 11. The Court will not reconstrue claims at this late stage in the proceedings and after the closure of the evidentiary record. The Court deems SPI to have waived any regulatory basis for pursuing a UCL claim. As the properly articulated basis for those claims has been rejected by the jury, COL 53, 54, FIGS is entitled to judgment accordingly.

## B.    SPI has not proven its own economic injury.

59.    SPI also has not met its burden to prove, by a preponderance of the evidence, that it suffered any economic injury in fact. This, too, is dispositive of the causation inquiry.

60.    Indeed, the preponderance of the evidence shows the opposite: SPI suffered no injury at all during the time period at issue, i.e., from 2013 to the present. SPI's revenues, earnings, and market share all increased in the decade since FIGS entered the marketplace, *see* FOF 15, 16, 17, 18. And SPI introduced no evidence of lost sales. FOF 20, 21, 22. Given this lack of evidence, the Court concludes that SPI has not proven the fact of an economic injury by the preponderance standard, and thus it has no standing to pursue its UCL and FAL

1   claims.[1] *McCabe*, 2013 WL 12064539, at *5; *Aoki v. Gilbert*, 2020 WL 6741693, at

2   *24 (E.D. Cal. Nov. 17, 2020) (plaintiffs lacked standing under UCL and FAL

3   where they "proffered no evidence that they lost profits . . . or otherwise lost money

4   or property as a result of [defendant's] deceptive statements" and "presented no

5   evidence of the value of their goodwill or an economic harm stemming from the loss

6   of goodwill").

7               **C.      SPI has not proven a causal relationship.**

8       61.     Even if SPI had established both a predicate wrong and some economic

9   injury—and the Court has found that it has not, FOF 4, 5, 15, 16, 17, 18, 19, 20—it

10  would still lack standing because of its failure to prove that such harm was

11  attributable to FIGS' allegedly unfair, unlawful, and/or fraudulent business acts. In

12  other words, SPI has failed to show causation itself.

13      62.     A UCL or FAL plaintiff must show that "but for" the alleged

14  wrongdoing, its injury "would have been avoided." *Smith v. Ditech Fin. LLC*, 2018

15  WL 6431405, at *10 (C.D. Cal. Nov. 5, 2018); *see also In re Turner*, 859 F.3d at

16  1151 ("A plaintiff fails to satisfy this causation requirement if he or she would have

17  suffered 'the same harm whether or not a defendant complied with the law.'")

18  (quoting *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1109 (2007)). That is, to

19  prove causation, the plaintiff must establish not only a causal link between its injury

20  and the defendants' improper actions, but also rule out other possible causes. *See*,

21  *e.g.*, *TrafficSchool.com*, 633 F. Supp. 2d at 1074 (UCL claim dismissed for lack of

22  statutory standing where "Defendants . . . presented evidence that other changes

23  may have resulted in the downturn in Plaintiffs' business, such as Plaintiffs'

24

25  _____

26  [1] SPI contends, without citation, that it need not "quantif[y]" its "injury or lost sales"
    because it seeks only injunctive relief. Dkt. 939 at 18. This is beside the point. SPI

27  faces a failure of proof, not quantification: SPI has not shown that it suffered *any*

28  injury or *any* lost sales at all, and thus it cannot meet its burden under the UCL.

decision to shift money from internet marketing to other advertisement media, or increased competition…."), *aff'd in relevant part*, 653 F.3d at 825 & n.1; *cf.* 653 F.3d at 826–27 (permitting presumptions and inferences for *Lanham Act* standing *only*). SPI has done neither.

63.     As discussed above, SPI failed to introduce any evidence that FIGS' claims caused SPI to lose customers, sales, or profits. FOF 20.

64.     The Court adopts the jury's finding that SPI made the same or similar claims as FIGS' On Contact Claim. FOF 10. For example, the website for SPI's antimicrobial agent CERTAINTY stated that it "starts to work upon contact with unwanted bacteria on the fabric," and that "[t]he technology effects [*sic*] the ability of the cell to replicate as well as its ability to remain viable; essentially, the bacteria cell is rendered ineffective immediately." Dkt. 854 at 4 (admitting the fact for trial); *see also* Exhibit 2342-5 (SPI's CERTAINTY website). To the extent SPI made the same or similar claims as FIGS, SPI has not proven how FIGS' use of those claims injured SPI.

65.     SPI also failed to rule out other substantial causes of economic injury. SPI introduced no causation expert, and it failed to account for (or rebut the evidence demonstrating) other reasons it lost customers and the impact of its numerous other competitors. FOF 24, 26, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38. And FIGS' expert Dr. Ailawadi presented significant, unrebutted evidence that SPI failed to pivot to an "industry standard" direct-to-consumer model and failed to invest appropriately in digital marketing. *See* FOF 33, 37. These failures likely made it easier for digitally native brands like FIGS to gain market share, another unaccounted-for cause of any harm to SPI. *See* FOF 37.

66.     Because SPI has not proven either its own economic injury or a causal connection between such injury and FIGS' actions, SPI lacks standing to pursue its UCL and FAL claims. FIGS is further entitled to judgment in its favor on this basis alone. *LegalForce*, 532 F. Supp. 3d at 861.

-16-

## III.   CONCLUSION

The jury determined that SPI failed to prove its First and Fifth Causes of Action; FIGS, Ms. Spear, and Ms. Hasson are entitled to judgment thereon. The Court now finds that because SPI failed to prove that it suffered any economic injury as a result of any allegedly unlawful, unfair, and fraudulent business practices by FIGS, including allegedly false advertising, SPI lacks statutory standing to assert a claim against FIGS under the UCL or FAL. FIGS is thus further entitled to judgment on SPI's Second and Fourth Causes of Action.

Within fourteen days of the issuance of this Order, FIGS shall prepare and present a proposed judgment, consistent with the jury's verdict and this Order, for approval by the Court and entry by the Clerk.

**IT IS SO ORDERED.**

DATED: _____

_____
Hon. John W. Holcomb
United States District Judge